Ⓐ Neutral

As of: January 8, 2020 2:52 PM Z

## *Rice v. NBCUniversal Media, LLC*

United States District Court for the Southern District of New York

July 10, 2019, Decided; July 10, 2019, Filed

19-CV-447 (JMF)

**Reporter**

2019 U.S. Dist. LEXIS 114690 *; 2019 WL 3000808

JOHN CURTIS RICE, Plaintiff, -v- NBCUNIVERSAL MEDIA, LLC, Defendant.

**Subsequent History:** As Amended July 15, 2019.

Reconsideration denied by, Request denied by *Rice v. Media, 2019 U.S. Dist. LEXIS 134022 (S.D.N.Y., Aug. 8, 2019)*

## Core Terms

mediation, sanctions, orders, inherent authority, attorney's fees, court order, failure to comply, impose sanctions, license, parties, defense counsel, quotation, marks, monetary sanctions, inherent power, Photograph, Records, non-compliance, pretrial, hourly rate, show cause, scheduling, settlement, attend, cases

**Counsel:** [*1] For John Curtis Rice, Plaintiff: Richard Liebowitz, Liebowitz Law Firm, PLLC, Valleystream, NY.

For NBCUniversal Media, LLC, Defendant: Alanna B. Newman, Mark Alan Lerner, Satterlee Stephens LLP, New York, NY.

**Judges:** JESSE M. FURMAN United States District Judge.

**Opinion by:** JESSE M. FURMAN

## Opinion

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

In his relatively short career litigating in this District, Richard Liebowitz has earned the dubious distinction of being a regular target of sanctions-related motions and orders. Indeed, it is no exaggeration to say that there is a growing body of law in this District devoted to the question of whether and when to impose sanctions on Mr. Liebowitz alone. *See, e.g., Pereira v. 3072541 Canada Inc., No. 17-CV-6945 (RA), 2018 U.S. Dist. LEXIS 195406, 2018 WL 5999636, at *2 (S.D.N.Y. Nov. 15, 2018); McDermott v. Monday Monday, LLC, No. 17-CV-9230 (DLC), 2018 U.S. Dist. LEXIS 184049, 2018 WL 5312903, at *2-3 (S.D.N.Y. Oct. 26, 2018)* (citing cases); *Steeger v. JMS Cleaning Servs., LLC, No. 17-CV-8013 (DLC), 2018 U.S. Dist. LEXIS 42797, 2018 WL 1363497, at *3 (S.D.N.Y. March 15, 2018); Craig v. UMG Recordings, Inc., No. 16-CV-5439 (JPO), 380 F. Supp. 3d 324, 2019 U.S. Dist. LEXIS 53973, 2019 WL 1432929, at *10 (S.D.N.Y. Mar. 29, 2019)*. This Opinion is the latest contribution to that body of law. For the reasons stated below, the Court concludes that sanctions should indeed be imposed on Mr. Liebowitz for his repeated failure to comply with this Court's orders, failures that imposed considerable and unwarranted costs on the Court, its staff, and Defendant NBCUniversal Media, LLC.

Exhibit B

Rice v. NBCUniversal Media, LLC

## BACKGROUND

Plaintiff John Curtis Rice filed this Complaint, bringing claims under the Copyright Act, 17 U.S.C. § 101 et seq., on January 16, 2019. *See* Docket **[\*2]** No. 1. The Complaint alleges that Defendant NBCUniversal Media, LLC, infringed Rice's rights by displaying a copyrighted photograph — depicting the removal of a wild racoon from a beauty shop in the Bronx — on one of its websites. *See id.* More specifically, the Complaint alleges that "NBC did not license the Photograph from Plaintiff for its article, nor did NBC have Plaintiff's permission or consent to publish the Photograph on its Website." *Id.* ¶ 11; *see also id.* ¶ 13 ("NBC is not, and has never been, licensed or otherwise authorized to reproduce, publically display, distribute and/or use the Photograph."). On January 17, 2019, the Court ordered that the parties appear for an initial conference on May 2, 2019, and ordered them to conduct a mediation session prior to that initial conference. *See* Docket Nos. 6, 7.

NBCUniversal maintains — as it has since early in the case, *see* Docket No. 34 ("Transcript" or "Tr."), at 2-3 — that it did not infringe Plaintiff's copyright because it had a license for online use of Plaintiff's photograph. *See, e.g.,* Docket No. 15, at 3 ¶ 1 (providing the affirmative defense that "NBCUniversal had the express and/or implied license to utilize the Photograph"); **[\*3]** Docket No. 16, at 2. In or about mid-March 2019, according to defense counsel, NBCUniversal "produced the evidence supporting its complete license defense" by disclosing to Liebowitz a $200 invoice for "the online Today Show use of the . . . image of Raccoon capture, Bronx, NY." Docket No. 27 ("Lerner Decl.") ¶¶ 2, 6; *see also* Docket No. 27-1 (invoice). Following a discussion with his client, Liebowitz took the position that the license was for one year and that the one-year license had been exceeded. *See* Lerner Decl. ¶ 6; *see also* Docket No. 26 ("Liebowitz 1st Decl.") ¶ 6. Liebowitz did not, however, "produce any documentary evidence to support his position . . . nor did [he] amend [the] Complaint to correct the allegation that there was no license or permission to publish the Photograph." Lerner Decl. ¶ 7.

On April 1, 2019, the Court-annexed Mediation Program closed the mediation referral, noting in the docket entry that "one or both parties failed, refused to attend, or refused to participate in the mediation." Docket No. 14. In a joint letter to the Court in advance of the initial conference, defense counsel represented that NBCUniversal had "indicated that it was willing to participate **[\*4]** in mediation and provided available dates to the mediation office, but Plaintiff did not." Docket No. 16. Liebowitz now blames his client's unavailability for his own failure to attend mediation, *see* Liebowitz 1st Decl. ¶ 17 ("Sanctions should not be imposed for Rice's inability to attend mediation."), but Liebowitz did not inform the Mediation Office (let alone the Court) of this conflict, *see* Lerner Decl. ¶ 10. Instead, as defense counsel notes, Liebowitz "simply did not respond" to the Mediation Office's scheduling emails. *Id.* As of the initial conference, no mediation session was held and no relief from the mediation order had been sought or granted — a clear violation of the Court's January 17th Order.

On May 1, 2019, Liebowitz filed two requests with respect to the May 2nd initial pretrial conference. First, at 3:19 p.m., Liebowitz filed a letter motion requesting that the Court change the time of the conference from 3:45 p.m. to 10:45 a.m. *See* Docket No. 18. The Court grudgingly granted the request, noting that it "would have been on firm ground denying counsel's request — on the ground that it is untimely and inadequately explained." Docket No. 19. The Court warned that at the **[\*5]** May 2nd conference, "counsel should be prepared to explain the timing and reason for the request." *Id.* Later the same day, at 11:09 p.m., Liebowitz filed a stipulation of voluntarily dismissal signed by both parties, *see* Docket No. 20, and six minutes later, a letter motion to cancel the May 2nd conference, *see* Docket No. 21. The Court denied the request to cancel the conference the next morning at 9:29 a.m. Docket No. 22. In denying the request, the Court ordered that "[c]ounsel (including Mr. Liebowitz himself) shall appear as scheduled, in part so Plaintiff's counsel can answer for his apparent failure to comply with this Court's orders and rules, including its orders regarding early mediation." *Id.*

Despite the Court's clear order, Liebowitz did not appear for the May 2nd conference. When the Court's staff contacted Liebowitz's office, it "got somewhat conflicting information about whether he was out of town or on his way." Tr. 2. At the conference, the Court asked defense counsel to explain what had occurred on May 1st and before. *Id.* (Notably, defense counsel advised that, "until the eve of the initial pretrial conference, Plaintiff continued to press for settlement, despite the **[\*6]** evidence of a valid license." Lerner Decl. ¶ 11; *see also* Tr. 3-4.) The Court also noted at the conference that it would "sign the stipulation of dismissal retaining jurisdiction to adjudicate any sanctions issue." Tr. 7. Later that day, at 4:04 p.m., the Court signed and

Katie Birchenough

<span style="color:red">Exhibit B</span>

Rice v. NBCUniversal Media, LLC

docketed the parties' stipulation of dismissal. *See* Docket No. 23. By endorsement, the Court specifically "retain[ed] jurisdiction to consider whether sanctions should be imposed upon Plaintiff's counsel." *Id.* The Court also ordered Liebowitz to show cause in writing why sanctions should not be imposed pursuant to *Rules 11* and *16 of the Federal Rules of Civil Procedure* and the Court's inherent authority. *See* Docket No. 25. In response, Liebowitz submitted two declarations, *see* Liebowitz 1st Decl.; Docket No. 30 ("Liebowitz Reply Decl."), and defense counsel submitted a declaration and a letter with contemporaneous billing records, *see* Lerner Decl.; Docket No. 33 ("Time Records").

## DISCUSSION

It is well established that, when counsel violates a court order or fails to appear at a conference, sanctions may be imposed pursuant to either *Rule 16 of the Federal Rules of Civil Procedure* or the Court's inherent authority. *See Fed. R. Civ. P. 16(f)(1)*; *Chambers v. NASCO, Inc., 501 U.S. 32, 45-46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)*. Such sanctions may be imposed in response to a motion or by the Court *sua sponte*. *See Fed. R. Civ. P. 16(f)(1)* (noting **[*7]** that the Court may impose sanctions "[o]n motion or on its own"); *Chambers, 501 U.S. at 43-44*. Moreover, the Court may impose sanctions on the lawyer or the lawyer's firm. *See, e.g., Pichardo v. C.R. Bard, Inc., No. 09-CV-7653 (SHS), 2015 U.S. Dist. LEXIS 10722, 2015 WL 13784565, at *7 (S.D.N.Y. Jan. 26, 2015)*; *Shiu v. Jung & Assocs. Law Office P.C., 559 F. App'x 105, 106 (2d Cir. 2014)* (summary order) (affirming imposition of *Rule 16(f)* sanctions "jointly and severally" on a law firm). The decision whether to impose sanctions is left to the Court's discretion. *See, e.g., Macolor v. Libiran, No. 14-CV-4555 (JMF), 2015 U.S. Dist. LEXIS 7958, 2015 WL 337561, at *2 (S.D.N.Y. Jan. 23, 2015)*.

### A. Sanctions Pursuant to *Rule 16(f)*

The Court begins with *Rule 16*. *Rule 16(f)* authorizes sanctions for, among other things, the "fail[ure] to obey a scheduling or other pretrial order." *Fed. R. Civ. P. 16(f)(1)(C)*. "In deciding whether a sanction is merited [under *Rule 16(f)*], the court need not find that the party acted in bad faith." *Huebner v. Midland Credit Mgmt., Inc., 897 F.3d 42, 53 (2d Cir. 2018)* (internal quotation marks omitted). The Court need find only that there is clear and convincing evidence that counsel disregarded a clear and unambiguous scheduling or other pretrial

order. *See id.* ("The fact that a pretrial order was violated is sufficient to allow some sanction." (internal quotation marks omitted)); *see, e.g., S. New England Tel. Co. v. Glob. NAPs Inc., 624 F.3d 123, 145 (2d Cir. 2010)*.

The Court has no trouble making that finding here. *See* Docket Nos. 6, 7. On January 17, 2019, the Court ordered that, "[u]nless and until the Court orders otherwise, the parties shall schedule a mediation to take place no later than two weeks before the initial **[*8]** pretrial conference." Docket No. 6, at 1 (emphasis omitted). The January 17th Order further stated that, "[i]f the parties believe that early mediation would not be appropriate . . . , they shall file a letter motion seeking relief from the foregoing requirements no later than the deadline to answer." *Id.* The deadline to answer, after extension, was April 3, 2019. *See* Docket No. 12. Neither party sought relief from the early mediation requirement by that date; instead, on April 1, 2019, the Mediation Office reported that "the court-ordered mediation was not held as one or both parties failed, refused to attend, or refused to participate in the mediation." Docket No. 14.

The record reveals that Liebowitz is to blame for the failure to comply with the Court's January 17th order. Defense counsel explained that "[w]hen the mediation office reached out, we reached out and tried to get a phone call together with both attorneys and the mediation office. Mr. Liebowitz did not respond to the mediation office, leading to the subsequent closing of that file by the mediation office." Tr. 5-6; *see also* Docket No. 16 (statement in joint letter that "Defendant indicated that it was willing to participate **[*9]** in mediation and provided available dates to the mediation office, but Plaintiff did not"); Lerner Decl. ¶ 10 (Liebowitz "did not respond to the requests of the Mediation Office to respond regarding the status of the matter and possible dates for mediation"). Notably, Liebowitz does not dispute this; instead, he argues that sanctions should not be imposed for the failure to mediate because his client "was not able to find the availability to take off a full day from work." Liebowitz 1st Decl. ¶ 17. But Rice's purported lack of availability does not excuse Liebowitz's failure to comply with the January 17th Order. Liebowitz could have sought relief from the Court's Order on account of Rice's unavailability, but he did not do so; he simply failed to respond to the Mediation Office. That clear violation of the January 17th Order — which was intended to facilitate early resolution of the case — merits the imposition of sanctions under *Rule 16(f)*. *See Fed. R. Civ. P.*

Exhibit B

*16(f)(1)(C)*; *see also* *Huebner, 897 F.3d at 53*; *Petrisch v. JP Morgan Chase, 789 F. Supp. 2d 437, 455 (S.D.N.Y. 2011)* (finding sanctions to be merited because the "unwillingness to follow this Court's orders has wasted the time of both the Court and Defendants").

## B. Sanctions Pursuant to the Court's Inherent Authority

The Court also imposes sanctions for **[*10]** Liebowitz's failure to comply with the Court's orders pursuant to the Court's inherent power to award sanctions. "[D]istrict courts have the inherent power" to sanction a party "for bad faith conduct violating the court's orders even if procedural rules exist which sanction the same conduct." *S. New England Tel, 624 F.3d at 144* (internal quotation marks omitted); *see also* *Chambers, 501 U.S. at 50* ("[N]either is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules."). Under this "inherent power . . . , a court may assess attorney's fees as a sanction for the willful disobedience of a court order." *Chambers, 501 U.S. at 45* (internal quotation marks omitted). To warrant an award of attorney's fees pursuant to the Court's inherent authority, the Court must find that Liebowitz acted in bad faith or that he willfully disobeyed the Court's orders. *See id. at 50*; *cf. Huebner, 897 F.3d at 53* (finding of bad faith is not necessary to impose sanctions under *Rule 16(f)*).[1]

Applying those standards here, the Court finds it appropriate to impose sanctions pursuant to its inherent authority for Liebowitz's failure to comply with both the January 17th Order mandating early mediation, discussed **[*11]** above, and his failure to appear at the May 2nd conference. In response to Liebowitz's (literal) 11th hour request to adjourn the conference in light of

---

[1] To the extent that notice is required to impose sanctions pursuant to the Court's inherent authority, *see, e.g., Chambers, 501 U.S. at 56*; *S. New England Tel. Co., 624 F.3d at 148*, there is no dispute that the Court's detailed Order to Show Cause provided Liebowitz with the requisite notice, *see* Docket No. 25 ("Plaintiff's counsel is ordered to show cause . . . why sanctions should not be imposed — pursuant to *Rules 11* and *16 of the Federal Rules of Civil Procedure* and/or the Court's inherent authority — for filing a meritless lawsuit; for continuing to prosecute that lawsuit even after being presented with evidence of its lack of merit; for failure to comply with this Court's orders; and for failure to appear as directed at the conference earlier today.").

the stipulated dismissal, *see* Docket No. 21, the Court explicitly ordered that "[c]ounsel (including Mr. Liebowitz himself) shall appear as scheduled," Docket No. 22. Yet Liebowitz failed to comply with that unambiguous order.

Liebowitz now claims that his absence was excusable because he believed that "the Court lacked jurisdiction to conduct a *Rule 16* conference" after the parties signed the stipulation of dismissal. *See* Liebowitz 1st Decl. ¶ 15. That claim is unpersuasive and, the Court finds, disingenuous. First, it is hard to credit given the letter — filed by Liebowitz himself — requesting adjournment of the conference six minutes after filing the stipulation of dismissal. *See* Docket Nos. 20, 21. Second, the claim is without merit as a matter of law because voluntary dismissal "does not preclude the district court from considering collateral issues such as sanctions." *U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc., 775 F.3d 128, 134 (2d Cir. 2014)*; *see In re Austrian & German Bank Holocaust Litig., 317 F.3d 91, 98 (2d Cir. 2003)* ("Whenever a district court has federal jurisdiction over a case, it retains ancillary jurisdiction after dismissal to adjudicate collateral matters."). Thus, even **[*12]** if the Court no longer had jurisdiction to order attendance at a *Rule 16* conference — a dubious premise — it plainly had authority to consider sanctions and to mandate counsel's appearance at a conference related to sanctions, as the May 2nd conference was. *See* Docket No. 22 (stating that the conference was "in part so Plaintiff's counsel can answer for his apparent failure to comply with this Court's orders and rules"). Third, Liebowitz's claim is hard to credit because other courts in this District have imposed sanctions on him even after settlement and dismissal. *See, e.g., Steeger, 2018 U.S. Dist. LEXIS 42797, 2018 WL 1363497, at *1-2* (affirming sanctions imposed after settlement and imposing new sanctions even though the case had already been dismissed). And finally, "attorneys have no absolute right to be warned that they disobey court orders at their peril." *Huebner, 897 F.3d at 54* (internal quotation marks omitted). Accordingly, the Court declines to credit Liebowitz's statement that he believed the Court lacked jurisdiction to hold a conference and declines to excuse Liebowitz's absence on that basis.

Additionally, the Court finds, for several reasons, that Liebowitz's disobedience of the Court's Orders — both the Orders requiring mediation and Liebowitz's appearance **[*13]** on May 2 — was willful. First, "these orders were explicit and there is no suggestion that [Liebowitz] misread or misunderstood them." *Petrisch, 789 F. Supp. 2d at 455* (finding a willful violation of the Court's order under *Rule 16*). Second, because the

Exhibit B

Rice v. NBCUniversal Media, LLC

Court declines to credit Liebowitz's excuses for his behavior, there is no "good-faith explanation" for his failure to comply. See _S. New England Tel., 624 F.3d at 148; see also, e.g., Petrisch, 789 F. Supp. 2d at 455; Dumann Realty, LLC v. Faust, No. 09-CV-7651 (VM) (KNF), 2011 U.S. Dist. LEXIS 76074, 2011 WL 2749523, at *4 (S.D.N.Y. July 8, 2011)_ (finding willfulness under _Rule 37(b)_ in part because the lawyer "provided no reasonable explanation for his failure"); _Stone v. Goord, No. 07-CV-2826 (LTS) (THK), 2007 U.S. Dist. LEXIS 84041, 2007 WL 3374583, at *2 (S.D.N.Y. Nov. 14, 2007)_ (same). Third, Liebowitz failed to comply with the Court's mediation order for several months, see Docket Nos. 6, 7 (mediation orders issued on January 17, 2019); Docket No. 14 (close of mediation on April 1, 2019); see, e.g., _Stone, 2007 U.S. Dist. LEXIS 84041, 2007 WL 3374583, at *3_ (finding willfulness in part because of "disobedience of this Court's Order for two months"), and his failure to comply is "not isolated but rather [part of] a pattern" of non-compliance in this case and others, see _S. New England Tel., 624 F.3d at 148_ (affirming finding of willfulness when failure to comply "was not isolated but rather formed a pattern" of non-compliance); see, e.g., _Pereira, 2018 U.S. Dist. LEXIS 195406, 2018 WL 5999636, at *3_ ("The Court finds particularly concerning Mr. Liebowitz's repeated [*14] failures to follow the orders and rules of this Court and others within the district."); _McDermott, 2018 U.S. Dist. LEXIS 184049, 2018 WL 5312903, at *2_ (citing cases, including _Romanowicz v. Alister & Paine, Inc., No. 17-CV-8937 (PAE) (KHP), 2018 U.S. Dist. LEXIS 132066, 2018 WL 4762980 (S.D.N.Y. June 22, 2018)_, and _Ferdman v. CBS Interactive, Inc., 342 F. Supp. 3d 515, 2018 WL 4572241 (S.D.N.Y. 2018)_, in which Liebowitz has "been sanctioned for failing to comply with court orders and for failing to produce materials during discovery"); _Steeger, 2018 U.S. Dist. LEXIS 42797, 2018 WL 1363497, at *1, 3_. In short, because the Court finds that Liebowitz willfully disobeyed the Court's orders, it is appropriate to impose sanctions on Liebowitz pursuant to the Court's inherent authority.

## C. Imposition of Monetary Sanctions

Under _Rule 16(f)_, "[i]nstead of or in addition to any other sanction, the court _must_ order the party, its attorney, or both to pay the reasonable expenses — including attorney's fees — incurred because of any noncompliance with this rule." _Fed. R. Civ. P. 16(f)(2)_ (emphasis added); see _Chambers, 501 U.S. at 42 n.8_ (noting that _Rule 16(f)_ "provide[s] for the imposition of

attorney's fees as a sanction"). That is, under _Rule 16(f)_, "the court must award fees" but "the fees that may be assessed are limited to those incurred as a result of the Rule violation." _Chambers, 501 U.S. at 42 n.8_. By contrast, the Court's inherent power to impose sanctions includes the power to impose, in its discretion, "attorney's fees representing [*15] the entire cost of litigation." _Id. at 45_. For example, in _Chambers_, the Supreme Court upheld the finding that "full attorney's fees were warranted due to the frequency and severity of [the lawyer's] abuses of the judicial system and the resulting need to ensure that such abuses were not repeated." _Id. at 56_.

In light of those principles, the Court finds — pursuant to _Rule 16_ and its inherent authority — that a single monetary sanction equal to the reasonable attorney's fees incurred by Defendant from April 18, 2019, onward is appropriate. April 18th is the date by which the parties were ordered to conduct mediation. See Docket Nos. 6, 7. Thus, from that point on, Liebowitz was unambiguously in violation of the Court's mediation order. And that violation was not without costs: The Court ordered early mediation because, in its experience, "cases of this nature often benefit from early mediation," Docket No. 6; see also _McDermott, 2018 U.S. Dist. LEXIS 184049, 2018 WL 5312903, at *2_ ("In the over 700 cases Mr. Liebowitz has filed since 2016, over 500 of those have been voluntarily dismissed, settled, or otherwise disposed of before any merits-based litigation."), making Liebowitz's failure to mediate a likely cause of additional legal expenses. To the extent that the award [*16] also covers time Defendants spent responding to Liebowitz's misconduct — including time wasted responding to settlement demands that the evidence revealed were inappropriate, see Lerner Decl. ¶¶ 2, 6 (stating that Defendant produced to Liebowitz evidence of its license in mid-March), and time spent on issues related to sanctions, see Time Records 3-4 — such compensation is proper. See, e.g., _Emanuel v. Griffin, No. 13-CV-1806 (JMF), 2015 U.S. Dist. LEXIS 37944, 2015 WL 1379007, at *18 (S.D.N.Y. Mar. 25, 2015)_ (ordering the non-compliant counsel to "compensate" defense counsel "for the fees and costs associated with bringing the motion to strike" pursuant to _Rule 16(f)_); see also _Pichardo, 2015 U.S. Dist. LEXIS 10722, 2015 WL 13784565, at *1_ (awarding under _Rule 16(f)_ attorney's fees incurred in preparing a motion for sanctions).[2]

---

[2] Federal law also "imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics, and

Exhibit B

Rice v. NBCUniversal Media, LLC

In opposing a monetary sanction, Liebowitz invokes Rule 11(c)(5)(B) of the Federal Rules of Civil Procedure, which states that "[t]he court must not impose a monetary sanction . . . on its own, unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims." But "Rule 11 does not repeal or modify existing authority of federal courts to deal with abuses under the court's inherent power" and "the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." Chambers, 501 U.S. at 48-49. Under this precedent, the Court's inherent authority to impose monetary [*17] sanctions is not subject to Rule 11(c)(5)(B)'s limitations. The same is true for the Court's authority to impose sanctions under Rule 16. See Huebner, 897 F.3d at 53-54 (imposing sanctions under Rule 16(f)(1)(B) and 16(f)(1)(C) without any reference to Rule 11); see also Fed. R. Civ. P. 16, Advisory Committee Note, 1983 Amendment. Indeed, Rule 16(f)'s mandatory language, which includes only two narrowly defined exceptions (for noncompliance that was "substantially justified" and circumstances that make sanctions "unjust"), suggests that its drafters did not mean for Rule 11 to limit Rule 16. To the contrary, the "intention" of Rule 16(f) was "to encourage forceful judicial management," Fed. R. Civ. P. 16, Advisory Committee Note, Subdivision (f), 1983 Amendment, a goal that would be undermined if parties could simply dismiss a case, see, e.g., Windstream, 775 F.3d at 135 ("[T]he harm triggering [the] . . . concerns has already occurred upon the mere filing of baseless papers [e]ven if the careless litigant quickly dismisses the action." (internal quotation marks omitted)). Thus, the Court finds that it retains the power under Rule 16(f) and its inherent authority to impose monetary sanctions notwithstanding Rule 11(c)(5)(B) and the voluntary dismissal.

The only remaining questions are whether the sanctions

provides courts with a cudgel to use, in their discretion, to deter unnecessary delays in litigation." Huebner, 897 F.3d at 55. Under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." In light of the sanctions imposed pursuant to Rule 16(f) and the Court's inherent authority, however, the Court need not and does not address the possibility of sanctions under Section 1927. See, e.g., Huebner, 897 F.3d at 56 ("[E]ven if this claim were not frivolous, it would not have been an abuse of discretion to award fees in light of [the attorneys'] . . . willful violations of court orders." (internal quotation marks omitted)).

should be imposed on Liebowitz alone or also on his firm and the amount of such sanctions. As to the first issue, "[b]ecause Liebowitz's 'actions [*18] were indistinguishable from those of [the Liebowitz Law Firm PLLC] as a firm,' the Court [imposes sanctions] against both Liebowitz and the Liebowitz Law Firm PLLC, jointly and severally." See, e.g., Craig, 2019 U.S. Dist. LEXIS 53973, 2019 WL 1432929, at *10 (citation omitted) (quoting Enmon v. Prospect Capital Corp., 675 F.3d 138, 148 (2d Cir. 2012)).

As to the second, the attorney's fees generated on or after April 18, 2019, are $8,745.50. See Time Records 2-4. This is based on just over seventeen hours of work at hourly rates ranging from $180 to $570. See id. Even the highest of these hourly rates, at $570, is reasonable for copyright infringement work in the Southern District of New York. See, e.g., Sid Bernstein Presents, LLC v. Apple Corps Ltd., No. 16-CV-7084 (GBD) (KNF), 2018 U.S. Dist. LEXIS 53626, 2018 WL 1587125, at *4 (S.D.N.Y. Mar. 29, 2018) (finding a rate of $630 per hour "within the range of fees recently authorized for similarly experienced attorneys in this District involving copyright infringement actions"); John Wiley & Sons, Inc. v. Book Dog Books, LLC, 327 F. Supp. 3d 606, 645 (S.D.N.Y. 2018) (approving a $540 hourly rate for a partner); Owerko v. Soul Temple Entm't, LLC, No. 13-CV-6420 (RLE), 2016 U.S. Dist. LEXIS 1836, 2016 WL 80664, at *2 n.1 (S.D.N.Y. Jan. 7, 2016) (citing cases awarding up to $650 per hour in S.D.N.Y.). The Court also finds that around seventeen hours of work from April 18th onward is appropriate and reasonable, particularly given that Liebowitz's inappropriate conduct created the need for Defendant to expend additional time on this case. See Time Records 3-4 (Defense [*19] counsel's activities included a "[c]all with client re: possible Rule 11 motion," "[r]eview[ing] and revis[ing] letter to Liebowitz regarding possible Rule 11," "[t]ravel to and appear at court conference," reviewing the Order to Show Cause and Liebowitz's response, "drafting" and "[r]evising declaration in support of order to show cause," and "[c]onfer[ring] with accounting regarding billing records."). By contrast, Liebowitz's proposed award, for five hours at an hourly rate of $250 equaling $1,250 for the entire case, see Docket No. 30 ¶ 16, is entirely unreasonable. Cf. Baker v. Urban Outfitters, Inc., 431 F. Supp. 2d 351, 361 (S.D.N.Y. 2006) (approving hourly rates where the opponents did "not seem to contest the reasonableness of the rates"), aff'd, 249 F. App'x 845 (2d Cir. 2007).

Thus, the Court finds that Defendant's attorney's fees of $8,745.50 — which represent Defendant's reasonable

Exhibit B

Rice v. NBCUniversal Media, LLC

attorney's fees from April 18 to May 16, 2019 — are reasonable and are properly imposed as sanctions. This sanction is, in the Court's view, sufficient but no greater than necessary to secure compliance with the Court's orders and counsel's professional duties in the future. *See, e.g., Macolor, 2015 U.S. Dist. LEXIS 7958, 2015 WL 337561, at *3; Weiss v. Weiss, 984 F. Supp. 682, 686 (S.D.N.Y. 1997)* ("[S]anctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person **[*20]** . . . ." (internal quotation marks omitted)). That conclusion is reinforced by Mr. Liebowitz's extensive pattern of non-compliance with court orders in this district. *See, e.g., Pereira, 2018 U.S. Dist. LEXIS 195406, 2018 WL 5999636, at *3; McDermott, 2018 U.S. Dist. LEXIS 184049, 2018 WL 5312903, at *2; Steeger, 2018 U.S. Dist. LEXIS 42797, 2018 WL 1363497, at *1, 3.*

**CONCLUSION**

As set forth above, Mr. Liebowitz and his firm are SANCTIONED for his failure to comply with multiple court orders. **Within thirty days of this Opinion and Order**, Mr. Liebowitz and the Liebowitz Law Firm, PLLC, jointly and severally, shall pay monetary sanctions to Defendant **in the amount of $8,745.50. Within one week of receipt**, Defendant shall file proof of such payment. The Court continues to retain jurisdiction to impose any additional sanction as necessary.

SO ORDERED.

Dated: July 10, 2019

New York, New York

/s/ Jesse M. Furman

Jesse M. Furman

United States District Judge

---

End of Document

Katie Birchenough

Exhibit B

✛ Positive
As of: May 17, 2019 4:46 PM Z

## *McDermott v. Monday Monday, LLC*

United States District Court for the Southern District of New York

February 22, 2018, Decided; February 22, 2018, Filed

17cv9230(DLC)

**Reporter**

2018 U.S. Dist. LEXIS 28664 *; 2018 WL 1033240

MATTHEW MCDERMOTT, Plaintiff, -v- MONDAY MONDAY, LLC, Defendant.

**Subsequent History:** Request denied by *McDermott v. Monday Monday, LLC, 2018 U.S. Dist. LEXIS 184049 (S.D.N.Y., Oct. 26, 2018)*

### Core Terms

attorney's fees, prevailing party, personal jurisdiction, prevailing, parties, notice, costs, motion to dismiss, cases, asserts, troll, frivolous, lawsuits, website, courts, merits, deter, circumstances, non-frivolous, fee-shifting, transactions, encourages, groundless, non-merits, settlement, attorneys, purposes, requires, statutes, factors

**Counsel:** [*1] For the plaintiff: Richard P. Liebowitz, Liebowitz Law Firm, PLLC, Valley Stream, NY.

For the defendant: Valerie K. Ferrier, Law Offices of Nolan Kelin, New York, NY.

**Judges:** DENISE COTE, United Stated District Judge.

**Opinion by:** DENISE COTE

## Opinion

### OPINION AND ORDER

Plaintiff Matthew McDermott commenced this copyright action on November 23, 2017. After the defendant moved to dismiss for lack of personal jurisdiction, the plaintiff voluntarily withdrew his action without prejudice to refiling. The defendant asserts that it is a prevailing party and has moved to compel the plaintiff to pay attorney's fees and costs in defending against this lawsuit. For the following reasons, the motion is denied.

### BACKGROUND

On November 23, 2017, plaintiff filed this action, asserting that the defendant displayed the plaintiff's copyrighted photograph on the defendant's website. The complaint acknowledged that the defendant is an Idaho limited liability company based in Idaho. The complaint asserts personal jurisdiction exists over the defendant because the defendant "transacts business in New York." On November 28, an initial conference was scheduled to occur on February 2, 2018.[1] The defendant was served with plaintiff's complaint on [*2] or about November 30.[2]

On January 2, 2018, the defendant served an offer of judgment on the defendant in the amount of $1,000. Then, on January 17, defendant filed a motion to dismiss for lack of personal jurisdiction.[3] Defendant, an Idaho-based business, is a digital newspaper that does not charge a fee for its content or sell anything through

_____

[1] The notice of the initial pretrial conference contains explicit language that the plaintiff is to "notify all attorneys in this action by serving upon each of them a copy of" the notice and the Court's individual practices. The plaintiff is "to file proof of such notice with the Court." The plaintiff failed to comply with this notice; the electronic case filing system ("ECF") contains no entry indicating that the plaintiff duly served defendant's counsel with the notice. This is not the first such failure on the part of plaintiff's counsel before this Court and other courts in this district. *See, e.g., Steeger v. JMS Cleaning Services, LLC, 17cv8013(DLC), 2018 U.S. Dist. LEXIS 13207 , 2018 WL 671382, at *1 (S.D.N.Y. Jan. 26, 2018)*.

[2] The defendant noted the date of service in a December 13, 2017 letter motion requesting an extension of time to answer or otherwise respond to the complaint. The plaintiff never filed an affidavit of service on ECF.

[3] On December 14, the defendant's request to extend its time to respond to the complaint to January 18, 2018 was granted.

Exhibit B

its website. It argued that the simple presence of an informational website, without opportunity for sales or other internet-based business transactions, was not enough to establish that the defendant had sufficient contacts with the forum in order to justify personal jurisdiction under either the New York long arm statute or the *Due Process Clause*. It asserted that the plaintiff had "apparently filed in this District for his own convenience, but has utterly failed to allege any facts sufficient to establish personal jurisdiction over an Idaho company."

Opposition to the motion to dismiss was due February 7, in the event the plaintiff did not amend his complaint in response to the motion. Plaintiff did not file any amended complaint or oppose the motion. Instead, he voluntarily dismissed his suit on January 30. The same day, defendant filed a letter motion [*3] to compel the plaintiff to pay attorney's fees and costs. He sought fees and costs incurred after January 2 pursuant to *Fed. R. Civ. P. 68* due to its $1,000 offer of judgment, and he sought all of this costs and attorney's fees in the action pursuant to the *Copyright Act*, *17 U.S.C. § 505*.

Plaintiff opposed, arguing that the defendant is not a "prevailing party" under the standard set forth in *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dpt. of Health and Human Resources, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001)*, and that *Rule 68* does not apply since judgment was not entered for the defendant. Defendant replied on January 31.

### DISCUSSION

*Section 505* of the Copyright Act permits a "prevailing party" to recover its reasonable attorney's fees. *17 U.S.C. § 505*. "Before deciding whether an award of attorney's fees is appropriate in a given case . . . a court must determine whether the party seeking fees has prevailed in the litigation." *CRST Van Expedited, Inc. v. E.E.O.C., 136 S. Ct. 1642, 1646, 194 L. Ed. 2d 707 (2016)*. While there are various statutes that award attorney's fees to a "prevailing party," the Supreme Court has interpreted the term in a consistent manner across those statutes. Id.

In the context of determining whether a plaintiff has prevailed, the "touchstone" of the prevailing party inquiry is whether there was a "material alteration of the legal relationship of the parties." Id. (citation omitted). "This change must be marked by judicial [*4] imprimatur." Id. (citation omitted). A prevailing defendant may recover

"fees expended in frivolous, unreasonable, or groundless litigation when the case is resolved in the defendant's favor, whether on the merits or not." *Id. at 1652.*

"The congressional policy regarding the exercise of district court discretion in the ultimate decision whether to award attorney' fees does not distinguish between merits-based and non-merits based judgments." Id. Indeed, "one purpose of the fee-shifting provision is to deter the bringing of lawsuits without proper foundation." Id. (citation omitted). The defendant has "fulfilled its primary objective" when the "plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision." *Id. at 1651.* Defendants can be prevailing parties "even if the court's final judgment rejects the plaintiff's claims for a nonmerits reason." Id.

In copyright cases, "[p]revailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Fogerty v. Fantasy, Inc., 510 U.S. 517, 534, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994).* In determining whether to award attorney's fees, a court may consider factors such as

> frivolousness, motivation, objective unreasonableness [*5] (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence . . . so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner.

*Id. at 534 n.19.* However, a "court may not award fees as a matter of course". *Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. 1979, 1985, 195 L. Ed. 2d 368 (2016)*(citation omitted). Nor can a court "treat prevailing plaintiffs and prevailing defendants differently." Id. (citation omitted).

Fee awards in copyright cases should "encourage the types of lawsuits that promote" the purpose of the copyright law, which is to "enrich the general public through access to creative works." Id. (citation omitted). This requires a court to strike a "balance between . . . encouraging and rewarding authors' creations while also enabling others to build on that work." Id. Accordingly, in determining whether an award of fees is appropriate, to either a prevailing plaintiff or defendant, a court should give substantial weight to the objective reasonableness of the party's position. *Id. at 1986.* This standard "encourages parties with strong legal positions to stand

Exhibit B

on their rights and deters those [*6] with weak ones from proceeding with litigation." Id. "[W]hen a person . . . has an unreasonable litigating position, the likelihood that he will have to pay two sets of fees discourages legal action." Id. at 1986-87. Applying these principles to plaintiffs, the Court observed that a "copyright holder with no reasonable infringement claim has good reason not to bring suit in the first instance (knowing he cannot force a settlement and will have to proceed to judgment)." Id. at 1987.

On the other hand, because the objective reasonableness inquiry is only one factor, albeit an important one, the objective reasonableness of a party's position does not control the decision on whether an award of fees is appropriate. Id. at 1988. "[A] court may order fee-shifting because of a party's litigation misconduct, whatever the reasonableness of his claims." Id. at 1988-89. Similarly, an award may be appropriate "to deter repeated instances of . . . overaggressive assertions of copyright claims." Id.

Rule 41, Fed. R. Civ. P, permits a plaintiff, without a court order, to dismiss an action by filing a notice of dismissal "before the opposing party serves either an answer or a motion for summary judgment." Id. at Rule 41(a)(1)(A)(i). "In the absence of any indication by the plaintiff, Rule 41(a)(1) presumes [*7] that a voluntary dismissal . . . is without prejudice." Youssef v. Tishman Constr. Corp., 744 F.3d 821, 825 (2d Cir. 2014). Such a dismissal is "without prejudice" so long as there has been no previous dismissal based on or including the same claim. Fed. R. Civ. P. 41(a)(1)(B). A second such dismissal operates "as an adjudication on the merits." Id. Accordingly, a voluntary dismissal without prejudice does not operate as a judgment and requires no court action or approval. See ISC Holding AG v. Nobel Biocare Finance AG, 688 F.3d 98, 111 (2d Cir. 2012)("Rule 41(a)(1)(A) is the only form of dismissal requiring no court action to be effective.")

The parties have not cited, and this Court has not found, cases addressing the impact the CRST decision on a defendant's request for attorneys' fees following a plaintiff's voluntary dismissal of its copyright claims pursuant to Rule 41 in response to a motion to dismiss. Accordingly, courts have not yet considered whether a defendant may be considered a prevailing party in such circumstances. Specifically, they have not yet addressed whether a defendant may be a prevailing party for purposes of a fee award under the Copyright Act where there has been no judicial ruling favorable or unfavorable to any party prior to the dismissal of the case.

Here, the plaintiff voluntarily dismissed his claims after the defendant served a Rule 68 offer and [*8] filed a motion to dismiss for lack of personal jurisdiction. In opposition to this motion for fees, the plaintiff does not suggest that he had any non-frivolous reason to believe that there was personal jurisdiction over the defendant in this district. Based on the record before the Court, it appears that the filing in this district was "frivolous, unreasonable, or groundless." CRST, 136 S.Ct. at 1652 (citation omitted). Plaintiff's counsel, Richard Liebowitz, is a known copyright "troll," filing over 500 cases in this district alone in the past twenty-four months.[4] Thus, whether or not an attorney's fee award could be properly awarded against the plaintiff under Section 505, such an award against plaintiff's counsel may be appropriate in an exercise of this Court's inherent power.

> The court has inherent power to sanction parties and their attorneys, a power born of the practical necessity that courts be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. This power may likewise be exercised where the party or the attorney has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.

Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 78 (2d Cir. 2000) (citation omitted). See also Fed. R. Civ. P. 11 ("[T]he court may impose an appropriate sanction [*9] on any attorney . . . ."). In an exercise of this Court's discretion it declines to award fees on this occasion. If Mr. Liebowitz files any other action in this district against a defendant over whom there is no non-frivolous basis to find that there is personal jurisdiction, the outcome may be different.

Finally, the defendant's Rule 68 argument is unavailing. That rule clearly states: "If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs

---

[4] "In common parlance, copyright trolls are more focused on the business of litigation than on selling a product or service or licensing their copyrights to third parties to sell a product or service. A copyright troll plays a numbers game in which it targets hundreds or thousands of defendants seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim." Creazioni Artistiche Musicali, S.r.l. v. Carlin America, Inc., 2017 U.S. Dist. LEXIS 124082, 2017 WL 33938502017, at *4 (S.D.N.Y. Aug. 4, 2017) (citation omitted).

Exhibit B

2018 U.S. Dist. LEXIS 28664, *9

incurred after the offer was made." *Fed. R. Civ. P. 68(d)* (emphasis added). In this case, there has been no judgment entered for the defendant. While the defendant is correct that "plaintiff has won nothing" in this case, the defendant nevertheless has not secured a judgment, on the merits or otherwise, and, as such, *Rule 68* is inapplicable.

CONCLUSION

The defendant's January 30 application to compel the plaintiff to pay attorney's fees and costs is denied.

Dated: New York, New York

February 22, 2018

/s/ Denise Cote

DENISE COTE

United Stated District Judge

End of Document

Exhibit B

Ⓐ Neutral
As of: May 17, 2019 4:42 PM Z

## McDermott v. Monday Monday, LLC

United States District Court for the Southern District of New York

October 26, 2018, Decided; October 26, 2018, Filed

17cv9230 (DLC)

**Reporter**
2018 U.S. Dist. LEXIS 184049 *; 2018 WL 5312903

MATTHEW MCDERMOTT, Plaintiff, -v- MONDAY MONDAY, LLC, Defendant.

Prior History: *McDermott v. Monday Monday, LLC. 2018 U.S. Dist. LEXIS 28664 (S.D.N.Y., Feb. 22, 2018)*

## Core Terms

troll, cases, redaction, voluntarily dismissed, attorney's fees, sanctions, parties, settlements, costs, circumstances, justifying, responding, hardship, requests, applies, reconsideration, non-frivolous, deficiencies, inadvertence, infringement, astonishing, accomplish, directing, discovery, expensive, objecting, practices, reservoir, ordering, surprise

**Counsel:** [*1] For Matthew McDermott, Plaintiff: Richard Liebowitz, Liebowitz Law Firm, PLLC, Valleystream, NY.

For Monday Monday, LLC, Defendant: Nolan Keith Klein, LEAD ATTORNEY, Valerie K. Ferrier, Law Offices of Nolan Klein, P.A., New York, NY.

**Judges:** DENISE COTE, United States District Judge.

**Opinion by:** DENISE COTE

## Opinion

### MEMORANDUM OPINION AND ORDER

DENISE COTE, District Judge:

On February 22, 2018, this Court denied the defendant's motion for attorney's fees in this case. *McDermott v. Monday Monday, 17cv9230 (DLC), 2018 U.S. Dist. LEXIS 28664, 2018 WL 1033240 (S.D.N.Y Feb. 22, 2018)* ("February 22 Opinion"). Over a month later, plaintiff's counsel filed a motion pursuant to *Fed. R. Civ.*

*P. 60* objecting to the use of the term "copyright troll" in the February 22 Opinion to describe plaintiff's counsel. He requests that the term be "redacted" from the February 22 Opinion. The request is denied.

### BACKGROUND

Plaintiff's counsel, Richard Liebowitz, has filed over 700 cases in this district since 2016 asserting claims of copyright infringement. The instant action was among their number. In this action, the plaintiff sued an Idaho limited liability company based on the assertion that it had displayed the plaintiff's copyrighted photograph on its website. The defendant was served on November 30. Despite his obligation to do [*2] so, Mr. Liebowitz did not file on ECF either an affidavit reflecting service of the complaint or proof that he had served the initial pretrial conference notice on the defendant.

Moreover, despite the assertion in the complaint that the defendant "transacts business in New York," it appears that the defendant does not do so. On January 17, the defendant moved to dismiss for lack of personal jurisdiction. *McDermott, 2018 U.S. Dist. LEXIS 28664, 2018 WL 1033240, at *1*. See also 17cv9230, ECF No. 12. Before opposition to the motion was due, the plaintiff voluntarily dismissed his suit. That same day, the defendant sought attorney's fees and costs. *McDermott, 2018 U.S. Dist. LEXIS 28664, 2018 WL 1033240, at *1*. See also 17cv9230, ECF No. 18. In his opposition to the motion for attorney's fees and costs, Mr. Liebowitz did not suggest that he had any non-frivolous reason to believe that there was personal jurisdiction over the defendant in this district. For the reasons described in the February 22 Opinion, the Court in an exercise of its discretion denied the defendant's motion and declined to award fees against Mr. Liebowitz "on this occasion." *McDermott, 2018 U.S. Dist. LEXIS 28664, 2018 WL 1033240, at *3*. The February 22 Opinion warned that should Mr. Liebowitz file any other action in this district against a defendant over whom there is no non-frivolous

Exhibit B

2018 U.S. Dist. LEXIS 184049, *2

basis to find [*3] that there is personal jurisdiction, "the outcome may be different." Id.

Despite the exercise of restraint in declining to impose sanctions against Mr. Liebowitz, Mr. Liebowitz has brought this motion.[1] He objects to the description in the February 22 Opinion of Mr. Liebowitz as a known copyright troll, *2018 U.S. Dist. LEXIS 28664, [WL] at *3*, and requests that the February 22 Opinion with that term "redacted."

DISCUSSION

Mr. Liebowitz brings his motion pursuant to *Rule 60(b)(1)* or *60(b)(6)*. Neither of these provisions applies. Each of them provides a limited avenue for relief from a judgment. Here, the plaintiff seeks no relief from the judgment; it voluntarily dismissed this action. Mr. Liebowitz is certainly not requesting that this Court revisit its decision to refrain from imposing sanctions upon him.

Under *Rule 60*, a court

> may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> > (1) mistake, inadvertence, surprise, or excusable neglect;
> >
> > . . .
> >
> > (6) any other reason that justifies relief.

*Fed. R. Civ. P. 60(b)*. Relief under *Rule 60(b)* is "generally not favored and is properly granted only upon a showing of exceptional circumstances." *Insurance Co. of N. Am. v. Pub. Serv. Mut. Ins. Co., 609 F.3d 122, 131 (2d Cir. 2010)* (citation omitted).

While *Rule 60(b)(6)* represents a "grand reservoir of equitable power to do justice [*4] in a particular case . . . that reservoir is not bottomless." *Stevens v. Miller, 676 F.3d 62, 67 (2d Cir. 2012)* (citation omitted). Accordingly, it is "properly invoked only when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship . . . ." *Nemaizer v. Baker, 793 F.2d 58, 63 (2d Cir. 1986)* (citation omitted).

Moreover, *Rule 60(b)(6)* applies only "when the

asserted grounds for relief are not recognized in clauses *(1)-(5) of the Rule* and there are extraordinary circumstances justifying relief." *Tapper v. Hearn, 833 F.3d 166, 172 (2d Cir. 2016)* (citation omitted). *Rule 60(b)(1)* and *Rule 60(b)(6)* are "mutually exclusive, such that any conduct which generally falls under the former cannot stand as a ground for relief under the latter." *Stevens, 676 F.3d at 67* (citation omitted). Thus, "[w]here a party's *Rule 60(b)* motion is premised on grounds fairly classified as mistake, inadvertence, or neglect, relief under *Rule 60(b)(6)* is foreclosed." Id.

Even if it were appropriate to consider this request for a "redaction" under *Rule 60*, Mr. Liebowitz has failed to explain what the refiling of the February 22 Opinion with a redaction would accomplish. He has also failed to demonstrate that any modification to or redaction of the February 22 Opinion is warranted. His litigation strategy in this district fits squarely within the definition of a copyright troll.

The February [*5] 22 Opinion defined a copyright troll as follows:

> In common parlance, copyright trolls are more focused on the business of litigation than on selling a product or service or licensing their copyrights to third parties to sell a product or service. A copyright troll plays a numbers game in which it targets hundreds or thousands of defendants seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim.

*McDermott, 2018 U.S. Dist. LEXIS 28664, 2018 WL 1033240, at *3 n.4* (citation omitted).

In the over 700 cases Mr. Liebowitz has filed since 2016, over 500 of those have been voluntarily dismissed, settled, or otherwise disposed of before any merits-based litigation. In most cases, the cases are closed within three months of the complaint filing. In some instances, cases were dismissed because Mr. Liebowitz failed to prosecute his clients' claims. See, e.g., Vincheski v. University of Minnesota et al., 16cv4590 (KBF), ECF No. 19 (S.D.N.Y. Sept. 9, 2016), (terminating the action after plaintiff failed to amend her complaint pursuant to a court order directing plaintiff to amend her complaint due to deficiencies in the dismissed original complaint). In other cases, judges have noted [*6] Mr. Liebowitz's unorthodox litigation practices. See, e.g., Cuffaro v. Nylon Media, Inc., 18cv1391 (GHW), ECF No. 11 (S.D.N.Y. Apr. 11, 2018) (noting that plaintiff, in a sworn affidavit in support of a

---

[1] On March 16, 2018, the Court denied the defendant's motion for reconsideration of the decision denying the request for sanctions.

2018 U.S. Dist. LEXIS 184049, *6

default judgment, misstated key dates and urging "counsel for plaintiff to use greater caution and to avoid such clear errors when making submissions to the Court"); Kmonicek v. Daily Burn, Inc., 17cv497 (KPF), ECF No. 23 (S.D.N.Y. June 15, 2017) ("The Court is surprised to have received the above request [for an extension to file a stipulation of dismissal], which was not at all foreshadowed during yesterday's telephone conference. And the Court is hesitant to grant the parties' third extension request in order to accommodate what appear to be ministerial concerns not touching on the substance of the parties' settlement.") (emphasis in original) (each extension in the case was requested by Mr. Liebowitz). A number of Mr. Liebowitz's cases have been dismissed from the bench as frivolous. See, e.g., Cruz v. Am. Broad. Cos., 17cv8794 (LAK), 2017 U.S. Dist. LEXIS 196317, 2017 WL 5665657, at *2 n.11 (S.D.N.Y. Nov. 17, 2017) (Judge Kaplan noted that he "awarded over $121,000 in attorney's fees against a client of Mr. Liebowitz in three other, related copyright infringement cases [*7] that were dismissed from the bench.) (citing Kanongataa v. Am. Broad. Cos., 16cv7392 (LAK), 2017 U.S. Dist. LEXIS 169534, 2017 WL 4776981, at *3 (S.D.N.Y. Oct. 4, 2017)). Multiple courts, on their own initiative, have ordered Mr. Liebowitz to show cause why he should not be required to post security for costs as a condition of proceeding further with an action. See, e.g., Pereira v. Kendall Jenner, Inc., 17cv6945 (RA), ECF No. 24 (S.D.N.Y. Jan. 4, 2018) (Mr. Liebowitz voluntarily dismissed the case before responding to Judge Abrams's Show Cause Order.); Cruz v. Am. Broad. Cos., 17cv8794 (LAK), 2017 U.S. Dist. LEXIS 196317, 2017 WL 5665657, (S.D.N.Y. Nov. 17, 2017) (Mr. Liebowitz informed the court that the parties had settled the case before responding to Judge Kaplan's Show Cause Order.); Leibowitz v. Galore Media, Inc., 18cv2626 (RA) (HBP), 2018 U.S. Dist. LEXIS 161110, 2018 WL 4519208 (S.D.N.Y. Sept. 20, 2018) (denying motion for reconsideration of order to post security for costs); see also Tabak v. Idle Media, Inc., 17cv8285 (AT), ECF No. 5, 2017 U.S. Dist. LEXIS 219504 (S.D.N.Y. Oct. 31, 2017) (Judge Torres ordered Mr. Liebowitz to show cause why the action should not be transferred. Mr. Liebowitz voluntarily dismissed the case before responding to the Order to Show Cause.); Reynolds v. Intermarkets, Inc., 17cv8795 (AT), ECF No. 4 (S.D.N.Y. Nov. 14, 2017) (same). Mr. Liebowitz has been admonished for repeating arguments that "have no basis [*8] in law." Terry v. Masterpiece Advertising Design, 17cv8240 (NRB), 2018 U.S. Dist. LEXIS 104467, 2018 WL 3104091 at *2 (S.D.N.Y. June 21, 2018). Mr. Liebowitz has also been sanctioned for failing

to comply with court orders and for failing to produce materials during discovery. Romanowicz v. Alister & Paine, Inc., 17cv8937 (PAE) (KHP), ECF No. 24 (S.D.N.Y. June 22, 2018) (ordering Mr. Liebowitz to pay $200 to the Clerk of Court as a consequence of his failure to comply with an Order directing him to file an affidavit of service of a Default Judgment); Ferdman v. CBS Interactive, Inc., 17cv1317 (PGG), 342 F. Supp. 3d 515, 2018 U.S. Dist. LEXIS 162835, 2018 WL 4572241 (S.D.N.Y. Sept. 21, 2018) (discovery sanctions). Mr. Liebowitz has filed nearly 200 cases in this district in 2018 alone, often times filing multiple cases on the same day.

Nevertheless, Mr. Liebowitz argues that his conduct does not comport with the definition of term "copyright troll" because copyright trolls engage in a narrower type of behavior: specifically, multi-defendant John Doe litigation brought by the copyright holders of pornographic material. This argument is unavailing. First, simply because the term is also invoked in another type of case does not preclude its application here. Second, the article that Mr. Liebowitz cites for the proposition that the term applies to enforcers of copyrights [*9] in pornography explains that such practices are just "a particular kind of copyright trolling." Matthew Sag; Copyright Trolling, An Empirical Study, 100 Iowa L. Rev. 1105, 1108 (2015) (emphasis added). The article, and courts that cite it, define the "essence of trolling" as something broader: "seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim." Id.; see also Creazioni Artistiche Musicali, S.r.l. v. Carlin America, Inc., 14cv9270 (RJS), 2017 U.S. Dist. LEXIS 124082, 2017 WL 3393850, at *4 (S.D.N.Y. Aug. 4, 2017). As evidenced by the astonishing volume of filings coupled with an astonishing rate of voluntary dismissals and quick settlements in Mr. Liebowitz's cases in this district, it is undisputable that Mr. Liebowitz is a copyright troll.

This Court has generally shown Mr. Liebowitz leniency, despite his questionable tactics. In this case, the Court declined twice to award the defendant attorney's fees. In another, the Court imposed a bond on Mr. Liebowitz's client in an amount that was less than a tenth of the request made by the defendant. See Reynolds v. Hearst, 17cv6720 (DLC), 2018 U.S. Dist. LEXIS 35453, 2018 WL 1229840 (S.D.N.Y. Mar. 5, 2018). In yet another, the Court modified sanctions imposed on Mr. Liebowitz to "more directly address the deficiencies in [his] performance [*10] . . . and deter their repetition." Steeger v. JMS Cleaning Services, LLC, 17cv8013

Exhibit B

2018 U.S. Dist. LEXIS 184049, *10

(DLC), 2018 U.S. Dist. LEXIS 42797, 2018 WL
1363497, at *3 (S.D.N.Y. Mar. 15, 2018).

In this case, the February 22 Opinion used an apt term
to describe Mr. Liebowitz's copyright litigation practice.
He has not shown that doing so has burdened him with
any undue and extreme hardship. Press coverage that
accurately summarizes the status and outcomes of Mr.
Liebowitz's cases in this District does not present an
undue and extreme hardship. Nor does Mr. Liebowitz
explain what the reissuance of the February 22 Opinion
with a redaction would accomplish.

<u>CONCLUSION</u>

Mr. Liebowitz's March 29 motion to redact the term
"copyright troll" from the February 22 Opinion is denied.

Dated: New York, New York

October 26, 2018

/s/ Denise Cote

DENISE COTE

United States District Judge

End of Document

⚠ Caution
As of: May 17, 2019 4:47 PM Z

## *Kali Konangataa v. ABC*

United States District Court for the Southern District of New York

June 21, 2017, Decided; June 21, 2017, Filed

16-cv-7382 (LAK); 16-cv-7383 (LAK); 16-cv-7472 (LAK)

**Reporter**

2017 U.S. Dist. LEXIS 95812 *; 123 U.S.P.Q.2D (BNA) 1112 **; 45 Media L. Rep. 1913; 2017 WL 2684067

KALI KONANGATAA, Plaintiff, -against- AMERICAN BROADCASTING COMPANIES, INC., et ano., Defendants.KALI KONANGATAA, Plaintiff, -against- NBCUNIVERSAL MEDIA, LLC, Defendant.KALI KONANGATAA, Plaintiff, -against- COED MEDIA GROUP, LLC, Defendants.

**Subsequent History:** Motion granted by, Costs and fees proceeding at *Kanongataa v. ABC, 2017 U.S. Dist. LEXIS 169534 (S.D.N.Y., Oct. 4, 2017)*

## Core Terms

inherent power, Video, defendants', attorney's fees, awards, bad faith, parties, misconduct, sanctions, publicly, costs, live-streaming, attorney's, frivolous, Facebook, courts, law law law, circumstances, allegations, alterations, encountered, complaints, motivation, prevailing, settlement, undertaken, positions, quotation, reporting, lawsuits

**Counsel:** **[*1]** For Kali Kanongataa, Plaintiff (1:16-cv-07382-LAK, 1:16-cv-07383-LAK, 1:16-cv-07472-LAK): Yekaterina Tsyvkin, Liebowitz Law Firm PLLC, Valley Stream, NY; Richard Liebowitz, Liebowitz Law Firm, PLLC, Valleystream, NY.

For American Broadcasting Companies, Inc., Yahoo! Inc., Defendants (1:16-cv-07382-LAK): Nathan Ellis Siegel, LEAD ATTORNEY, Levine Sullivan Koch & Schulz, LLP (DC2), Washington, DC; Dana Robinson Green, Levine Sullivan Koch & Schulz, LLP(DC), Washington, DC.

For NBCUniversal Media, LLC, Defendant (1:16-cv-07383-LAK): Erik Bierbauer, LEAD ATTORNEY, NBC Universal, Talent Negotiations and Labor Relations, New York, NY.

For COED Media Group, LLC, Defendant (1:16-cv-07472-LAK): Nancy Evelyn Wolff, Scott Jonathan Sholder, LEAD ATTORNEYS, Cowan, DeBaets, Abrahams & Sheppard LLP, New York, NY.

**Judges:** Lewis A. Kaplan, United States District Judge.

**Opinion by:** Lewis A. Kaplan

## Opinion

**[**1112]** MEMORANDUM OPINION

LEWIS A. KAPLAN, *District Judge.*

These previously dismissed copyright infringement actions are before the Court on defendants' joint motion for awards of attorneys' fees pursuant to *Section 505* of the Copyright Act[1] and for sanctions pursuant to *Section 1927* of the Judicial Code[2] and the inherent power of the Court.

**[**1113]** *Facts*

As these cases all were **[*2]** determined on motions to dismiss the complaints pursuant to *Rule 12(b)(6)* — motions on which the plaintiff was entitled to the assumption that the well pleaded factual allegations of the complaints are true — very little need be said about the facts. It suffices merely to quote from part of the defendants' brief summary[3] to provide the background for this ruling:

> On May 16, 2016, Plaintiff publicly live-streamed on Facebook a 45-minute video of his partner giving birth to their child in a hospital delivery room (the

---

[1] *17 U.S.C. § 505.*

[2] *28 U.S.C. § 1927.*

[3] DI 37, at 2. (All references to the docket entries are to those in 16-cv-7382 (LAK)).

Exhibit B

2017 U.S. Dist. LEXIS 95812, *2; 123 U.S.P.Q.2D (BNA) 1112, **1113

"Video"). As of this filing, the Video continues to be publicly available at https://www.facebook.com/PolynesianNonprofit/videos/vb.100001911004128/1073990016008022/?type=2&theater . [citation omitted]. Defendants and other news outlets reported on the Video and offered social commentary about the phenomenon of someone publicly live-streaming a life event that traditionally is considered personal. Defendants used very brief excerpts of the Video in their news reports: 30 seconds for NBC, 22 seconds for ABC and Yahoo, and a mere screengrab for CMG.

The Court notes also that the Video remains publicly available on Facebook as of this writing, more than a full year after its live-streaming.[4]

On February 23, 2017, this Court granted defendants' motions to dismiss from the bench on the ground [*3] that the uses complained of were fair uses. It stated:[5]

> This was in each case a use squarely within the preambulatory portion of *Section 107 of the Copyright Act*, namely, criticism, comment, news reporting, which goes a significant part of the distance toward a conclusion of fair use. I believe the use was transformative. The amount and substantiality of the portions used in relation to the copyright work as a whole are very small in each case and, in the case of COED Media, trivial and *de minimis* for sure. And there are no plausible allegations that would permit a conclusion that the effect of the use on the part of any of the defendants had any effect on any potential market for or any value of the copyrighted work.

Plaintiff did not appeal.

## Discussion

## Copyright Act Section 505

Section 505 of the Copyright Act provides that:
> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this

title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

Defendants were the prevailing parties in these actions. Awards of attorneys' fees [*4] therefore lie within the discretion of this Court. In exercising that discretion, courts consider "several nonexclusive factors" including "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence."[6] An important consideration in deciding to award fees is that "fee awards under § 505 should encourage the types of lawsuits that promote" the purposes of the Copyright Act.[7] Thus, courts in making determinations under *Section 505* must give appropriate regard to reaching results that would "encourage[] parties with strong legal positions to stand on their rights and deter[] those with weak ones from proceeding with litigation."[8] As the Supreme Court made clear in *Kirtsaeng*, this warrants "giving substantial weight to the reasonableness of a losing party's position."[9]

Here, no reasonable lawyer with any familiarity with the law of copyright could have thought that the fleeting and minimal uses, in the context of news reporting and social commentary, [**1114] that these defendants made of tiny portions of the 45-minute Video was anything but fair.[10] An award of attorneys' fees to the defendants would serve to "encourage[] [*5] parties with strong legal positions to stand on their rights" while deterring "those with weak ones from proceeding with litigation."[11] Nor is any special solicitude warranted toward plaintiff on the theory that these lawsuits

---

[4] https://www.facebook.com/PolynesianNonprofit/videos/vb.100001911004128/1073990016008022/?type=2&theater (last visited June 19, 2017).

[5] Tr., Feb. 23, 2017 [DI 34], at 43-44.

[6] *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S.Ct. 1979, 1985, 195 L. Ed. 2d 368 (2016) (internal quotations and alterations omitted).

[7] *Id.* at 1986.

[8] *Id.*

[9] *Id.* at 1985, 1986-87.

[10] *See, e.g.*, *Authors Guild v. Google, Inc.*, 804 F.3d 202, 215-16 (2d Cir. 2015) (noting that "copying from an original for the purpose of criticism or commentary on the original or provision of information about it, tends most clearly to satisfy" a fair use defense).

[11] *Kirtsaeng*, 136 S.Ct. at 1986.

Exhibit B

2017 U.S. Dist. LEXIS 95812, *5; 123 U.S.P.Q.2D (BNA) 1112, **1114

"resolved an important and close legal issue and thus meaningfully clarified copyright law."[12] This, after all, was what a wag the Court once encountered would have called a "purple and green spotted cow" case — a case the like of which is not particularly likely ever to be encountered again.

To be sure, the parties have spilled a good deal of ink on the question whether the plaintiff acted in bad faith or was motivated by less than praiseworthy goals. There may well be justification for defendants' implication that these were strike suits, designed to extort settlements from defendants on the basis that the defense costs would exceed what plaintiff would accept in settlement. There may be basis too for their charges of inappropriate litigation behavior. The Court nevertheless assumes *arguendo* that plaintiff's motives were blameless. But that does not get plaintiff where he wants to go.

This Court concludes, in the exercise of its discretion, that awards [*6] of attorneys fees to the defendants would much better serve the purposes of the Copyright Act than the denial of such awards. The question of the amount of the awards, as defendants suggest, will be determined in subsequent proceedings.

### Section 1927 and Inherent Power

Defendants argue also that plaintiff and his attorney should be sanctioned under *Section 1927* and the inherent power of the court. They point not only to the frivolous nature of these cases, but to what they regard as mendacity and other litigation misconduct. But the standards governing that aspect of their motion are clear and essentially unhelpful to them.

In *Oliv ieri v. Thompson*,[13] the Court of Appeals wrote:[14]

> [W]e hold today that an award made under *§ 1927* must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent power, *accord Colucci v. New York Times Co., 533 F. Supp. 1011, 1013-14 (S.D.N.Y.1982)* (Weinfeld, J.). Indeed, the only meaningful difference between

an award made under *§ 1927* and one made pursuant to the court's inherent power is, as noted above, that awards under *§ 1927* are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.

And that standard, which [*7] requires "clear evidence" of bad faith, applies in this case on both of defendants' theories.[15]

In all the circumstances, the Court declines to award sanctions under *Section 1927* or its inherent power. To whatever extent plaintiff is able to compensate defendants financially for the costs of defending this frivolous litigation, he can be made to do so under Copyright Act *Section 505* without a determination that defendants have put forth clear evidence of bad faith. And defendants may pursue any claims of professional misconduct on the part of plaintiff's attorney before appropriate disciplinary bodies.

[**1115] *Conclusion*

For the foregoing reasons, [*8] defendants' joint motion [16-cv-7382 DI 36; 16-cv-7383 DI 50; 16-cv-7472 DI 30] is granted to the extent that defendants shall recover of plaintiff, pursuant to *17 U.S.C. § 505*, reasonable attorneys' fees to be fixed by subsequent motion, filed no later than 21 days after the date hereof, and denied in all other respects.

SO ORDERED.

Dated: June 21, 2017

/s/ Lewis A. Kaplan

---

[12] *Id. at 1985* (internal quotation marks and alterations omitted).

[13] *803 F.2d 1265 (2d Cir. 1986)*.

[14] *Id. at 1273*.

[15] *Id. at 1273* ("Like an award made pursuant to the court's inherent power, an award under § proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.").

To be sure, the Circuit has eliminated any requirement of a finding of bad faith where sanctions are sought with respect to invocations of a court's "inherent power to sanction misconduct by an attorney that involves that attorney's violation of a court order or other misconduct that is not undertaken for the client's benefit." *United States v. Seltzer, 227 F.3d 36, 41-42 (2d Cir. 2000)*. But that is not the situation before the Court here.

Exhibit B

2017 U.S. Dist. LEXIS 95812, *8; 123 U.S.P.Q.2D (BNA) 1112, **1115

Lewis A. Kaplan

United States District Judge

---

End of Document

Exhibit B

🅐 Neutral
As of: January 8, 2020 2:00 PM Z

## *Kanongataa v. ABC*

United States District Court for the Southern District of New York

October 4, 2017, Decided; October 4, 2017, Filed

16-cv-7382 (LAK); 16-cv-7383 (LAK); 16-cv-7472 (LAK)

**Reporter**
2017 U.S. Dist. LEXIS 169534 *; Copy. L. Rep. (CCH) P31,165

KALI KANONGATAA, Plaintiff, -against- AMERICAN BROADCASTING COMPANIES, INC., et ano., Defendants.KALI KANONGATAA, Plaintiff, -against- NBCUNIVERSAL MEDIA, LLC, Defendant.KALI KANONGATAA, Plaintiff, -against- COED MEDIA GROUP, LLC, Defendant.

**Prior History:** *Kali Konangataa v. ABC, 2017 U.S. Dist. LEXIS 95812 (S.D.N.Y., June 21, 2017)*

## Core Terms

attorney's fees, defendants', Video, cases, awards

**Counsel:** **[*1]** For Kali Kanongataa, Plaintiff (1:16-cv-07382-LAK, 1:16-cv-07383-LAK, 1:16-cv-07472-LAK): Yekaterina Tsyvkin, Liebowitz Law Firm PLLC, Valley Stream, NY; Richard Liebowitz, Liebowitz Law Firm, PLLC, Valleystream, NY.

For American Broadcasting Companies, Inc., Yahoo! Inc., Defendants (1:16-cv-07382-LAK): Nathan Ellis Siegel, LEAD ATTORNEY, Levine Sullivan Koch & Schulz, LLP (DC2), Washington, DC; Dana Robinson Green, Levine Sullivan Koch & Schulz, LLP(DC), Washington, DC.

For NBCUniversal Media, LLC, Defendant (1:16-cv-07383-LAK): Erik Bierbauer, LEAD ATTORNEY, NBC Universal, Talent Negotiations and Labor Relations,

New York, NY.

For COED Media Group, LLC, Defendant (1:16-cv-07472-LAK): Nancy Evelyn Wolff, Scott Jonathan Sholder, LEAD ATTORNEYS, Cowan, DeBaets, Abrahams & Sheppard LLP, New York, NY.

**Judges:** Lewis A. Kaplan, United States District Judge.

**Opinion by:** Lewis A. Kaplan

## Opinion

**MEMORANDUM AND ORDER**

LEWIS A. KAPLAN, *District Judge*.

These copyright infringement actions have been dismissed by the Court, which subsequently granted defendants' joint motion for awards of attorneys' fees pursuant to *Section 505 of the Copyright Act*.[1] The matter now is before the Court on defendants' motions to fix the amounts of the fee awards. **[*2]**

*Facts*

As these cases all were determined on motions to

---

[1] *17 U.S.C. § 505 (2012)*.

Kanongataa v. ABC

dismiss the complaints pursuant to *Rule 12(b)(6)* — motions on which the plaintiff was entitled to the assumption that the well pleaded factual-allegations of the complaints are true — very little need be said about the facts. It suffices merely to quote from part of the defendants' brief summary[2] to provide the background for this ruling:

> On May 16, 2016, Plaintiff publicly live-streamed on Facebook a 45-minute video of his partner giving birth to their child in a hospital delivery room (the "Video"). As of this filing, the Video continues to be publicly available at *https://www.facebook.com/PolynesianNonprofit/videos/vb.100001911004128/107 3990016008022/?type=2&theater* . [citation omitted]. Defendants and other news outlets reported on the Video and offered social commentary about the phenomenon of someone publicly live-streaming a life event that traditionally is considered personal. Defendants used very brief excerpts of the Video in their news reports: 30 seconds for NBC, 22 seconds for ABC and Yahoo, and a mere screengrab for CMG.

The Court notes also that the Video remains publicly available on Facebook as of this writing, well over a full year after its live-streaming.[3]

On February 15, 2017, this Court **[*3]** granted defendants' motions to dismiss from the bench on the ground that the uses complained of were fair uses. It stated:[4]

> This was in each case a use squarely within the preambulatory portion of *Section 107 of the Copyright Act*, namely, criticism, comment, news reporting, which goes a significant part of the distance toward a conclusion of fair use. I believe the use was transformative. The amount and substantiality of the portions used in relation to the copyrighted work as a whole are very small in each case and, in the case of COED Media, trivial and *de minimis* for sure. And there are no plausible allegations that would permit a conclusion that the effect of the use on the part of any of the

defendants had any effect on any potential market for or any value of the copyrighted work.

Plaintiff did not appeal. Subsequently, defendants moved for attorneys' fees under *Section 505 of the Copyright Act*[5] and for sanctions. The Court granted the motion to the extent of awarding attorneys' fees in amounts to be determined but denied sanctions.

Defendants now have moved for awards of attorneys' fees as follows: ABC and Yahoo - $60,000, COED Media Group ("CMG") - $30,839, and NBC - $30,630. Plaintiff deploys **[*4]** a number of arguments to avoid or reduce the amounts sought.

*Discussion*

*Plaintff's Means*

Plaintiff begins by claiming — in an unsworn memorandum — that he is "a person of limited means" and that a full fee award could result in bankruptcy.[6]

A court of course has discretion in fixing the amount of attorneys' fees awarded under *Section 505* and may consider the financial means of the party against whom they are awarded in fixing the amount.[7] It bears in mind that "the aims of the statute are compensation and deterrence where appropriate, but not ruination."[8] The difficulty here, however, is that the plaintiff has submitted no evidence at all as to his financial circumstances — only an unsworn statement in a memorandum by his lawyer,[9] which does not cut it. As Judge Chin illustrated in the *Muller* case, reductions in

---

[2] DI 37, at 2. (All references to the docket entries are to those in 16-cv-7382 (LAK)).

[3] *https://www.facebook.com/PolynesianNonprofit/videos/vb.10 0001911004128/107399001* 6008022/?type=2&theater (last visited Oct. 3, 2017).

[4] Tr., Feb. 15, 2017 [DI 34], at 41-42 (italics added).

---

[5] *17 U.S.C. § 505 (2012)*.

[6] DI 55, at 2.

[7] *E.g., Lieb v. Topstone Indus., Inc., 788 F.2d 151, 156 (3d Cir. 1986)*.

[8] *Id.; accord, Muller v. Twentieth Cent. Fox Film Corp., No. 08 Civ. 02550 (DC), 2011 U.S. Dist. LEXIS 98248, 2011 WL 3678712, at *4 (S.D.N.Y. Aug. 22, 2011)* (Chin, J.); *see also, e.g., Rosciszewski v. Arete Assocs., Inc., 1 F.3d 225, 234 (4th Cir. 1993)*.

[9] The Court finds no affidavit or declaration of the plaintiff in the record, and its attention has not been called to any relevant financial information.

Katie Birchenough                                        <span style="color:red">Exhibit B</span>

Kanongataa v. ABC

fee awards based on an unsuccessful party's limited means typically, or at least often, are made in response to evidence rather than airy claims.[10] And this is not unique to fees under the _Copyright Act_. A party resisting an award of costs under _Rule 54_ on the basis of inability to pay, for example, bears the burden of proving the extent of its financial resources.[11]

There is no reason to ignore plaintiff's failure to come forward with evidence of his financial situation here. From the outset of these cases, he demanded that NBC and ABC pay what they characterized as "inflated settlement demands."[12] In addition to these three cases, he brought three others based on substantially the same events.[13] The record in one of those cases explicitly reflects the fact that the case was settled.[14] The logical inference is that the two others, which were dismissed on consent, were settled as well. Thus, whatever personal assets plaintiff may have had when these cases were brought — and of that there is no evidence — it appears that he obtained additional monies in consequence of settling other cases based on the same episode. In all the circumstances — the lack of evidence of plaintiffs financial situation, compounded by the nondisclosure of the benefits he derived from other litigation based on these events — the Court declines to deny or adjust the otherwise appropriate amount of attorneys' fees on the basis of plaintiff's financial condition, as it has no competent evidence as to what it actually [*6] is.[15]

---

[10] _Muller, 2011 U.S. Dist. LEXIS 98248, 2011 WL 367812, at *4_ (citing cases); accord, [*5] _Hickey v. City of New York, 241 F.R.D. 150, 153-54 (S.D.N.Y. 2006)_ (Lynch, J.) ("[P]laintiffs simply assert that they cannot afford the costs. Plaintiffs' nine-word assertion in a dependant clause in the last sentence of their brief is insufficient to support a denial of costs, especially given the Court's obligation to articulate reasons for a denial based on indigency, [citation omitted] and the lack of documentation supporting the assertion [citation omitted].").

[11] _Whitfield v. Scully, 241 F.3d 264, 270 (2d Cir. 2001),_ _abrogated on other grounds without consideration of the point,_ _Bruce v. Samuels, 136 S. Ct. 627, 193 L. Ed. 2d 496 (2016)._

[12] 16-cv-7382 (LAK) DI 37, at 5.

[13] _Kanongataa v. CBS Broadcasting Inc., et al._, No. 16-cv-7421 (LAK); _Kanongataa v. IHeartMedia, Inc._, No. 16-cv-7471 (LAK); _Kanongataa v. Rodale Inc._, No. 16-cv-8293 (LAK).

[14] 16-cv-8293 (LAK) DI 19.

[15] The Court expresses no view on whether and to what extent plaintiff may have recourse against his attorney for the

_Plaintiff's Other Arguments_

Plaintiff attempts to challenge the reliability, sufficiency, or contemporaneity of one or more of the defendants' time records, the costs charged by NBC for the work of its house counsel, and the overall reasonableness of the expenses.

The Court has considered each of these arguments carefully. It rejects each of them, substantially for the reasons set out in defendants' joint reply memorandum.

_Conclusion_

For the foregoing reasons, the defendants' respective motions [16-cv-7382 DI 46; 16-cv-7383 DI 59; 16-cv-7472 DI 38] are granted in all respects. The Clerk shall enter judgments as follows:

No. 16-cv-7382 - Defendants American Broadcasting Companies, Inc. and Yahoo!Inc. jointly shall recover of plaintiff the sum of $60,000.00.

No. 16-cv-7383 - Defendant NBCUniversal Media, LLC shall recover of plaintiff the sum of $30,630.00.

No. 16-cv-7472 - Defendant COED Media Group, LLC shall recover of plaintiff the sum of $30,839.00.

SO ORDERED.

Dated: October 4, 2017

/s/ Lewis A. Kaplan

Lewis A. Kaplan

United States District Judge

---

attorneys' fees awarded here in view of any attorney advice to pursue this case and the failure to submit evidence of plaintiff's financial condition.

Katie Birchenough

Exhibit B

 Positive

As of: January 8, 2020 1:57 PM Z

## *Cruz v. ABC*

United States District Court for the Southern District of New York

November 17, 2017, Decided; November 17, 2017, Filed

17-cv-8794 (LAK)

**Reporter**

2017 U.S. Dist. LEXIS 196317 *

ALEX CRUZ, Plaintiff, -against- AMERICAN BROADCASTING COMPANIES, INC., Defendant.

## Core Terms

costs, fair use, attorney's fees, infringement, photograph

**Counsel:** **[*1]** For Alex Cruz, Plaintiff: Richard Liebowitz, ATTORNEY TO BE NOTICED, Liebowitz Law Firm, PLLC, Valleystream, NY USA.

**Judges:** Lewis A. Kaplan, United States District Judge.

**Opinion by:** Lewis A. Kaplan

## Opinion

### MEMORANDUM AND ORDER

Lewis A. Kaplan, *District Judge.*

On October 31, 2017, an alleged terrorist drove a truck down a bicycle path beside the West Side Highway in Manhattan, killing eight people and injuring eleven more before being shot by police. Plaintiff captured a photograph of the driver lying in the street shortly after

he was brought down by police bullets. The incident was the subject of intense news coverage by innumerable media outlets including American Broadcasting Companies, Inc. ("ABC"). ABC displayed plaintiff's photograph in its news reporting on the attack.

Less than a month later, plaintiff brought this action against ABC claiming that its display of his photograph infringed his copyright. The matter is before the Court on the question of whether the Court, on its own motion, should require plaintiff to post security for costs, including attorneys' fees, as a condition of proceeding with this action.

*Discussion*

We begin with the pertinent rule, *Local Civil Rule 54.2.* It provides:

> "The Court, on motion or on its own initiative, **[*2]** may order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate. For failure to comply with the order the Court may make such orders in regard to noncompliance as are just, and among others the following: an order striking out pleadings or staying further proceedings until the bond is filed or dismissing the action or rendering a judgment by default against the non-complying party."

The costs for which security may be required include defendant's attorneys' fees, as *Section 505* of the Copyright Act[1] permits a prevailing defendant to recover

---

[1] *17 U.S.C. § 505 (2012).*

Exhibit B

Cruz v. ABC

its reasonable attorneys' fees.[2] "Factors generally considered [in determining whether to require security for costs] include: the financial condition and ability to pay of the party at issue; whether that party is a non-resident or foreign corporation; the merits of the underlying claims; the extent and scope of discovery; the legal costs expected to be incurred; and compliance with past court orders."[3] Security often has been required where the merits of a plaintiff's case are questionable and there is doubt as to the plaintiff's ability to satisfy any costs judgment that ultimately [*3] may be imposed.[4]

The Court of course is not fully informed with respect to the merits of plaintiff's case and therefore does not prejudge them. Nevertheless, even on the face of the complaint, there appear to be serious questions as to the merits of plaintiff's claim.

Photographs, with only very rare exceptions, are proper subjects of copyright.[5] Those who hold copyright in photographs generally should be compensated for infringement of their exclusive rights. But the law long has recognized, and Section 107 of the Copyright Act[6] has given statutory recognition to the principle, that some unlicensed uses of copyrighted works are "fair" and thus do not give rise to infringement liability. The statute itself states in relevant part:

> "[T]he fair use of a copyrighted work, including such use by reproduction . . . or by any other means . . . , for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

> (1) the purpose and character [*4] of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work."[7]

As this Court pointed out only recently, a use squarely within the preambulatory portion of Section 107 of the Copyright Act — namely, "criticism, comment, [or] news reporting" — goes at least part of the distance toward a conclusion of fair use.[8] Moreover, Time Inc. v. Bernard Geis Associates,[9] the case that held that the use in a book of copies of frames of the famous and copyrighted Zapruder film of the assassination of President Kennedy was fair, at first blush seems to lend substantial support to a defense of fair use.[10] Although, to be sure, the Court doubtless will have a fuller and more informed view as this litigation proceeds, there seems a reasonable possibility that ABC will prevail on a fair use defense and, moreover, that it would be entitled to recover costs, including attorneys' fees, in that event.[11]

*Conclusion*

In the circumstances, plaintiff shall show cause, on or before December 1, 2017, why an order should not be entered requiring that he post security for costs as a

---

[2] E.g., Selletti v. Carey, 173 F.R.D. 96, 100 (S.D.N.Y. 1997) (Chin, J.), aff'd, 173 F.3d 104 (2d Cir. 1999).

[3] Id. at 100-01.

[4] E.g., id. at 101-102; Bressler v. Liebman, No. 96-cv-9310 (LAP), 1997 U.S. Dist. LEXIS 11963, 1997 WL 466553, at *4 (S.D.N.Y. Aug. 14, 1997).

[5] See, e.g., Mannion v. Coors Brewing Co., 377 F. Supp. 2d 444, 450-54 (S.D.N.Y. 2005); The Bridgeman Art Library, Ltd. v. Corel Corp., 36 F. Supp. 2d 191, 195-97 (S.D.N.Y. 1999).

[6] 17 U.S.C. § 107 (2012).

[7] Emphasis supplied.

[8] [*5] Kanongataa v. Am. Broadcasting Cos., Nos. 16-cv-7382, 16-cv-7383, 16-cv-7472 (LAK), 2017 U.S. Dist. LEXIS 169534, 2017 WL 4776981, at *1 (S.D.N.Y. Oct. 4, 2017); see also 4 Nimmer on Copyright § 13.05[A][1][a], at 13-160-13-161 (Rev. ed. 2017).

[9] 293 F. Supp. 130 (S.D.N.Y. 1968).

[10] See also 4 Nimmer on Copyright § 13.05[B][5], at 13-222.

[11] The Court notes also that (1) plaintiff's counsel, Richard Liebowitz, according to court records, has filed 452 cases in this Court in the last 21 months (of which 20 have been filed so far this month), many against media and publishing defendants, and (2) the undersigned awarded over $121,000 in attorneys fees against a client of Mr. Liebowitz in three other, related copyright infringement cases that were dismissed from the bench on fair use grounds. Kanongataa, 2017 U.S. Dist. LEXIS 169534, 2017 WL 4776981, at *3.

Exhibit B

Cruz v. ABC

condition of proceeding further with this action. Plaintiff's counsel is hereby directed to serve a copy of this order on the defendant no later than November 22, 2017. Defendant may respond to plaintiff's submission, if any, no later than December 15, 2017. Plaintiff may reply to any submission on behalf of the defendant no later than December 22, 2017.

SO ORDERED.

Dated: November 17, 2017

/s/ Lewis A. Kaplan

Lewis A. Kaplan

United States District Judge

End of Document

Katie Birchenough

Exhibit B

⚠ Caution
As of: May 17, 2019 4:56 PM Z

## *Strike 3 Holdings, LLC v. Doe*

United States District Court for the District of Columbia

November 16, 2018, Decided

Civil Case No. 18-1425

**Reporter**

351 F. Supp. 3d 160 *; 2018 U.S. Dist. LEXIS 195580 **; 128 U.S.P.Q.2D (BNA) 1602 ***; 2018 WL 6027046

STRIKE 3 HOLDINGS, LLC, Plaintiff, v. JOHN DOE subscriber assigned IP address 73.180.154.14, Defendant.

## Core Terms

anonymously, infringing, discovery, subpoena, expectation of privacy, cases, troll, discovery motion, court order, effectuate, subscriber, quotation, marks, pornography, specificity, DENIES, courts, Porn, geolocation, Downloaded, disclosure, publicly, requires, adult, watch, moot, law law law, identification, circumstances, defendants'

**Counsel:** [**1] For STRIKE 3 HOLDINGS, LLC, Plaintiff: Jessica Haire, FOX ROTHSCHILD LLP, Washington, DC.

**Judges:** Royce C. Lamberth, United States District Judge.

**Opinion by:** Royce C. Lamberth

## Opinion

[*161]  [***1603]  <u>MEMORANDUM OPINION</u>

Strike 3 Holdings, LLC produces "award winning, critically acclaimed adult motion pictures." Compl. ¶ 2. Or, as the *Miami Herald* describes, it is "[t]he Steven Spielberg of porn." Adiel Kaplan, *The Steven Spielberg of Porn Sues to Make Floridians Stop Pirating His Raunchy Videos*, Miami Herald (July 12, 2018, 4:48 PM), https://www.miamiherald.com/news/local/article214634930.html.

Strike 3 is also a copyright troll. Its swarms of lawyers hound people who allegedly watch their content through

Bittorrent, an online service enabling anonymous users to share videos despite their copyright protection. Since Bittorrent masks users' identities, Strike 3 can only [*162] identify an infringing Internet protocol (IP) address, using geolocation technology to trace that address to a jurisdiction. This method is famously flawed: virtual private networks and onion routing spoof IP addresses (for good and ill); routers and other devices are unsecured; malware cracks passwords and opens backdoors; multiple people (family, roommates, guests, [**2] neighbors, etc.) share the same IP address; a geolocation service might randomly assign addresses to some general location if it cannot more specifically identify another. *See, e.g.*, James Temple, *Lawsuit Says Grandma Illegally Downloaded Porn*, S.F. Chron. (July 15, 2011, 4:00 AM), https://www.sfgate.com/business/article/Lawsuit-says-grandma-illegally-downloaded-porn-2354720.php.

Simply put, inferring the person who pays the cable bill illegally downloaded a specific file is even less trustworthy than inferring they watched a specific TV [***1604] show. But in many cases, the method is enough to force the Internet service provider (ISP) to unmask the IP address's subscriber. And once the ISP outs the subscriber, permitting them to be served as the defendant, any future Google search of their name will turn-up associations with the websites *Vixen, Blacked, Tushy*, and *Blacked Raw*. The first two are awkward enough, but the latter two cater to even more singular tastes.

Little wonder so many defendants settle. Indeed, the copyright troll's success rate comes not from the *Copyright Act*, but from the law of large numbers. According to PACER, over the past thirteen months, Strike 3 has filed 1849 cases [**3] just like this one in courts across the country—forty in this district alone—closely following the copyright trolls who together consumed 58% of the federal copyright docket in 2015. These serial litigants drop cases at the first sign of resistance, preying on low-hanging fruit and staying one step ahead of any coordinated defense. They don't

Exhibit B

351 F. Supp. 3d 160, *162; 2018 U.S. Dist. LEXIS 195580, **3; 128 U.S.P.Q.2D (BNA) 1602, ***1604

seem to care about whether defendant actually did the infringing, or about developing the law. If a Billy Goat Gruff moves to confront a copyright troll in court, the troll cuts and runs back under its bridge. Perhaps the trolls fear a court disrupting their rinse-wash-and-repeat approach: file a deluge of complaints; ask the court to compel disclosure of the account holders; settle as many claims as possible; abandon the rest. *See* Matthew Sag & Jake Haskell, *Defense Against the Dark Arts of Copyright Trolling, 103 Iowa L. Rev. 571, 575-80 (2018); see also infra* text accompanying notes 1-4.

Here, that approach led Strike 3 astray. Because Strike 3's need for discovery does not outweigh defendant's privacy expectation, the Court will deny Strike 3's ex parte motion to subpoena defendant's ISP to discover defendant's identity prior to the 26(f) conference. That sunders Strike 3's [**4] entire case, since a failure to identify defendant makes effectuating service impossible. So the Court will dismiss this case without prejudice.

**I. Strike 3 cannot subpoena defendant's ISP because its discovery request lacks sufficient specificity and does not overcome defendant's privacy expectation.**

Strike 3's request for early discovery falls short of *Rule 26*'s requirements. A plaintiff can only discover an unknown defendant's identity through a court order under *Rule 26(d)(1)*. But the rule cabins a district court's discretion to order discovery to circumstances where a plaintiff shows good cause. *See Fed. R. Civ. P. 26(b)(1)*. And to show good cause, the D.C. Circuit requires establishing likely personal jurisdiction. *AF Holdings, LLC v. Doe, 752 F.3d 990, 995, 410 U.S. App. D.C. 41 (D.C. Cir. 2014)*. Here, Strike 3 clears that hurdle. *See id. at 996* (suggesting using geolocation services [*163] to track an infringing IP address to D.C. justifies a good-faith belief this court has personal jurisdiction).

Yet the D.C. Circuit never said that was the only requirement. For one, the Court must also balance Strike 3's need for discovery with a potentially-noninfringing defendant's right to be anonymous. Only the Second Circuit has articulated this balance, looking to the plaintiffs showing of a [**5] prima facie claim of actionable harm; their discovery request's specificity; their alternative means to obtain the subpoenaed information; the need for the subpoenaed information to advance the claim; and the objecting party's privacy expectation. *Arista Records, LLC v. Doe 3, 604 F.3d 110, 119 (2d Cir. 2010)* (citing *Sony Music Entm't Inc. v. Doe, 326 F. Supp. 2d 556, 564-65 (S.D.N.Y. 2004) (Chin, J.)*; *see also, e.g., Call of the Wild Movie, LLC v. Does 1-1,062, 770 F. Supp. 2d 332, 351 (D.D.C. 2011) (Howell, J.)* (applying this test); *Arista Records v. Does 1-19, 551 F. Supp. 2d 1, 8 (D.D.C. 2008) (Kollar-Kotelly, J.)* (same).

One can hardly blame the D.C. Circuit for its silence. Of the forty cases Strike 3 has filed in this district (including seven on a single day), none have reached the Court of Appeals. Twenty-two have been voluntarily dismissed, all but one following the same formula: Strike 3 files a complaint (identical in every case except for the infringing IP address). A few weeks later, Strike 3 files a motion to subpoena the anonymous defendant's ISP prior to the *Rule 26(f)* conference (identical in every case except for the particular ISP to be served—Comcast, Verizon, or RCN). Satisfied by Strike 3's showing of likely personal jurisdiction, the court grants the Motion, usually providing at least twenty days for the defendant to move to quash the [**6] subpoena, and sometimes providing for defendant's continued [***1605] anonymity. Nothing happens for a few weeks, and then Strike 3 voluntarily dismisses the suit.[1] In the lone exception, Civil Case No. 18-810, the defendant successfully obtained the court's approval to proceed anonymously, and appeared to be preparing a responsive pleading—but Strike 3 dropped the case. The eighteen pending cases are no different: in twelve, the judge recently granted the early discovery motion and Strike 3 is waiting for the ISP to respond[2]; in five, Strike 3's early discovery motion remains pending[3]; and

---

[1] Civil Case Nos. 17-2338, 17-2342, 17-2344, 17-2345, 17-2346, 17-2347, 18-536, 18-57 (allowing defendant to anonymously move to quash), 18-804, 18-805 (allowing defendant to move to proceed anonymously), 18-806, 18807 (requiring the defendant's anonymity until further court order), 18-808, 18-1193, 18-1197 (prohibiting Strike 3 or the ISP from publicly revealing the defendant's identity), 18-1199 (allowing defendant to move to proceed anonymously), 18-1424, 18-1426, 18-1430, 18-1432, 18-1894.

[2] Civil Case Nos. 18-1192 (allowing defendant to move to proceed anonymously), 18-1198 (allowing defendant to move to proceed anonymously), 18-1427, 18-1429, 18-1431, 18-1898 (requiring the defendant's anonymity until further court order), 18-1899, 18-1902, 18-1903 (allowing defendant to move to proceed anonymously), 18-1904 (requiring the defendant's anonymity until further court order), 18-2205, 18-2206.

[3] Civil Case Nos. 18-1425 (this case), 18-2204, 18-2210, 18-2211, 18-2212.

Exhibit B

Case 3:20-cv-05262-TKW-EMT    Document 9-2    Filed 04/27/20    Page 28 of 90

Page 3 of 5
351 F. Supp. 3d 160, *163; 2018 U.S. Dist. LEXIS 195580, **6; 128 U.S.P.Q.2D (BNA) 1602, ***1605

in one, Strike 3 hasn't yet filed its discovery motion.[4] This sounds crazy, but its par for the copyright-trolling course. According to PACER, Malibu Media, LLC—another adult film company—filed 150 cases against anonymous defendants in this district (7183 nationally) from 2012 to 2018, some joining dozens of individuals. [*164] How many of those cases reached the Court of Appeals? Zero.

Although the D.C. Circuit has never had the chance to elaborate on its test, the undersigned considers the Second Circuit's test very persuasive. And not for nothing, it comports with the D.C. Circuit's more general observation that, [**7] when evaluating good cause under _Rule 26_, "interests in privacy may call for a measure of extra protection." _In re Sealed Case (Medical Records), 381 F.3d 1205, 1215, 363 U.S. App. D.C. 214 (D.C. Cir. 2004)_ (internal quotation marks omitted) (quoting _Fed. R. Civ. P. 26(b)_ advisory committee's note (1970)). "Moreover, in determining which interests to weigh in the _Rule 26_ balance, courts look to statutory confidentiality provisions, even if they do not create enforceable privileges." _Id. at 1215-16_. In this case, the Court looks to the Communications Act, which protects cable subscribers' names and addresses. _47 U.S.C. § 551(c)_. _But cf. id._ at _(c)(2)(B)_ (providing for disclosure "pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed").

Applying the Second Circuit's test, and placing great weight on defendant's privacy expectation, the Court will deny Strike 3's motion for early discovery. To be sure, Strike 3's alleged ownership of an infringed copyright sets forth a prima facie claim. So too is the requested information necessary to advance Strike 3's claim, just as subpoenaing the ISP is necessary to get the information.

But Strike 3's request lacks the type of specificity the Second Circuit's test requires: that the request will identify a copyright infringer [**8] who can be sued. _See Sony Music, 326 F. Supp. 2d at 566; see also Soo Park v. Thompson, 851 F.3d 910, 928 n.21 (9th Cir. 2017)_ ("[I]n circumstances 'where the identity of alleged defendants will not be known prior to the filing of a complaint . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear . . . that the complaint would be

dismissed on other grounds.'" (quoting _Gillespie v. Civiletti, 629 F.2d 637, 642-43 (9th Cir. 1980))_). Strike 3 could not withstand a 12(b)(6) motion in this case without resorting to far more intensive discovery machinations sufficiently establishing defendant did the infringing—examining physical evidence (at least the computers, smartphones, and tablets of anyone in the owner's house, as well as any neighbor or houseguest who shared the Internet), and perhaps even interrogatories, document requests, or depositions. Strike 3's requested subpoena thus will not—and may never—identify a defendant who could be sued.

Similarly, even though "defendants have little expectation of privacy in downloading and distributing copyrighted [content] without permission," _Sony Music, 326 F. Supp. 2d at 566-67_, Strike 3 fails to give the Court adequate confidence this defendant actually did the infringing. Given this uncertainty, Strike 3 cannot overcome defendant's weighty privacy expectation. [**9] Imagine having your name and reputation publicly—and permanently—connected [***1606] to websites like _Tushy_ and _Blacked Raw._ (Google them at your own risk.) How would an improperly accused defendant's spouse react? His (or her) boss? The head of the local neighborhood watch? The risks of a false accusation are real; the consequences are hard to overstate and even harder to undo. And Strike 3's flawed identification method cannot bear such great weight. Defendant may not be entitled to the same presumption of innocence a criminal defendant enjoys, but the Court remains uncomfortable publicly presupposing defendant partook in [*165] particularly prurient pornography given defendant's tenuous connection to the infringement. Since Strike 3's discovery request lacks the required specificity and does not overcome defendant's privacy expectation, the Court will deny Strike 3's motion for early discovery.

Though Strike 3 admits a protective order could allow defendant to anonymously challenge the subpoena, Br. at 8, that hardly seems fair. That drags defendant into court and foists on them the unenviable burden of hiring a lawyer or defending their reputation pro se, all before they've even been served. That's [**10] not how our system of litigation is supposed to work. Moreover, the inconsistency with which courts permit defendants to proceed anonymously illustrates the ineffectiveness of this shield more generally. _See supra_ notes 1-2 and accompanying text.

An honest copyright holder might balk at this result, misunderstanding it to slash congressionally endowed

---

[4] Civil Case No. 18-1896.

Exhibit B

351 F. Supp. 3d 160, *165; 2018 U.S. Dist. LEXIS 195580, **10; 128 U.S.P.Q.2D (BNA) 1602, ***1606

defenses against increasingly creative and covert cyberpirates. But the typical case does not involve pornography,[5] nor is this even run-of-the-mill porn. By extension, two factors limit today's holding. First is this content's aberrantly salacious nature. Second is the legion pitfalls associated with Strike 3's tracking and identification of infringers. Given these high stakes—unlikely to appear in more typical cases—the Court will not accept the risk of misidentification. Maybe someday someone will show the Court a method to identify infringers with sufficiently less risk of false accusations. But because Strike 3 fails to do so here, it cannot subpoena defendant's ISP.

**II. Because Strike 3 cannot effectuate service without subpoenaing defendant's ISP, its case must be dismissed [**11]** .

Denying Strike 3's discovery motion dooms its claim. Simply put, Strike 3's inability to identify defendant makes effectuating service or prosecuting the case impossible. So because Strike 3 cannot proceed with its claim, the Court dismisses it.

Strike 3 does not dispute this logic. It concedes "[d]efendant must be identified before this suit can progress." *See* Br. at 5-6 (internal quotation marks omitted) (quoting *Malibu Media, LLC v. Doe, 177 F. Supp. 3d 554, 556 (D.D.C. 2016)*). But "[w]ithout information from the ISP," Strike 3 admits it cannot "correlate the [infringing] IP address to its subscriber and identify Defendant as the person assigned the IP address." Br. at 6 (internal quotation marks omitted) (quoting *Strike 3 Holdings v. Doe, No. 17-1680, 2017 U.S. Dist. LEXIS 181281, 2017 WL 5001474, at *4 (D. Conn. Nov. 1, 2017))*. And so Strike 3 "cannot name and serve those whom they allege to have infringed upon their copyrights." Br. at 6 (internal quotation marks omitted) (quoting *Call of the Wild Movie, LLC, 770 F. Supp. 2d at 352-53*).

---

[5] The Court notes "it is unsettled in many circuits"—including this one—"whether pornography is in fact entitled to protection against copyright infringement." *Liberty Media Holdings, LLC v. Swarm Sharing Hash File, 821 F. Supp. 2d 444, 447 (D. Mass. 2011)*; *see also Next Phase Distrib., Inc. v. Does 1-27, 284 F.R.D. 165, 171 (S.D.N.Y. 2012)* ("[I]f the Motion Picture is considered obscene, it may not be eligible for copyright protection."). *But see Jartech, Inc. v. Clancy, 666 F.2d 403, 406 (9th Cir. 1982)* (extending copyright protection to pornography); *Mitchell Brothers Film Group v. Cinema Adult Theater, 604 F.2d 852, 854-58 (5th Cir. 1979)* (same).

Strike 3's lone rebuttal points out that "courts have rejected the dismissal of suits against unnamed defendants . . . until the plaintiff has had some opportunity for discovery to learn [the defendants'] identities." Br. at 6 (alterations in original) (internal [*166] quotation marks omitted) (quoting *Davis v. Kelly, 160 F.3d 917, 921 (2d Cir. 1998)*); *see also* Br. at 6 (quoting *Malibu Media, LLC v. Doe, No. 15-986, 2015 U.S. Dist. LEXIS 117220, 2015 WL 5173890 at *1 (D.D.C. Sept. 2, 2015))*. But as this opinion has already explained, this case [**12] is exceptional, limited as Part I describes. Because Strike 3 chases a dead-end, the Court will deny as moot Strike 3's motion to extend the service deadline and dismiss the case.

[***1607] **III. Conclusion**

Armed with hundreds of cut-and-pasted complaints and boilerplate discovery motions, Strike 3 floods this courthouse (and others around the country) with lawsuits smacking of extortion. It treats this Court not as a citadel of justice, but as an ATM. Its feigned desire for legal process masks what it really seeks: for the Court to oversee a high-tech shakedown. This Court declines.

The Court denies Strike 3's ex parte motion [3] for discovery prior to the *Rule 26(f)* conference. Since this makes serving the defendant impossible, the Court denies as moot Strike 3's motion [4] extending time to effectuate service and dismisses the case without prejudice. An accompanying order will issue.

Date: November 16, 2018

/s/ Royce C. Lamberth

Royce C. Lamberth

United States District Judge

---

**ORDER**

In accordance with the accompanying memorandum opinion, the Court **DENIES** plaintiff's motion [3] for discovery prior to the *Rule 26(f)* conference. Since this makes prosecuting the suit impossible, the Court **DENIES** as · moot plaintiff's motion [4] [**13] for extension of time to effectuate service and **DISMISSES** the case without prejudice.

Date: November 16, 2018

/s/ Royce C. Lamberth

Exhibit B

351 F. Supp. 3d 160, *166; 2018 U.S. Dist. LEXIS 195580, **13; 128 U.S.P.Q.2D (BNA) 1602, ***1607

Royce C. Lamberth

United States District Judge

---

End of Document

Ⓐ Neutral
As of: May 17, 2019 4:57 PM Z

## *Janik v. SMG Media, Inc.*

United States District Court for the Southern District of New York

January 10, 2018, Decided; January 10, 2018, Filed

16 Civ. 7308 (JGK) (AJP)

**Reporter**
2018 U.S. Dist. LEXIS 4567 *; Copy. L. Rep. (CCH) P31,209; 2018 WL 345111

FRAN JANIK and STEVEN HIRSCH, Plaintiffs, -against- SMG MEDIA, INC., Defendant.

**Prior History:** *Janik v. Spin Media, Inc., 2017 U.S. Dist. LEXIS 199343 (S.D.N.Y., Dec. 4, 2017)*

## Core Terms

Photograph, deposition, attorney's fees, plaintiffs', infringement, license, magazine, frivolous, copyright infringement, law law law, objectively unreasonable, registration, discovery, statutory damages, argues, cases, Conf, prevailing party, copyright owner, settlement, costs, sheet, law firm, circumstances, promoting, co-authors, Digital, lawsuit, rights, pages

**Counsel:** [*1] For Steven Hirsch, Plaintiff: Yekaterina Tsyvkin, Liebowitz Law Firm PLLC, Valley Stream, NY; Richard Liebowitz, Liebowitz Law Firm, PLLC, Valleystream, NY.

For Spin Media LLC, Defendant: John Matthew Deweese Williams, Mitchell Silberberg & Knupp L.L.P.(DC), Washington, DC.

For SMG Media, Inc., Defendant: Christine Lepera, LEAD ATTORNEY, Mitchell Silberberg & Knupp LLP (NY), New York, NY; Hannah Mason Junkerman, Tania T. Nguyen, Mitchell Silberberg & Knupp LLP (NY), New York, NY; John Matthew Deweese Williams, Mitchell Silberberg & Knupp L.L.P.(DC), Washington, DC.

**Judges:** Andrew J. Peck, United States Magistrate Judge.

**Opinion by:** Andrew J. Peck

## Opinion

### OPINION & ORDER

**ANDREW J. PECK, United States Magistrate Judge:**

Plaintiffs Fran Janik and Steven Hirsch brought this action against defendant SMG Media, Inc. ("Spin") alleging copyright violations under *Section 501 of the Copyright Act* and *Section 1202(b) of the Digital Millennium Copyright Act* ("DMCA"). (See generally Dkt. No. 26: Am. Compl.) Both plaintiffs voluntarily dismissed their separate claims. (Dkt. Nos. 56, 69.) Presently before the Court is Spin's motion for attorneys' fees and costs as the "prevailing party" under the Copyright Act and DMCA solely against Janik. (Dkt. No. 94.) For [*2] the reasons set forth below, Spin's attorneys' fees motion (Dkt. No. 94) is DENIED.

### FACTS

#### The Amended Complaint

While Spin seeks attorneys' fees against Janik, information about co-plaintiff Hirsch is relevant to and intertwined with Spin's fee application.

Janik and Hirsch are professional photojournalists "in the business of licensing [their] photographs to online, print, and television stations for a fee." (Dkt. No. 26: Am. Compl. ¶¶ 5-6.)

"In the 1980's Janik photographed the owner of Spin Magazine, Bob Guccione Jr., the eldest son of Penthouse magazine founder Bob Guccione" ("the Guccione Photograph"). (Id. ¶ 8 & Ex. A.) "Janik is the author of the [Guccione] Photograph and has at all times been the sole owner of all right, title and interest in and to the [Guccione] Photograph, including the copyright thereto." (Am. Compl. ¶ 9.) Janik's December 16, 2015 copyright registration for the Guccione Photograph lists the year of completion as 1985. (Dkt. No. 96: Williams Aff. Ex. C: 12/16/15 Registration at 1.) On April 19, 2010 and June 26, 2015, some 25 and 30

Exhibit B

years later, respectively, Spin published two online articles that "prominently featured" the Guccione Photograph. (Am. Compl. [*3] ¶ 15 & Ex. D.) Spin did not license the Guccione Photograph from Janik, or otherwise have Janik's permission to publish it in the articles. (Am. Compl. ¶ 16.)

On "February 16, 2016, Hirsch photographed Brandon Kiehm who was accused of stealing thousands of dollars from a woman he met on Tinder" ("the Kiehm Photograph"). (Id. ¶ 11 & Ex. B.) "Hirsch is the author of the [Kiehm] Photograph and has at all times been the sole owner of all right, title and interest in and to the [Kiehm] Photograph, including the copyright thereto." (Am. Compl. ¶ 13; see also id. ¶ 14.) On February 16, 2016, Hirsch licensed the Kiehm Photograph to the New York Post, which published it in an article the same day. (Id. ¶ 12 & Ex. C.) "Hirsch's name was featured in a gutter credit identifying him as the photographer of the [Kiehm] Photograph." (Am. Compl. ¶ 12.) On February 18, 2016, Spin published an article that "prominently featured the Kiehm Photograph. (Id. ¶ 17.) Spin did not license the Kiehm Photograph from Hirsch, or otherwise have Hirsch's permission to publish it. (Id. ¶ 18.)

Janik and Hirsch sued Spin for copyright infringement (id. ¶¶ 19-26) and intentionally removing copyright management information [*4] in violation of the DMCA (id. ¶¶ 27-33).

## Janik's Case Is Dismissed

At a discovery conference on May 15, 2017, plaintiffs' counsel stated that Janik was "permanently disabled" and lived in Vermont, and as a result could not physically appear for his previously scheduled deposition. (Dkt. No. 64: 5/15/17 Conf. Tr. at 13-14.) Plaintiffs' counsel further stated that Hirsch was unavailable for his previously scheduled deposition because he was traveling. (Id. at 14-15.) I responded that plaintiffs chose to sue in the Southern District of New York and must appear for deposition here (id. at 13-14), so-ordered deposition dates for Janik and Hirsch on May 17 and 19, 2017, respectively, and warned that failure to appear could result in a case dispositive sanction (id. at 15.)

On May 16, 2017, plaintiffs' counsel wrote the Court seeking "leave to file a dismissal without prejudice pursuant to _Fed. R. Civ. P. Rule 41(a)(2)_," "[i]n light of the developments at the discovery conference[] held on May 15, 2017." (Dkt. No. 44: 5/16/17 Letter at 1.)

Plaintiffs' counsel explained:

> In that conference, the Court ordered Plaintiffs Fran Janik and Steven Hirsch to appear in person for a deposition to be held on May 17 and May 19, 2017, respectively. As Plaintiff's counsel [*5] already explained, Plaintiff Janik cannot be present in New York for a deposition on the date in question due to medical reasons. Plaintiff Hirsch has recent and pressing personal commitments that will make him unavailable on the date of the deposition. Plaintiffs take their discovery obligations seriously and would like t[he] opportunity to fulfill their responsibilities before the Court. Therefore, we would like to take the Court's recommendation to dismiss the case.

(Id.) Plaintiffs' counsel reiterated that Janik—"a permanently disabled Plaintiff located in Vermont"— "would like the opportunity to reconsider his chosen forum if he is to be physically present at a deposition and other appearances." (Id. at 2.) Hirsch also desired "the opportunity to refile the case because he cannot be physically present at his deposition." (Id.) Plaintiffs' counsel disingenuously added: "[D]iscovery has just begun. We have exchanged some documents and interrogatories but there have been no depositions and no trial preparation, therefore the Defendant's effort and expense have been minimal." (Id. at 3.)

On May 17, 2017, Spin opposed the motion, arguing that "Plaintiffs did not inform Defense counsel of Janik's purported disability [*6] until May 15, 2017 — two days before the scheduled deposition. The deposition was noticed on April 19, 2017," and Janik did not object to the date or location at that time. (Dkt. No. 46: 5/17/17 Letter at 2.) Spin further argued that Hirsch's personal commitments could not excuse his presence at a court-ordered deposition. (Id.)

Spin characterized this lawsuit as an example of plaintiffs' counsel's "[v]exatious [l]itigation [c]ampaign":

> Plaintiffs' lawsuit is part of a mass-litigation campaign orchestrated by their counsel [the Liebowitz Law Firm]. His law firm has filed approximately 250 similar, low value, cases in this district alone. It appears that his litigation strategy is to threaten defendants with the expenses and burdens of discovery and litigation in order to force them to consider unreasonable settlement demands. However, when it comes time for his clients to produce discovery, sit for depositions and truly invest in the case, they would prefer to withdraw their claims while holding onto the ability

Exhibit B

2018 U.S. Dist. LEXIS 4567, *6

to re-file them if their settlement demands are not met.

(Id. at 3.) Spin claimed that discovery was "on the edge of completion" and that dispositive motions were "only a few weeks away." (Id.) Spin argued that it would [*7] be unjust to permit plaintiffs to dismiss their case without prejudice, as it would deprive Spin of its chance to pursue attorneys' fees as the prevailing party under the Copyright Act and expose it to further lawsuits on the same claims. (Id.) As such, Spin argued, "[a] default judgment under _Rule 37_ or dismissal with prejudice under _Rule 41(b)_ is a more appropriate way to resolve this case." (5/17/17 Letter at 3.)

On May 23, 2017, I held a conference to deal with plaintiffs' application, and stated my preliminary view that "the choice is a dismissal with prejudice or getting Mr. Janik and Mr. Hirsch in ASAP for their depositions." (Dkt. No. 82: 5/23/17 Conf. Tr. at 2.) As to Hirsch, plaintiffs' counsel stated they were "definitely capable of producing" him for a deposition. (Id. at 6, 9.) However, plaintiffs' counsel indicated that Janik could not appear here for his deposition under any circumstances due to health issues. (Id. at 9-10.) I adhered to my view that Janik could "[d]ismiss or show up for deposition." (Id. at 10.) I instructed plaintiffs' counsel: "[Y]ou have until close of business tomorrow to file a notice of dismissal with prejudice, and I will grant that. And if you do that for Janik and Hirsch, then that's the way you [*8] want to proceed, I don't have a problem with that." (Id. at 12.) Alternatively, I ordered that Janik and Hirsch would be deposed in New York on May 31 and June 1, respectively, in the event they chose to pursue this case. (Id.)

On May 24, 2017, plaintiffs' counsel filed a letter motion requesting a with-prejudice dismissal of Janik's claims against Spin. (Dkt. No. 55: 5/24/17 Letter.) Plaintiffs' counsel stated that they would, "however, produce Plaintiff Hirsch for a deposition on June 1, 2017 as ordered and hence are not dismissing his claim against the Defendant." (Id.) I granted Janik's motion that day and dismissed his claims against Spin with prejudice. (Dkt. No. 56.) The Clerk of Court entered partial judgment against Janik on May 31, 2017. (Dkt. No. 57: 5/31/17 Judgment.)

## Hirsch's Case Is Dismissed

On June 7, 2017, Spin wrote a letter stating that, although plaintiffs were ordered on May 8, 2017 to

produce all requested documents by May 12, 2017 (see Dkt. No. 51: 5/8/17 Conf. Tr. at 5), "Hirsch testified [at his June 1, 2017 deposition] that he did not attempt to locate the documents and was not even aware of the Court's order" (Dkt. No. 63: 6/7/17 Letter at 1). According to Spin, "Mr. [*9] Hirsch also testified that he intentionally deleted and failed to preserve electronically stored information that was highly relevant to this case." (Id.) Hirsch further "testified that even though he had signed his interrogatory responses, he did not fully read them." (Id. at 2 n.3.) Spin requested a default judgment and monetary sanctions. (Id. at 1, 3.)

At a conference on June 14, 2017, I stated that Hirsch had been ordered "to comply with the document requests by a fixed date" and that "[h]e clearly did not do that" based on his deposition testimony. (Dkt. No. 84: 6/14/17 Conf. Tr. at 2.) I further noted that Hirsch "didn't even read the interrogatory answers that he signed," and "[h]e deleted e-mails during the pendency of the litigation or while litigation was anticipated." (Id. at 3-4.) As a sanction, I ordered plaintiff to pay Spin's attorneys' fees related to the Hirsch deposition; when asked for a figure, Spin's counsel responded: "What I had asked for in the letter was not just the cost of the deposition, but also preparing various letters and attending various conferences which I have calculated." (Id. at 11.) Spin's counsel stated that "[t]he total number between May 13 and today dealing with these particular specific issues, [*10] which only includes half the time for the deposition, is something over $15,000." (Id.) Plaintiffs' counsel responded that the sanction requested was "very onerous"; I responded: "Dismiss the case if you wish and I won't impose any financial sanctions." (Id. at 12.) Spin's counsel also stated that, in addition to the fees incurred defending against Hirsch's claims, he sought fees for Janik's failure to appear at his deposition. (Id. at 13; see also 6/7/17 Letter at 3 n.6.) I had the following colloquy with counsel:

MR. WILLIAMS [Spin's counsel]: . . . . I would just say that the number I gave, the $15,000 number was specific to Mr. Hirsch. If you include the deposition and prep time for Mr. Janik, that is another $4,820.00.

. . . .

THE COURT: Monty Hall, "Let's Make a Deal," [is] $10,000.00, satisfactory to both sides?

. . . .

MR. WILLIAMS: Yes, your Honor, I will accept the $10,000.00.

THE COURT: Satisfactory?

MS. TSYVKIN [plaintiffs' counsel]: I have no choice.

THE COURT: You have the choice of making him

Rani Jailall

Exhibit B

2018 U.S. Dist. LEXIS 4567, *10

make a motion, at which point it will probably be 15,000 plus the cost of the motion.

MS. TSYVKIN: Can I dismiss the case?

THE COURT: Yes.

(6/14/17 Conf. Tr. at 14-15.)

Plaintiffs' counsel dismissed Hirsch's [*11] case with prejudice. (Id. at 15; see also Dkt. No. 69: 6/14/17 Consent Order of Dismissal.) I concluded the conference by stating: "[C]ase dismissed with prejudice. The only remaining costs is your firm [i.e., plaintiffs' counsel] is paying for this transcript." (6/14/17 Conf. Tr. at 15.)

### Spin's Attorneys' Fees Motion

Following dismissal, Spin moved for attorneys' fees and costs as the prevailing party under the Copyright Act and DMCA. (Dkt. No. 74.) The Court denied fees as to Hirsch in its discretion, noting that "[i]mplicit in today's conf. & decisions was that plaintiffs were avoiding all fees by dismissing with prejudice." (Dkt. No. 78.) Spin renewed its motion for fees as to Janik. (Dkt. No. 94; see also Dkt. No. 95: Spin Br. at 18.) The parties' briefs and exhibits provide useful background information regarding Janik's relationship with Spin, the Guccione Photograph and this lawsuit.

Spin's 30(b)(6) witness described the origin of the Guccione Photograph as he understood it:

> Bob [Guccione] recounted a story where Janik was in his office that was around 1985 or 1984, and Janik at that time was working for Spin. Whether or not he was an [full-time employee] or 1099 contractor I'm unclear on but he was given [*12] the title Director of Photography. It's on Google Books, I haven't looked at this anyone could look at the mas[t] head and see if his name is on there. I also looked back into Spin's history that I have. We only went as far back as 2007. So he took this photograph obviously at this point in time there was no digital photography, obviously Bob took the photograph and came back a couple of days later and gave it to him. The photograph that Bob has said you know he has had it I don't know how the photograph became digitized. I can't speak to that. I also don't know if Bob signed a release for this photograph as a subject. So that would also so I don't have a ton of line of sight into it. His interpretation of it, he was given the photograph and was able to use as he saw fit. As an employer of Janik, [full-time employee] or 1099 contractor,

Janik was working for Spin and working for Spin with a lot of regularity. I think from there Bob mentioned that he had done an interview for New York Mag in 2005, that's the 20th anniversary of Spin and he seems to think that New York Mag used that photograph then his opinion was more or less that the photograph has been used in a couple of different capacities. [*13] What his recount is the photograph was Janik coming in, taking it of him, printing it up and handing it to him that's all I know about it. . . . Aside from the 2010 usage from the photograph and print he also thinks it was used in the section of the magazine called Top Spin back in the 80's. I haven't gone into Goggle Books to see around it's not my place. So you know the photograph, you know has a thirty-two year history, the subject of the photograph and the photographer seem to appear to have different opinions on how the photograph was to be used.

(Dkt. No. 96: Williams Aff. Ex. I: Blackwell Dep. at 118-20.) Of course, virtually all of this is inadmissible hearsay.

Janik claims that he "was friendly with Mr. Guccione Jr. and offered to take some candid photographs of him." (Dkt. No. 100: Janik Aff. ¶ 3.) "Mr. Guccione Jr. and [Janik] agreed that [Janik] would photograph [Guccione] in his office for the purpose of promoting his new music magazine, Spin Magazine." (Id. ¶ 6; see also Williams Aff. Ex. L: Janik Interrogatory Response No. 2.) "At the time of Spin Magazine's founding [Janik] was not an employee of Spin." (Janik Aff. ¶ 5; see also Janik Interrogatory Response No. 1 (Janik [*14] "was never an employee of SPIN, but took some photographs at the inception of the magazine for promotional purposes.").) The masthead of Spin Magazine's first issue does not list Janik as an employee (Janik Aff. ¶ 7 & Ex. A) because, Janik argues, he was a freelance photographer at the time (Janik Aff. ¶ 9; Janik Interrogatory Response No. 1).

Janik submitted several other photographs allegedly featured in the first issue of Spin that he republished on his website, which include the photo credit: "Copyright Fran Janik." (Janik Aff. Ex. B.) "All of these images were credited to Fran Janik, as is appropriate for freelance photographers who retain all rights in their respective works." (Janik Aff. ¶ 8.) Janik claims that "Spin Magazine knew at all times that [he] was a freelance photographer, hence it always properly credited [his] work in the pages of its magazine." (Id. ¶ 9.) "As a freelance photographer, [Janik] retained all [his] rights in the photographs including those [he] privately gave to

Rani Jailall

Exhibit B

2018 U.S. Dist. LEXIS 4567, *14

Mr. Guccione Jr. for a limited purpose of promoting the launch of the magazine." (Id. ¶ 10.) However, although Janik "gave Bob Guccione Jr. the contact sheet with [Janik's] name on it[,] [w]hen the [*15] [Guccione] [P]hotograph appeared in SPIN, it had no CMI on it." (Janik Interrogatory Response No. 6.)

## ANALYSIS

### I. LEGAL STANDARDS GOVERNING ATTORNEYS' FEES AWARDS IN COPYRIGHT CASES

The *Copyright Act* and Digital Millennium Copyright Act each permit an award of attorneys' fees to the prevailing party in the court's discretion. *17 U.S.C. § 505* ("In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party . . . . [T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs."); *17 U.S.C. § 1203(b)(5)* ("[T]he court . . . in its discretion may award reasonable attorney's fees to the prevailing party.").[1] The term "prevailing party" includes, in proper circumstances, a prevailing defendant. *See, e.g., Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. 1979, 1985, 195 L. Ed. 2d 368 (2016)* ("[A] court may not treat prevailing plaintiffs and prevailing defendants any differently; defendants should be 'encouraged to litigate [meritorious copyright defenses] to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement.'"); *Cruz v. Am. Broad. Cos., 17 Civ. 8794, 2017 U.S. Dist. LEXIS 196317, 2017 WL 5665657 at *1 (S.D.N.Y. Nov. 17, 2017)* ("*Section 505* of the Copyright Act permits a prevailing defendant to recover its reasonable attorneys' fees." (fns. omitted)). Judge Koeltl has held that [*16] because the case was dismissed with prejudice, Spin is a prevailing party under the Federal Rules of Civil Procedure and the Copyright Act. *Janik v. Spin Media, Inc., 16 Civ. 7308, 2017 U.S. Dist. LEXIS 199343, 2017 WL 6021644 at *3 (S.D.N.Y. Dec. 4, 2017)* (Koeltl, D.J.) ("Spin Media is a prevailing party for purposes of *Rule 54(d) of the Federal Rules of Civil*

*Procedure* and *17 U.S.C. § 505*.").

Attorneys' fees, however, "are not automatic." *Medforms, Inc. v. Healthcare Mgmt. Sols., Inc., 290 F.3d 98, 117 (2d Cir. 2002).* "Prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion. 'There is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations [the Supreme Court] ha[s] identified.'" *Fogerty v. Fantasy, Inc., 510 U.S. 517, 534, 114 S. Ct. 1023, 1033, 127 L. Ed. 2d 455 (1994); accord, e.g., Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. at 1985* ("The statutory language . . . 'clearly connotes discretion,' and eschews any 'precise rule or formula' for awarding fees. . . . [However,] a district court may not 'award[ ] attorney's fees as a matter of course'; rather, a court must make a more particularized, case-by-case assessment." (citation omitted)). Those considerations may "include 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the [*17] case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Fogerty v. Fantasy, Inc., 510 U.S. at 535 n.19, 114 S. Ct. at 1033 n.19; accord, e.g., Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. at 1985* (In *Fogerty,* "we noted with approval 'several nonexclusive factors' to inform a court's fee-shifting decisions: 'frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence.'"); *Janik v. Spin Media, Inc., 2017 U.S. Dist. LEXIS 199343, 2017 WL 6021644 at *3.* These factors are not exhaustive, and *17 U.S.C. § 505* "grants courts wide latitude to award attorney's fees based on the totality of circumstances in a case." *Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. at 1985.*[2]

---

[1] *See also, e.g., Sheldon v. Plot Commerce, No. 15-CV-5885, 2017 U.S. Dist. LEXIS 59830, 2017 WL 2168654 at *2 (E.D.N.Y. Apr. 18, 2017)* ("A fee award is not automatic . . . , but rather 'lies within the sole and rather broad discretion of the [c]ourt.'"), *R. & R. adopted, 2017 U.S. Dist. LEXIS 74497, 2017 WL 2168078 (E.D.N.Y. May 16, 2017); Reilly v. Plot Commerce, 15 Civ. 5118, 2016 U.S. Dist. LEXIS 152154, 2016 WL 6837895 at *12 (S.D.N.Y. Oct. 31, 2016).*

[2] Many decisions in this Circuit have hinged on the objective reasonableness of the losing party's position, seemingly without regard for the other factors enumerated in *Fogerty* or the "totality of the circumstances" involved. *See, e.g., Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. at 1989* ("[H]ardly any decisions in [the Second] Circuit have granted fees when the losing party raised a reasonable argument (and none have denied fees when the losing party failed to do so)."). But "objective reasonableness can be only an important factor in assessing fee applications—not the controlling one," and the Supreme Court has noted that there are "serious questions about how fee-shifting actually operates in the Second Circuit." *Id. at 1988-89.* The Supreme Court in *Kirtsaeng* stated:

Exhibit B

2018 U.S. Dist. LEXIS 4567, *17

## II. SPIN'S ATTORNEYS' FEES MOTION IS DENIED

### A. Objective Unreasonableness

A lawsuit or litigation position is objectively reasonable if it has "a reasonable basis in law and fact." *Zalewski v. Cicero Builder Dev., Inc., 754 F.3d 95, 108 (2d Cir. 2014)*; accord, e.g ., *Viva Video, Inc. v. Cabrera, 9 F. App'x 77, 80 (2d Cir. 2001)* ("'Objective unreasonableness' is generally used to describe claims that have no legal or factual support."). A plaintiff's failure to prevail on a particular claim does not necessarily render his position unreasonable. See, e.g., *Viva Video, Inc. v. Cabrera, 9 F. App'x at 80* (Plaintiff's "inability to substantiate any of its allegations certainly could have led the District Court to award fees; but that inability does not as a matter of law require an award of fees, given the court's finding that [plaintiff's] action had some support at the time it was initiated.").[3] On the

---

To be sure, the [Second Circuit] Court of Appeals' framing of the inquiry resembles our own: It calls for a district court to give "substantial weight" to the reasonableness of a losing party's litigating positions while also considering other relevant circumstances. But the Court of Appeals' language at times suggests that a finding of reasonableness raises a presumption against granting fees, and that goes too far in cabining how a district court must structure its analysis and what it may conclude from its review of relevant factors. Still more, district courts in the Second Circuit appear to have overly learned the Court [*18] of Appeals' lesson, turning "substantial" into more nearly "dispositive" weight.

*Id. at 1989* (citations omitted). Thus, "[a]lthough objective reasonableness carries significant weight, courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals." Id.; see also *id. at 1986* (The Copyright Act "strik[es] a balance between two subsidiary aims: encouraging and rewarding authors' creations while also enabling others to build on that work. Accordingly, fee awards under *§ 505* should encourage the types of lawsuits that promote those purposes." (citation omitted)).

---

[3] See also, e.g., *Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc., 14 Civ. 9270, 2017 U.S. Dist. LEXIS 124082, 2017 WL 3393850 at *2 (S.D.N.Y. Aug. 4, 2017)* ("That a court ultimately disagreed with a plaintiff's position in the underlying litigation is not enough: the question "is not whether there was a sufficient basis for judgment in favor of defendants, but whether the factual and legal support for plaintiff's position was so lacking as to render its claim . . . objectively

other hand, "if a claim 'is clearly without merit on any determinative issue, then it is objectively unreasonable.'" *TCA Television Corp. v. McCollum, 15 Civ. 4325, 2017 U.S. Dist. LEXIS 86138, 2017 WL 2418751 at *10 (S.D.N.Y. June 5, 2017)*; see also, e.g., *Schleifer v. Berns, No. 17-CV-1649, 2017 U.S. Dist. LEXIS 112391, 2017 WL 3084406 at *6 (E.D.N.Y. July 19, 2017)* (awarding fees where "[n]o reasonable copyright attorney, or even an attorney who had devoted 20 minutes to legal research, would have filed this complaint"); *Konangataa v. Am. Broad. Cos., 16 Civ. 7382, 2017 U.S. Dist. LEXIS 95812, 2017 WL 2684067 at *2 (S.D.N.Y. June 21, 2017)* [*19] (awarding fees where "no reasonable lawyer with any familiarity with the law of copyright could have thought that" defendants' use of plaintiff's material was infringing).

Spin argues that Janik's claims for copyright infringement and removal of copyright management information under the DMCA were objectively unreasonable. (Dkt. No. 95: Spin Br. at 4, 10-14.) According to Spin, "Janik would have lost his copyright infringement claim on the merits because SPIN was either a co-owner of the copyright to the Photo or a licensee of the Photo." (Id. at 4.) Spin also argues that Janik "alleged that he was entitled to seek statutory damages and attorneys' fees under *17 U.S.C. § 505* even though his copyright registration clearly post-dates the commencement of the alleged infringement, rendering these claims frivolous under *17 U.S.C. § 412*," and that "Janik never identified any copyright management information that SPIN could have supposedly removed." (Spin Br. at 2.)

### 1. The Copyright Infringement Claim

"A claim of direct copyright infringement requires proof that (1) the plaintiff had a valid copyright in the work, [*20] and (2) the defendant infringed the copyright by violating one of the exclusive rights that *17 U.S.C. § 106* bestows upon the copyright holder." *Smith v. Barnesandnoble.com, LLC, 839 F.3d 163, 166 (2d Cir. 2016)*; see also *17 U.S.C. § 106(1), (5).* (copyright owner has the "exclusive rights" "to reproduce the copyrighted work in copies" and "to display the copyrighted work publicly").

---

unreasonable.""") *John Wiley & Sons, Inc. v. Kirtsaeng, 08 Civ. 7834, 2016 U.S. Dist. LEXIS 176981, 2016 WL 7392210 at *2 (S.D.N.Y. Dec. 21, 2016)* (Plaintiff's "position, though ultimately unsuccessful, was not objectively unreasonable.").

Exhibit B

2018 U.S. Dist. LEXIS 4567, *20

### a. Janik's Copyright: Who Authored The Guccione Photograph?

Janik obtained a copyright registration for the Guccione Photograph (see page 2 above), and Spin raises no serious challenge to its validity (see generally Dkt. No. 95: Spin Br.; Dkt. No. 103: Spin Opp. Br.). Rather, Spin argues that Spin and/or Bob Guccione "should have qualified as a co-owner [of the Guccione Photograph] given the participation of Mr. Guccione in the creation of the Photo (including sticking out his tongue at the camera)," and thus should have been named on the Photograph's copyright registration as the co-author of a "joint work." (Spin Br. at 11; see also Spin Opp. Br. at 12 n.11.)

"A 'joint work' is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. "The authors of a joint work are coowners of copyright in the work." 17 U.S.C. § 201(a); see [*21] also, e.g., Thomson v. Larson, 147 F.3d 195, 199 (2d Cir. 1998) ("Joint authorship entitles the co-authors to equal undivided interests in the whole work—in other words, each joint author has the right to use or to license the work as he or she wishes, subject only to the obligation to account to the other joint owner for any profits that are made."). "A joint owner of a copyright and his licensees cannot be liable to a co-owner for copyright infringement because a copyright owner cannot infringe his own copyright. The immunity of a joint owner from suit extends to the situation where one co-owner makes unauthorized use of the contribution of the other." Strauss v. Hearst Corp., 85 Civ. 10017, 1988 U.S. Dist. LEXIS 1427, 1988 WL 18932 at *5 (S.D.N.Y. Feb. 19, 1988) (citations omitted); accord, e.g., 16 Casa Duse, LLC v. Merkin, 791 F.3d 247, 255 (2d Cir. 2015) ("'[O]ne joint owner cannot be liable for copyright infringement to another joint owner.'"). "A co-authorship claimant in our Circuit generally must show that 'each of the putative co-authors (1) made independently copyrightable contributions to the work; and (2) fully intended to be co-authors.'" 16 Casa Duse, LLC v. Merkin, 791 F.3d at 255.

The phrase "independently copyrightable" originated in Childress v. Taylor, 945 F.2d 500, 509 (2d Cir. 1991), and the Second Circuit has since clarified that the phrase is not to be read literally. See 16 Casa Duse, LLC v. Merkin, 791 F.3d at 256 n.3 ("It seems likely that '[b]y "copyrightable" [the Childress court] meant [*22] only to say that the coauthor's contribution must be the

product of authorship, i.e., expression. [The court] did not mean that in order to be a coauthor one must be able to obtain a copyright on his or her separate contribution,' or even that such would be possible." (quoting 2 PATRY ON COPYRIGHT § 5:15)).[4] "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345, 111 S. Ct. 1282, 1287, 113 L. Ed. 2d 358 (1991) (citation omitted).

As for the second element, "a specific finding of mutual intent [is] necessary." Thomson v. Larson, 147 F.3d at 202. "Though joint authorship does not require an understanding by the co-authors of the legal consequences of their relationship, obviously some distinguishing characteristic of the relationship must be understood in order for it to be the subject of their intent." Childress v. Taylor, 945 F.2d at 508. The intent standard is not "strictly subjective," meaning it "does not turn solely on the parties' own words or professed state of mind." Thomson v. Larson, 147 F.3d at 201. "Rather, [*23] the Childress court suggested a more nuanced inquiry into factual indicia of ownership and authorship, such as how a collaborator regarded herself in relation to the work in terms of billing and credit, decisionmaking, and the right to enter into contracts." Id. And, while "[i]ntent 'at the time the [work] is done' remains the 'touchstone,' . . . subsequent conduct is normally probative of a prior state of mind." Childress v. Taylor, 945 F.2d at 509. In all cases, "[c]are must be taken to ensure that true collaborators in the creative process are accorded the perquisites of co-authorship and to guard against the risk that a sole author is denied exclusive authorship status simply because another person rendered some form of assistance." Id. at 504.

It is doubtful that Guccione's pose constituted an "independently copyrightable" contribution to the Photograph.[5] Moreover, there is no evidence that he

---

[4] See also, e.g., 2 PATRY ON COPYRIGHT § 5:15 (2017) ("The proper approach is to find joint authorship whenever each party contributes an amount of expression that meets the constitutional requirement of originality, a requirement that may be met by cumulative examples of inseparable contributions or by interdependent contributions.").

[5] "In the context of a photo shoot, '[m]ere selection of the subject matter to be photographed,'" in this case Guccione

Rani Jailall

Exhibit B

2018 U.S. Dist. LEXIS 4567, *23

and Janik "fully intended to be co-authors." See, e.g., Thomson v. Larson, 147 F.3d at 202 ("Childress makes clear that the contribution even of significant language to a work does not automatically suffice to confer co-author status on the contributor. Under Childress, a specific finding of mutual intent remains necessary."); Vaad L'Hafotzas Sichos, Inc. v. Krinsky, 133 F. Supp. 3d 527, 535 (E.D.N.Y. 2015) ("Childress thus confirms that even a separately copyrightable [*24] contribution to a work does not automatically make the contributor an author of the work."), appeal withdrawn (Feb. 19, 2016).

Janik claims that he "was friendly with Mr. Guccione Jr. and offered to take some candid photographs of him." (See page 8 above.) The two agreed that Janik would photograph Guccione "in his office for the purpose of promoting his new music magazine, Spin Magazine." (Id.) Janik claims that he "retained all [his] rights in the photographs including those [he] privately gave to Mr. Guccione Jr. for a limited purpose of promoting the launch of the magazine." (See page 9 above.) Spin allegedly knew that Janik was a freelance photographer and "hence it always properly credited [his] work in the pages of its magazine," and Janik claims that (presumably to be credited), he "gave Bob Guccione Jr. the contact sheet with [Janik's] name on it" with the Photograph. (Id.)

On this limited and one-sided record (neither Spin nor Guccione submitted an affidavit), the Court finds that there is, at a minimum, a genuine factual dispute as to the parties' intent surrounding the origin, creation and ownership of the Guccione [*25] Photograph. There is no evidence, for example, that Guccione had "decisionmaking authority over what changes [we]re made and what [was] included in [the] work," or that he was to be credited in every publication of the Photograph along with Janik. Thomson v. Larson, 147 F.3d at 202-03. Indeed, in an email, Guccione never claims any ownership of the Photograph, and states that

himself, "'does not create joint authorship.'" Foster v. Lee, 93 F. Supp. 3d 223, 228 (S.D.N.Y. 2015); see page 8 above ("Mr. Guccione Jr. and [Janik] agreed that [Janik] would photograph [Guccione] in his office for the purpose of promoting his new music magazine, Spin Magazine."). The only conceivable "contribution" Guccione made to the Photograph was to stick out his tongue. See, e.g., Olan Mills, Inc. v. Eckerd Drug of Texas, Inc., No. CA3-88-0333, 1989 U.S. Dist. LEXIS 13768, 1989 WL 90605 at *1 (N.D. Tex. Apr. 20, 1989) ("The simple fact that an individual brings his own image to the studio is not enough to give that person a protectable property right in the portrait.").

he "obviously . . . wasn't posing for a shoot" at the time it was taken. (Dkt. No. 96: Williams Aff. Ex. D: 12/7 Guccione Email.) Janik presents both his subjective belief that he is the Guccione Photograph's sole author, along with objective evidence that Spin had "always properly credited" his work and that this case was no exception. (See page 9 above.) On this record, the Court cannot find that Janik's copyright claim was objectively unreasonable as a matter of law.

**b. The License: Did Spin Infringe?**

Janik argues that he granted Bob Guccione an informal, oral license to use the Guccione Photograph "for a limited purpose of promoting the launch of [Spin] magazine," and that Spin exceeded the scope of the license by publishing the Guccione Photograph 25 and 30 years later. (See page 9 above.) See, e.g., Graham v. James, 144 F.3d 229, 235 (2d Cir. 1998) ("Under federal law, 'nonexclusive licenses [*26] may . . . be granted orally, or may even be implied from conduct.'"). In the alternative to its joint authorship argument, Spin agrees that it had a license to use the Guccione Photograph, but disagrees as to the license's scope. (Dkt. No. 95: Spin Br. at 11 ("[B]ecause Janik admits he delivered the Photo to SPIN for use for 'promotional purposes,' SPIN at the very least had a license to use the Photo."); id. at 1 ("Janik gave a copy [of the Guccione Photograph] to Mr. Guccione without placing any restrictions on how the Photo was to be used by SPIN.").)

"Where . . . the existence of the license is undisputed, and the only contested issue is its scope, the copyright owner bears the burden of proving that the defendant's conduct was unauthorized under the license." Smith v. Barnesandnoble.com, LLC, 839 F.3d 163, 167 (2d Cir. 2016). "A valid license . . . immunizes the licensee from a charge of copyright infringement, provided that the licensee uses the copyright as agreed with the licensor." Davis v. Blige, 505 F.3d 90, 100 (2d Cir. 2007), cert. denied, 555 U.S. 822, 129 S. Ct. 117, 172 L. Ed. 2d 36 (2008); see also, e.g., Graham v. James, 144 F.3d at 236 ("A copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement."). "[T]he fact that a party has licensed certain rights to its copyright to another party does not [*27] prohibit the licensor from bringing an infringement action where it believes the license is exceeded or the agreement breached." Tasini v. N.Y. Times Co., 206 F.3d 161, 170 (2d Cir. 2000), aff'd, 533 U.S. 483, 121 S. Ct. 2381, 150

Rani Jailall

Exhibit B

2018 U.S. Dist. LEXIS 4567, *27

_L. Ed. 2d 500 (2001)_.[6]

As with the "joint work" argument, material factual disputes prevent the Court from concluding that Janik granted Spin an unlimited and perpetual license to use the Guccione Photograph. Janik claims that he permitted Spin to use the Photograph for the limited purpose of promoting the launch of Spin Magazine. (See pages 8-9 above.) Absent any compelling evidence from Spin to the contrary, Janik's claim that Spin exceeded the scope of the license by publishing the Guccione Photograph 25 and 30 years later is not unreasonable. (See Dkt. No. 104: Janik Opp. Br. at 7 ("There was no implied license of the photograph beyond the limited promotional use incident to the founding of the magazine. It is improbable that Janik gave an implied license to use his print . . . 25 and 30 years later, without any payment or consideration."); _see also, e.g., Fischer v. Forrest, 14 Civ. 1304, 2015 U.S. Dist. LEXIS 4395, 2015 WL 195822 at *7 (S.D.N.Y. Jan. 13, 2015)_ ("'[I]t is black-letter law that a claim for copyright infringement lies when a party's use of copyrighted material exceeds the scope of its license.'").

c. **Statutory Damages**

Subject to certain exceptions not [*28] here applicable,

no award of statutory damages or of attorney's fees, as provided by _sections 504_ and _505_, shall be made for—

(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or

(2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

_17 U.S.C. § 412_. "Courts in this district have held that _Section 412_ of the Copyright Act imposes a bright-line rule that precludes recovery of statutory damages and attorneys' fees where the first act of infringement in a series of ongoing infringements occurred prior to the work's copyright registration, finding such a bright-line rule preferable to case-by-case analyses of whether a series of infringements 'has stopped sufficiently such that the restart constitutes a new set of infringements.'" _Solid Oak Sketches, LLC v. 2K Games, Inc., 16 Civ. 724, 2016 U.S. Dist. LEXIS 101119, 2016 WL 4126543 at *2 (S.D.N.Y. Aug. 2, 2016)_.[7] Thus, "[e]ven '[w]here the alleged infringement begins before registration and continues after registration, statutory damages and attorney fees are still unavailable.'" _Solid Oak Sketches, LLC v. 2K Games, Inc., 2016 U.S. Dist. LEXIS 101119, 2016 WL 4126543 at *2_; accord, e.g., _Peterson v. Kolodin, 13 Civ. 793, 2013 U.S. Dist. LEXIS 132940, 2013 WL 5226114 at *8 (S.D.N.Y. Sept. 10, 2013)_ [*29] .

Spin argues that "Janik's request for statutory damages and attorneys' fees on his infringement claim was . . . clearly lacking any factual or legal basis and was therefore frivolous," because both instances of Spin's alleged infringement occurred prior to Janik's December 16, 2015 copyright registration for the Guccione Photograph. (Dkt. No. 95: Spin Br. at 13; see page 2 above.) The Amended Complaint's Wherefore provisions are not a model of clarity (see Dkt. No. 26: Am. Compl. Wherefore ¶ 3), which plaintiffs' counsel attributes to a drafting error. (Dkt. No. 104: Janik Opp. Br. at 3 ("It might be true that the Amended Complaint (FAC) does not clearly delineate between the damages Janik and co-Plaintiff Steven Hirsch are eligible for, respectively. Instead, FAC lumps in Janik and Hirsch

---

[6] "There are two general categories of licenses: non-exclusive licenses, which permit licensees to use the copyrighted material and may be granted to multiple licensees; and exclusive licenses, which grant to the licensee the exclusive right—superior even to copyright owners' rights—to use the copyrighted material in a manner as specified by the license agreement." _Davis v. Blige, 505 F.3d at 99_. "[E]xclusive license agreements must be in writing." _Id. at 100 n.10; see also 17 U.S.C. § 204(a)_. The Court presumes that any license here is non-exclusive since neither party argues that it was ever reduced to writing.

---

[7] See also, e.g., _Troll Co. v. Uneeda Doll Co., 483 F.3d 150, 158 (2d Cir. 2007)_; _Grecco v. Associated Press, 16 Civ. 6240, 2017 U.S. Dist. LEXIS 105264, 2017 WL 2913501 at *4 (S.D.N.Y. July 7, 2017)_ ("Although the Second Circuit has not ruled on this issue, district courts in this Circuit agree that pursuant to this bright-line rule, if there is a series of infringements (as there is alleged to be in this case), recovery of statutory damages and attorneys' fees is precluded when the infringement claim is against a defendant that began its infringement before registration."); _Fioranelli v. CBS Broad. Inc., 232 F. Supp. 3d 531, 2017 WL 1400119 at *8-9 (S.D.N.Y. 2017)_; _Pearson Educ., Inc. v. Ishayev, 11 Civ. 5052, 2014 U.S. Dist. LEXIS 70456, 2014 WL 2153911 at *1 (S.D.N.Y. May 22, 2014)_ ("A copyright owner is entitled to recover statutory damages, so long as its copyright was registered before the work was infringed.").

Exhibit B

2018 U.S. Dist. LEXIS 4567, *29

and requests relief in the alternative. The lack of clarity in delineation between Janik and Hirsch, does not make Janik's claims upon which this relief is based without basis in law or fact. Request for relief should be treated the Plaintiffs separately, but failing to do so does **[*30]** not make it frivolous or objectively unreasonable." (record citation omitted)).

Plaintiffs' counsel's representation finds support in the record. Plaintiffs' counsel did not elect statutory damages until after Janik's case was dismissed and thus, if Janik's case had proceeded, he conceivably would have sought actual damages. (Dkt. No. 84: 6/14/17 Conf. Tr. at 10-11.)[8] Indeed, at the May 23, 2017 conference the day before Janik's case was dismissed, Janik's counsel stated that she had retained an expert on actual damages on Janik's behalf. (Dkt. No. 82: 5/23/17 Conf. Tr. at 17-19.) And when plaintiffs initially sued the wrong Spin entity and moved for default judgment, Hirsch sought statutory damages but Janik only sought actual damages under the Copyright Act. (See Dkt. No. 12: Pl. Br. at 3-4.) While this does not excuse any imprecision in the Amended Complaint, it supports the argument that Janik did not intentionally advance (or pursue) a baseless damages theory.

The Court accordingly declines to find that Janik's damages theory was objectively unreasonable.

## 2. The DMCA Claim

The *Digital Millennium Copyright Act ("DMCA"), Pub. L. No. 105-304, 112 Stat 2860 (1998)*, "was enacted in 1998 to implement the World Intellectual Property **[*31]** Organization Copyright Treaty, and to update domestic copyright law for the digital age." *Viacom Int'l, Inc. v. YouTube, Inc., 676 F.3d 19, 26 (2d Cir. 2012)* (citations omitted). The DMCA protects, among other things, the "[i]ntegrity of copyright management information" ("CMI"), and prohibits the removal of CMI from copyrighted works. See generally *17 U.S.C. § 1202.* "The purpose of CMI is to facilitate licensing of copyright for use on the Internet and to discourage piracy." S. REP. 105-190 at 92 n.18 (1998). The DMCA provides:

No person shall, without the authority of the

copyright owner or the law—
(1) intentionally remove or alter any copyright management information,
(2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or
(3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,

knowing, or, with respect to civil remedies under *section 1203*, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title. **[*32]**

*17 U.S.C. § 1202(b).* The term "copyright management information" is defined as:

any of the following information conveyed in connection with copies . . . of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work:
(1) The title and other information identifying the work, including the information set forth on a notice of copyright.
(2) The name of, and other identifying information about, the author of a work.
(3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.
. . . .
(6) Terms and conditions for use of the work.
(7) Identifying numbers or symbols referring to such information or links to such information.
(8) Such other information as the Register of Copyrights may prescribe by regulation, except that the Register of Copyrights may not require the provision of any information concerning the user of a copyrighted work.

*17 U.S.C. § 1202(c).* As to the phrase "conveyed in connection with" used in *§ 1202(c)*, "[t]he term 'conveyed' is used in its broadest sense and is not **[*33]** meant to require any type of transfer, physical or otherwise, of the information. It merely requires that the information be accessible in conjunction with, or appear with, the work being accessed." S. REP. 105-190 at 35

---

[8] "[A]n infringer of copyright is liable for either" actual or statutory damages, *17 U.S.C. § 504(a)*, and "the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action," *17 U.S.C. § 504(c)(1).*

Exhibit B

2018 U.S. Dist. LEXIS 4567, *33

(1998).

"To establish a violation under *subsection 1202(b)*, a plaintiff must show '(1) the existence of CMI on the [infringed work]; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally.'" *Gattoni v. Tibi, LLC, 254 F. Supp. 3d 659, 2017 WL 2313882 at \*4 (S.D.N.Y. 2017)*.[9] Alternatively, a plaintiff can show that the defendant "distribute[d] . . . copies of works . . . knowing that copyright management information has been removed or altered without authority of the copyright owner . . . knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement . . . ." *17 U.S.C. § 1202(b)(3)*; see, e.g., *Friedman v. Live Nation Merch., Inc., 833 F.3d 1180, 1187 (9th Cir. 2016)* ("The statute does prohibit the intentional removal of CMI. But [plaintiff] could also prevail upon a showing that [defendant] distributed his works with the knowledge that CMI had been removed, even if [defendant] did not remove it.").

Spin argues that Janik's DMCA claim [*34] was objectively unreasonable because "Janik had no factual basis—let alone a sufficient basis—for alleging that copyright management information was removed from the Photo under *17 U.S.C. § 1202*. There was never any such information on the Photo in the first place." (Dkt. No. 95: Spin Br. at 12; see also id. at 2 ("Janik never identified any copyright management information that SPIN could have supposedly removed.").) Janik responds that he "had his attribution credit on all of his photographs, including the one given to Mr. Guiccione Jr." (Dkt. No. 99: Janik Br. at 10.) Janik also attached to his affidavit other photographs that allegedly appeared in the first issue of Spin Magazine; "[a]ll of these images were credited to Fran Janik." (See page 8 above.) However, Janik did not produce a copy of the Guccione Photograph bearing any CMI, including his name. (See Dkt. No. 103: Spin Opp. Br. at 12 n.9 ("Neither party located any issue of SPIN magazine where the [Guccione] photograph was attributed to Mr. Janik or any copy of the photograph containing any copyright management information.").)

These arguments divert attention from an important statement in Janik's interrogatory responses that neither party mentions. [*35] When asked to "[s]tate all facts that support the allegation that copyright management information was removed from the Guccione Photograph," Janik responded that he "gave Bob Guccione Jr. the contact sheet with [Janik's] name on it[,]" but "[w]hen the [Guccione] [P]hotograph appeared in SPIN, it had no CMI on it." (Dkt. No. 96: Williams Aff. Ex. L: Janik Interrogatory Response No. 6 (emphasis added).) The term "contact sheet" is a term of art in professional photography—a relic from the days of pre-digital film photography when the Guccione Photograph was taken in 1985. See, e.g., Sean O'Hagan, Contact sheets: where the magic and chaos of photographs comes alive, THE GUARDIAN, *https://www.theguardian.com/artanddesign/2015/sep/02/contact-sheets-magnum-photography-magic-chaos* . A "contact sheet" is defined as: "A piece of photographic paper on which several or all of the negatives on a film have been contact-printed." "Contact Sheet" Definition, OXFORD DICTIONARIES, *https://en.oxforddictionaries.com/definition/contact_sheet*.[10]

Janik's name on the contact sheet was "conveyed in connection with [the] cop[y]" of the Guccione Photograph and qualifies as CMI under the DMCA. *17 U.S.C. § 1202(c)(2)* (CMI includes "[t]he name of, and other identifying information about, the author of a work."); see also, e.g., *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC, 999 F. Supp. 2d 1098, 1102-03 (N.D. Ill. 2014)* ("[I]t is 'implausible' that a viewer of the record album would not [*36] understand that the credit line 'Photography: Don Levey, Don Levey Studio' on the back of the album also referred to authorship of the photo on the cover of the album."); *Agence France Presse v. Morel, 769 F. Supp. 2d 295, 305 (S.D.N.Y. 2011)* ("This Court rejects the movants' argument that CMI must be removed from the photograph itself to state a claim for removal or alteration of CMI. First, *§ 1202(b)* imposes no such requirement. Moreover, the DMCA defines CMI as information 'conveyed in connection with copies' of a work—it does [not] require the CMI to appear on the work itself. It is implausible that a viewer of [plaintiff] Morel's photos would not understand the designations 'Morel' and 'by photomorel'

---

[9] Accord, e.g., *Reilly v. Commerce, 15 Civ. 5118, 2016 U.S. Dist. LEXIS 152154, 2016 WL 6837895 at \*6 (S.D.N.Y. Oct. 31, 2016)*; *Sheldon v. Plot Commerce, 15 Civ. 5885, 2016 U.S. Dist. LEXIS 116135, 2016 WL 5107072 at \*13 (E.D.N.Y. Aug. 26, 2016)*, R. & R. adopted, *2016 U.S. Dist. LEXIS 127414, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016)*; *BanxCorp v. Costco Wholesale Corp., 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010)*.

---

[10] See also, e.g., "Contact Sheet" Definition, DICTIONARY.COM, *http://www.dictionary.com/browse/contact-sheet?s=t* ("[A] contact print, usually of all frames of a developed roll of negative print film, used as a proof print.").

Rani Jailall

Exhibit B

2018 U.S. Dist. LEXIS 4567, *36

appearing next to the images to refer to authorship." (citation omitted)); S. REP. 105-190 at 35 (1998) ("The term 'conveyed' is used in its broadest sense and is not meant to require any type of transfer, physical or otherwise, of the information. It merely requires that the information be accessible in conjunction with, or appear with, the work being accessed."). Whether the same contact sheet was used 25 and 30 years later to digitize the Guccione Photograph for Spin's anniversary editions, however, is unknown. (See Williams Aff. Ex. I: Blackwell Dep. at 119 ("I don't [*37] know how the photograph became digitized. I can't speak to that.").)[11] In any event, as Spin only argues that the Photograph contained no CMI, that argument does not establish that Janik's DMCA claim was objectively unreasonable as a matter of law.[12]

## B. Frivolousness

Frivolousness, like objective unreasonableness, requires a court to determine whether the claim at issue "'lack[ed] an arguable basis either in law or in fact.'" *Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc., 14 Civ. 9270, 2017 U.S. Dist. LEXIS 124082, 2017 WL 3393850 at *4 (S.D.N.Y. Aug. 4, 2017)*; accord, e.g., *John Wiley & Sons, Inc. v. Kirtsaeng, 08 Civ. 7834, 2016 U.S. Dist. LEXIS 176981, 2016 WL 7392210 at *2 (S.D.N.Y. Dec. 21, 2016)*. "This factor clearly overlaps significantly with the consideration of objective unreasonableness, although the Second Circuit has indicated that the two factors are 'not necessarily coextensive.'" *Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc., 2017 U.S. Dist. LEXIS 124082, 2017 WL 3393850 at *4*; accord, e.g., *Agence France Presse v. Morel, 10 Civ. 2730, 2015 U.S. Dist. LEXIS 189008, 2015 WL 13021413 at *5 (S.D.N.Y. Mar. 23, 2015)*, aff'd, *645 F. App'x 86 (2d Cir. 2016)*.

Implicit in the conclusion that Janik's claims were not objectively unreasonable was the finding that his claims were not devoid of legal or factual support. The Court

accordingly concludes, for many of the reasons discussed above, that Janik's claims are not frivolous. See, e.g., *Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc., 2017 U.S. Dist. LEXIS 124082, 2017 WL 3393850 at *4* ("[R]egardless of the exact boundaries of these two factors [i.e., objective unreasonableness and frivolousness], the Court has little [*38] trouble concluding, for the reasons discussed, that Plaintiff's claim was not frivolous."); *John Wiley & Sons, Inc. v. Kirtsaeng, 2016 U.S. Dist. LEXIS 176981, 2016 WL 7392210 at *2* ("For the same reasons that [plaintiff's] litigating position was objectively reasonable, it was not frivolous.").

## C. Motivation

"[A] party is improperly motivated where it asserts claims 'not because of [their] inherent merit,' but rather because it seeks to 'knowingly gamble[ ] on an unreasonable legal theory in order to achieve a secondary gain,'" such as "'the leveraging of a settlement.'" *Agence France Presse v. Morel, 10 Civ. 2730, 2015 U.S. Dist. LEXIS 189008, 2015 WL 13021413 at *5 (S.D.N.Y. Mar. 23, 2015)*, aff'd, *645 F. App'x 86 (2d Cir. 2016)*; see also, e.g., *Konangataa v. Am. Broad. Cos., 16 Civ. 7382, 2017 U.S. Dist. LEXIS 95812, 2017 WL 2684067 at *2 (S.D.N.Y. June 21, 2017)* ("There may well be justification for defendants' implication that these were strike suits, designed to extort settlements from defendants on the basis that the defense costs would exceed what plaintiff would accept in settlement."); *Baker v. Urban Outfitters, Inc., 431 F. Supp. 2d 351, 358 (S.D.N.Y. 2006)* ("[R]ather than pursuing resolution of a fairly minor dispute in good faith, the record suggests that [plaintiff] (and his counsel) filed and maintained this suit in an attempt to extract a significant payment from perceived 'deep pocketed' defendants (and in an attempt to garner publicity for [plaintiff's] agent and for his lawyer)."), aff'd, *249 F. App'x 845 (2d Cir. 2007)*. But "where a court 'has no reason to doubt that, throughout the [*39] litigation, [a party] sincerely believed that [her work] was entitled to copyright protection and pursued [her] claim for the purpose of vindicating [her] rights,' that fact 'weighs against awarding costs and attorneys' fees against [her].'" *Effie Film, LLC v. Pomerance, 11 Civ. 7087, 2013 U.S. Dist. LEXIS 58813, 2013 WL 1759560 at *4 (S.D.N.Y. Apr. 24, 2013)*; see also, e.g., *John Wiley & Sons, Inc. v. Kirtsaeng, 08 Civ. 7834, 2016 U.S. Dist. LEXIS 176981, 2016 WL 7392210 at *3 (S.D.N.Y. Dec. 21, 2016)* (Plaintiff's "decision to file and its pursuit of the copyright infringement action against one whom it

---

[11] If it was, it might be reasonable to infer that a Spin employee "intentionally remove[d]" Janik's name when reproducing and republishing the Photograph. *17 U.S.C. § 1202(b)(1)*.

[12] Even if this claim were unreasonable, aside from a handful of Spin's counsel's billing entries, it does not appear that Spin spent any time separately litigating Janik's DMCA claim, apart from his Copyright Act claim. (See generally Williams Aff. Ex. A: Spin Billing Entries.) Thus, any fees would be de minimis.

Rani Jailall

Exhibit B

2018 U.S. Dist. LEXIS 4567, *39

believed in good faith to have infringed its copyright did not constitute either bad faith or suggest an impermissible motive.").

Spin argues that "Janik's conduct in this case, including his unwillingness to participate in discovery and his last-minute, suspect excuses for non-compliance with Court orders, made clear that Janik and his attorney — who has brought hundreds of similar cases in this District since January of 2016 — were motivated by the hope for a quick, easy and unjustified settlement." (Dkt. No. 95: Spin Br. at 4 (fn. omitted)). Spin argues that Janik's decision to voluntarily dismiss his case rather than appear for deposition "indicates that he never intended to prosecute this case." (Id. at 14.) According to Spin, "[o]nce he realized **[*40]** [Spin] had no intention of paying him a large settlement related to meritless claims, Janik tried to obtain a dismissal without prejudice so he could continue to threaten [Spin] with claims without the supervision of the Court." (Id. at 15.)

The Court cannot conclude that Janik was improperly motivated. As the numerous conference transcripts and letters to the Court make clear, Janik dismissed his case because he felt that his medical issues precluded his travel to New York for deposition. (See pages 2-5 above; see also Dkt. No. 100: Janik Aff. ¶¶ 12-25.) When the Court refused to allow Janik to testify remotely, Janik dismissed his case. (See pages 2-5 above; see also Janik Aff. ¶¶ 17, 19 ("Once my attorneys informed me that a remote deposition would not be possible, I fully informed them of the various reasons, medical and otherwise that I could not travel to New York for a deposition. . . . After discussing the various options of personally attending a deposition in New York, my attorneys and I decided to dismiss the case."). To be sure, Spin is correct that discovery in this case was a train wreck; but there is scant evidence that Janik shirked his discovery obligations because Spin **[*41]** refused to pay a strike suit settlement.[13]

Moreover, while each side criticizes the other side's settlement position (see Spin Br. at 15; Dkt. No. 99: Janik Br. at 2-3), the record on this fee application is devoid of any details as to those settlement proposals.

Spin has not shown that this lawsuit was improperly motivated.

*Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc., 14 Civ. 9270, 2017 U.S. Dist. LEXIS 124082, 2017 WL 3393850 at *4 (S.D.N.Y. Aug. 4, 2017).* However, without specifics regarding the respective merits of these cases, filing volume does not necessarily signal an improper motivation in this case by counsel, let alone by Janik.

The two cases from this District that Spin cites involving the Liebowitz Law Firm—*Konangataa v. Am. Broad. Cos., 16 Civ. 7382, 2017 U.S. Dist. LEXIS 95812, 2017 WL 2684067 (S.D.N.Y. June 21, 2017),* and *Janik v. MediaPost Commc'ns, Inc., 16 Civ. 5872, 2017 U.S. Dist. LEXIS 98390, 2017 WL 2735578 (S.D.N.Y. June 26, 2017)*—do not alter the Court's conclusion. In *Konangataa,* Judge Kaplan granted defendants' attorneys' fees motion as the "prevailing party" under the Copyright Act, primarily because "no reasonable lawyer with any familiarity with the law of copyright could have thought that" defendants had committed a copyright violation. *Konangataa v. Am. Broad. Cos., 2017 U.S. Dist. LEXIS 95812, 2017 WL 2684067 at *2.* Although Judge Kaplan stated that "[t]here may well be justification for defendants' implication that these were strike suits," he made no specific finding on that point and indeed "assume[d] arguendo that plaintiff's motives were blameless." Id. In *MediaPost,* a lawsuit by Janik against MediaPost's use of the Guccione Photograph, Judge Carter denied Janik's motion for default judgment but made no findings as to Janik's or his counsel's proper or improper motivation. See *Janik v. MediaPost Commc'ns, Inc., 2017 U.S. Dist. LEXIS 98390, 2017 WL 2735578 at *1-3.* Instead, Judge Carter found that Janik had not timely registered his copyright (precluding his infringement claim) and that Janik did not plausibly allege the existence of CMI on the Guccione Photograph (precluding his DMCA claim). Id. While Spin argues that "[w]hen Judge Carter gave Janik an opportunity to renew his default judgment motion after amending his complaint, Janik dropped the *Section 1202* claim from the complaint entirely, conceding that no management information was removed from the Photo," it is just as likely that Janik dropped that claim as duplicative on a default judgment because his amended Copyright Act claim provided substantially similar relief. (Spin Br. at 13; see also *Janik v. MediaPost Commc'ns, Inc., 16 Civ. 5872 (S.D.N.Y.): Dkt. No. 13: Am. Compl.)* Even assuming Janik's claims in *MediaPost* were meritless, that has little bearing here in light of the Court's independent analysis above indicating that Janik's claims against Spin in this case, at least on this record (limited but greater than in *MediaPost*), were not objectively unreasonable and appear to have been presented in good faith.

---

[13] Spin cites an article indicating that plaintiffs' counsel, the Liebowitz Law Firm, are litigious to say the least. (Spin Br. at 4 n.7; see also id. at 15 ("Janik's strategy is part-and-parcel of a mass litigation campaign by Janik's counsel on behalf of dozens of photographers in hundreds of cases, almost all of which involve actual damages, if any, below a court filing fee.").) Spin likens this conduct (see Spin Br. at 4-5) to that of "[a] copyright troll [who] 'plays a numbers game in which it targets hundreds or thousands of defendants seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim.'"

Exhibit B

2018 U.S. Dist. LEXIS 4567, *41

## D. Compensation and Deterrence

"This factor is meant to ensure that defendants are encouraged to protect their legitimate rights and bad-faith plaintiffs are discouraged from bringing frivolous and unreasonable claims. *Creazoni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.,* 14 Civ. 9270, 2017 U.S. Dist. LEXIS 124082, 2017 WL 3393850 at *5 (S.D.N.Y. Aug. 4, 2017); see also, e.g., *Schleifer v. Berns,* 17 Civ. 1649, 2017 U.S. Dist. LEXIS 112391, 2017 WL 3084406 at *6 (E.D.N.Y. July 19, 2017)* ("As to deterrence, an award of costs and fees is crucial here, so as to deter this plaintiff, and other similarly situated plaintiffs, from bringing frivolous and objectively unreasonable claims. There is also a need to deter attorneys who fail to comply with their obligations to the Court to research and put forth good-faith claims and **[*42]** defenses.").

Considerations of compensation and deterrence do not weigh in favor of a fee award here. The Court has concluded that none of the other *Fogerty* factors weighs in favor of awarding fees, and it appears that Janik brought this lawsuit with the good faith belief that his copyright rights had been violated. *See, e.g., Creazoni Artistiche Musicali, S.r.l. v. Carlin Am., Inc., 2017 U.S. Dist. LEXIS 124082, 2017 WL 3393850 at *5* ("[A]s already noted, Plaintiff's conduct in this litigation was not objectively unreasonable, frivolous, or driven by an improper motive, and thus does not warrant the deterrent effect of fees."). Although attorneys should be deterred from flouting their discovery obligations, both Janik's and Hirsch's claims were voluntarily dismissed with prejudice prior to any motion practice. That result was precipitated by the Court repeatedly sanctioning plaintiffs and their counsel, which itself provided sufficient compensation to Spin and (hopefully) will encourage plaintiffs' counsel, the Liebowitz Law Firm, to take discovery more seriously in future cases. (See Dkt. No. 104: Janik Opp. Br. at 10 ("The Court might note that Janik should be deterred from filing cases in forums where he cannot appear physically or only belatedly disclosing those facts to the Court and adversary. **[*43]** Those are legitimate concerns, however, for which Janik has already paid in *Rule 37* sanctions and deposition bust fees.").)

## E. Other Considerations

The *Fogerty* factors are not exclusive, and the Court is required to account for the "totality of circumstances in a case" in determining whether a fee award is warranted.

*Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. 1979, 1985, 195 L. Ed. 2d 368 (2016).* The procedural history of this case indicates that a fee award is inappropriate. In particular, Janik's and Hirsch's claims were voluntarily dismissed (with prejudice) not because they were meritless, but because of a series of discovery lapses, caused more by the Liebowitz Law Firm than by Janik (or Hirsch).

Janik claimed that his disability prevented him from traveling to New York for deposition. (See pages 2-5 above.) I informed plaintiffs' counsel that Janik had two choices: appear for deposition or dismiss the case; Janik properly dismissed his case with prejudice after determining that in his view his physical appearance was impossible. (Id.) Nothing in the transcripts or letters filed prior to Janik's dismissal suggests that he dismissed his case for any other reason. While plaintiffs' counsel should have disclosed Janik's purported disability much earlier, their failure **[*44]** to do so was not, in my opinion as the presiding judge throughout the many pretrial proceedings in this case, in bad faith or sanction worthy.

Moreover, my understanding, shared by plaintiffs' counsel, was that Hirsch's case would be dismissed in lieu of either plaintiff being subjected to any further monetary liability. (See Dkt. No. 102: Tsyvkin Aff. ¶¶ 10-14.) At the June 14, 2017 conference at which Hirsch's case was ultimately dismissed, Spin's counsel indicated that Spin would seek not just fees related to Hirsch's deposition, but fees related to Janik's deposition and other related matters as well. (See pages 5-7 above.) After discussing the attorneys' fees figure that Spin's counsel sought (a figure considerably less than Spin seeks here), plaintiffs' counsel wisely chose to dismiss Hirsch's case. (See pages 6-7 above; see also Tsyvkin Aff. ¶¶ 12-13 ("Plaintiff's counsel dismissed the case with prejudice only because she was facing attorney's fees and costs in relation to the Hirsch and Janik claims. . . . Had it been made clear by Defendant's counsel that he still intended to seek attorney's fees and costs as to the Janik matter, Plaintiff might not have dismissed the case **[*45]** with prejudice at that point.").) Indeed, I ended the conference by stating that "[t]he only remaining cost" to be borne by the plaintiffs was the cost of the conference transcript. (See page 7 above.)

Nevertheless, the Court notes that plaintiffs' counsel, the Liebowitz Law Firm, has filed a large number of copyright cases in this District—at least "452 cases in this Court in the last 21 months" *Cruz v. Am. Broad. Cos., 17 Civ. 8794, 2017 U.S. Dist. LEXIS 196317,*

Rani Jailall

Exhibit B

*2017 WL 5665657 at *2 n.11 (S.D.N.Y. Nov. 17, 2017)*—a few of which were dismissed from the bench as frivolous, and fees awarded. See *Cruz v. Am. Broad. Cos., 2017 U.S. Dist. LEXIS 196317, 2017 WL 5665657 at *2 n.11* (Judge Kaplan noted that he "awarded over $121,000 in attorneys fees against a client of Mr. Liebowitz in three other, related copyright infringement cases that were dismissed from the bench." (citing *Kanongataa v. Am. Broad. Cos., 16 Civ. 7382, 2017 U.S. Dist. LEXIS 169534, 2017 WL 4776981 at *3 (S.D.N.Y. Oct. 4, 2017)*); see also *Konangataa v. Am. Broad. Cos., 16 Civ. 7382, 2017 U.S. Dist. LEXIS 95812, 2017 WL 2684067 at *1-2 (S.D.N.Y. June 21, 2017)*. Indeed, in *Cruz*, Judge Kaplan on his own motion required the Liebowitz Law Firm to show cause why plaintiff should not be required to post security for costs including attorneys' fees. *Cruz v. Am. Broad. Cos., 2017 U.S. Dist. LEXIS 196317, 2017 WL 5665657 at *1-2.*[14]

In the present case, the Liebowitz Law Firm made a total hash of discovery, requiring multiple court conferences. (Underline See pages 2-7 above.) At a minimum, there was a failure of counsel to adequately **[*46]** communicate and coordinate with the plaintiffs, let alone with opposing counsel and the Court. (See, e.g., Dkt. No. 84: 6/14/17 Conf. Tr. at 2-5; Dkt. No. 82: 5/23/17 Conf. Tr. at 3-4; Dkt. No. 64: 5/15/17 Conf. Tr. at 13-14.) While no further sanctions are being granted in this case, the Liebowitz Law Firm needs to consider its reputation with the Court and, frankly, clean up its act.

Despite these concerns, the Court in the exercise of its discretion finds that the totality of the circumstances, including all of the *Fogerty* factors, militate in favor of denying fees in this case.

**CONCLUSION**

For the reasons set forth above, Spin's attorneys' fees motion (Dkt. No. 94) is DENIED.

SO ORDERED.

Dated: New York, New York

January 10, 2018

/s/ Andrew J. Peck

---

[14] Interestingly, within two weeks of the order to show cause, Liebowitz informed the Court that the parties had settled the case. (17 Civ. 8794, Dkt. No. 8.)

**Andrew J. Peck**

United States Magistrate Judge

---

End of Document

Rani Jailall

<span style="color:red">Exhibit B</span>

 Warning
As of: May 17, 2019 4:57 PM Z

# *Steeger v. JMS Cleaning Servs. LLC*

United States District Court for the Southern District of New York

February 28, 2018, Decided; February 28, 2018, Filed

17cv8013(DLC)

**Reporter**

2018 U.S. Dist. LEXIS 32730 *; 126 U.S.P.Q.2D (BNA) 1043 **; 2018 WL 1136113

PAUL STEEGER, Plaintiff, -v- JMS CLEANING SERVICES LLC, Defendant.

**Subsequent History:** Reconsideration granted by, in part, Vacated by, in part *Steeger v. JMS Cleaning Servs., LLC, 2018 U.S. Dist. LEXIS 42797 (S.D.N.Y., Mar. 14, 2018)*

**Prior History:** *Steeger v. JMS Cleaning Servs. LLC, 2018 U.S. Dist. LEXIS 13207 (S.D.N.Y., Jan. 26, 2018)*

## Core Terms

Notice, pretrial conference, sanctions, settlement, failure to serve, needlessly, parties, cases, costs, attorneys, omissions, argues, independently, adjournment, scheduled, default, manage, deter, law law law, misrepresentations, communicate, inadvertent, photograph, repetition, requesting, discovery, occasions, resources, responded, severally

**Counsel:** [*1] For plaintiff: Richard P. Liebowitz, Liebowitz Law Firm, PLLC, Valley Stream, NY.

For defendant: Stephanie Furgang Adwar, Furgang & Afwar, LLP, West Nyack, NY.

**Judges:** DENISE COTE, United States District Judge.

**Opinion by:** DENISE COTE

## Opinion

[**1043] MEMORANDUM OPINION AND ORDER

DENISE COTE, District Judge:

On October 18, 2017, Paul Steeger filed this copyright action. He is represented by Richard Liebowitz, who has been labelled a copyright "troll." *McDermott v. Monday Monday, LLC, 17cv9230(DLC), 2018 U.S. Dist. LEXIS 28664, 2018 WL 1033240, at *3 n.4 (S.D.N.Y. Feb. 22, 2018).*[1] The defendant is a "mom and pop" office cleaning service. As became apparent over the brief history of this litigation, the defendant had downloaded a photograph of a leaf from a free download site. It displayed that photograph on its website sometime in 2013. The copyright for the photo was filed on March 11, 2017, well after the allegedly infringing use. Similar photos of leaves are available online for a license of about $12. The defendant removed the photo from its website as soon as it was notified, in July, that the plaintiff might file suit.

A Memorandum Opinion and Order of January 26, 2018 ("January 26 Order") required Mr. Liebowitz to show cause by February 2 why he should not be sanctioned, pursuant to *Rule 11* and the Court's inherent [*2] power, for the following conduct:

> 1) his failure to serve the November 9, 2017 Notice of Pretrial Conference;
> 2) the misrepresentations and omissions in his January 13, 2018 letter to the Court; and
> 3) costs needlessly imposed on the defendant.

The January 26 Order outlined the procedural history of the case, including Mr. Liebowitz's failure to serve the Notice of Pretrial Conference on defendant, his delay in serving the Complaint on the defendant, and his failure to communicate with the defendant effectively concerning settlement.

In his February 2 response, Mr. Liebowitz acknowledges that he failed to serve the Court's Notice of Pretrial Conference on the defendant, as he was required to do. He contends that the failure was "inadvertent," and argues that the defendant was not prejudiced since it independently learned of the date of the conference.

---

[1] Mr. Liebowitz has filed over 500 cases in this district in the past twenty-four months. Sixteen of those cases have been before this Court.

Exhibit B

2018 U.S. Dist. LEXIS 32730, *2; 126 U.S.P.Q.2D (BNA) 1043, **1043

Mr. Liebowitz argues that his January 13 letter to the Court contained no misrepresentations and that the law did not impose upon him the duty to say more than he did. The **[**1044]** January 13 letter had requested an adjournment of the initial pretrial conference scheduled to occur on January 19, on the ground that the defendant had not responded to **[*3]** the complaint and the plaintiff intended to file a motion for a default. That letter did not reveal that plaintiff's counsel had been in communication with attorneys for the defendant since July, as described in the January 26 Order. Mr. Liebowitz argues that, in the event the Court finds that he should have included more information in the January 13 letter, his omissions did not rise to the level of bad faith.

Finally, Mr. Liebowitz argues that it was the defendant who needlessly made the litigation more expensive by (among other things) failing to waive service, to update its address with the Secretary of State, and to answer or request an extension of the time to answer.

On February 5, counsel for the defendant requested that the Court grant the defendant its costs and attorney's fees, and impose a bond requirement on the plaintiff to cover the defendant's costs or dismiss this action. Among other things, the submission took issue with the accuracy of several representations in Mr. Liebowitz's February 2 submission. The plaintiff was required to respond by February 12. In an application of February 6, the defendant retracted its February 5 requests in order to proceed with a settlement **[*4]** agreement reached between the plaintiff and defendant.

In a February 12 submission, Mr. Liebowitz argued again that there was insufficient evidence that he acted in bad faith. On February 22, the plaintiff voluntarily dismissed this action with prejudice pursuant to _Rule 41(a)(1)(A)(i)_.

This is not the first time Mr. Liebowitz has failed to serve a Notice of a Pretrial Conference on a defendant. Although not disclosed by Mr. Liebowitz, defendant informed the Court that Mr. Liebowitz failed to serve a similar notice of pretrial conference in a case before The Honorable Ronnie Abrams. _See Al Pereira v. Kendall Jenner, Inc.,_ 17cv6945(RA). On November 28, 2017, two days before the conference was scheduled, the defendant in that case wrote to Judge Abrams to request to attend by telephone, as it had only learned of the conference that day. The plaintiff, represented by Mr. Liebowitz, had not served defendant with the court's September 14 pretrial Order, even though it was

instructed to do so.

This Court's Notice of Pretrial Conference was issued on November 28. After the _Al Pereira_ defendant's November 28 letter, Mr. Liebowitz was on notice to review his cases for pretrial orders and notices and to, when ordered **[*5]** to do so, serve them on defendants. In fact, on November 28, a Notice of Pretrial Conference was filed in another copyright case before _this_ Court filed by Mr. Liebowitz. McDermott v. Monday Monday, 17cv9230(DLC), LLC, ECF No. 5. And yet, Mr. Liebowitz also failed to serve the Notice of Pretrial Conference in that case. _McDermott v. Monday Monday, LLC, 17cv9230(DLC), 2018 U.S. Dist. LEXIS 28664, 2018 WL 1033240, at *1 n.1 (S.D.N.Y. Feb. 22, 2018)_.

A "Court may impose an appropriate sanction on any attorney" if it determines that _Rule 11(b)_ has been violated. _Fed. R. Civ. P. 11(c)(1)_. An attorney has violated _Rule 11(b)_ when he "present[s] to the court a pleading, written motion, or other paper" that is "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." _Fed. R. Civ. P. 11(b)_. Sanctions are considered a "deterrent" and, "if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty." 1993 Advisory Committee Notes to _Fed. R. Civ. P. 11_. A court can weigh multiple, non-exclusive factors in determining if an imposition of sanctions is appropriate:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether **[*6]** the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants: all of these may in a particular case be proper considerations. The court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions **[**1045]** should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons.

Exhibit B

Case 3:20-cv-05262-TKW-EMT    Document 9-2    Filed 04/27/20    Page 48 of 90

Page 3 of 4

2018 U.S. Dist. LEXIS 32730, *6; 126 U.S.P.Q.2D (BNA) 1043, **1045

Id. (emphasis added). Moreover,

> [t]he court has inherent power to sanction parties and their attorneys, a power born of the practical necessity that courts be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. This power may likewise be exercised where the party or the attorney has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. [*7]

*Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000).

Mr. Liebowitz should be sanctioned for his failure to serve the Notice of Pretrial Conference. Mr. Liebowitz's claim that his failure to serve JMS Cleaning Services, LLC with the Notice of Pretrial Conference was "inadvertent" and an "honest mistake" is unpersuasive given his prior practice before this Court and in this district.

Service of such a Notice is essential to the efficient administration of cases before this Court. The Notice of Pretrial Conference is often a defendant's first introduction the Court. Accordingly, a copy of the Court's individual practices is required to accompany service of the Notice. Of course, the Pretrial Conference itself is an integral component of a trial: the parties have an opportunity to discuss the case with the Court, a discovery and motion practice schedule is set, and, often, a trial date is selected. To deprive an adversary of notice of such a conference -- and to assume that it will discover the details by looking on the Electronic Case Filing ("ECF") system -- is to interfere with the ability of a court to manage its docket and with the parties' ability to manage its litigation.

In the Court's experience, a properly served Notice of Pretrial [*8] Conference often prompts a defendant to answer, to request an extension to answer, to obtain counsel, or to otherwise begin active participation in the litigation. Indeed, that is precisely what happened in this case: defendant sprang into action after learning about the conference. The defendant's principal, upon learning of the conference two months after the Notice was filed on ECF and only one week before the scheduled conference, appeared for the conference even though he had not yet officially responded to the complaint.

Sanctions are also warranted for Mr. Liebowitz's omissions in his January 13 letter. The January 13 letter omitted key details of the parties' communications. The letter stated only that the defendant had yet to respond

to the complaint, suggesting that the defendant was wholly unresponsive or otherwise absent from the litigation and, as a result, the plaintiff was prepared to file a motion for a default judgment.

This characterization was misleading. Plaintiff had spoken with defendant's counsel on multiple occasions before filing the January 13 letter. The defendant had attempted settlement negotiations.By requesting an adjournment of the conference and suggesting [*9] that he move for a default judgment, without this key context, Mr. Liebowitz needlessly delayed and prolonged litigation. A conference would have allowed Court to discuss service issues with the parties, as well as a settlement schedule, and a parallel discovery and dispositive motion practice schedule if settlement were not to succeed. Moreover, Mr. Liebowitz's letter gave the impression that the defendant was delinquent when, in fact, the defendant had tried on multiple occasions to avoid, and eventually resolve, litigation. Indeed, the defendant, having independently learned of the initial conference (but not its adjournment) appeared at court for the initial conference. In sum, the January 13 letter misled the Court as to the defendant's participation in the litigation.

Finally, Mr. Liebowitz has needlessly imposed costs on the defendant. The defendant had expressed a desire to avoid litigation through settlement before Mr. Liebowitz even filed this lawsuit. Now, Mr. Liebowitz has abandoned litigation and, presumably, resolved this case privately with the defendant. The defendant has likely expended significant financial -- and emotional -- resources defending this lawsuit. The [*10] defendant consulted with at least two attorneys and its owner appeared at a court conference which had been cancelled pursuant to Mr. Liebowitz request.

Mr. Liebowitz's failure to serve the Notice of Pretrial Conference, his material omissions in his January 13 letter, and his needless infliction of costs on the defendant are each independently [**1046] sufficient to justify sanctions imposed pursuant to *Rule 11* and the Court's inherent power. Taken together, Mr. Liebowitz's actions throughout the course of this litigation compel the Court to impose sanctions. Accordingly, it is hereby

ORDERED that, pursuant to this Court's inherent authority, and having weighed the factors listed in the Advisory Committee Notes to the 1993 Amendment to *Rule 11*, sanctions shall be imposed on Richard Liebowitz in the amount of $10,000. Mr. Liebowitz and Liebowitz Law Firm, PLLC are jointly and severally liable

Exhibit B

2018 U.S. Dist. LEXIS 32730, *10; 126 U.S.P.Q.2D (BNA) 1043, **1046

for the $10,000 sanction.

IT IS FURTHER ORDERED that by, Friday, March 9, the $10,000 sanction shall be paid to the Clerk of Court, U.S. District Court, Southern District of New York.

Dated: New York, New York

February 28, 2018

/s/ Denise Cote

DENISE COTE

United States District Judge

**End of Document**

Exhibit B

(A) Neutral

As of: January 9, 2020 2:30 PM Z

## *Steeger v. JMS Cleaning Servs., LLC*

United States District Court for the Southern District of New York

March 14, 2018, Decided; March 15, 2018, Filed

17cv8013(DLC)

**Reporter**

2018 U.S. Dist. LEXIS 42797 *; 2018 WL 1363497

PAUL STEEGER, Plaintiff, -v- JMS CLEANING SERVICES, LLC, Defendant.

**Prior History:** *Steeger v. JMS Cleaning Servs. LLC, 2018 U.S. Dist. LEXIS 32730 (S.D.N.Y., Feb. 28, 2018)*

## Core Terms

sanctions, settlement, inherent power, reconsideration motion, monetary sanctions, misconduct, order to show cause, defense counsel, attorneys', parties, argues

**Counsel:** [*1] For the plaintiff: Richard Liebowitz, Liebowitz Law Firm, PLLC, Valleystream, NY.

**Judges:** DENISE COTE, United States District Judge.

**Opinion by:** DENISE COTE

## Opinion

OPINION AND ORDER

DENISE COTE, District Judge:

An Opinion and Order of February 28 imposed $10,000 in sanctions on Richard Liebowitz and his law firm pursuant to *Rule 11, Fed. R. Civ. P.*, and this Court's inherent power, payable to the Clerk of Court. *Steeger v. JMS Cleaning Servs. LLC, No. 17cv8013(DLC), 2018 U.S. Dist. LEXIS 32730, 2018 WL 1136113 (S.D.N.Y. Feb. 28, 2018)*. On March 9, the plaintiff moved for reconsideration and an order vacating the February 28 Order.[1] The motion is granted in part. Mr. Liebowitz will be required to complete by July 31, 2018 continuing legal education ("CLE") coursework giving him 4 additional CLE credit hours in ethics and professionalism beyond those required by the New York State bar authorities. In addition, the monetary sanction in the amount of $10,000 is reduced to $2,000.

In his motion for reconsideration, Mr. Liebowitz argues that the February 28 Opinion errs in two respects. First, he argues that a court may not sua sponte issue an order to show cause under *Rule 11(c)(2)(B), Fed. R. Civ. P.*, after the parties have settled their claims.[2] The parties notified the Court that they had reached a "settlement in principle" on January 24, and the Court [*2] issued the order to show cause why sanctions should not be imposed on January 26.

---

[1] Although the notice of motion purports to require the defendant to submit any opposition to this motion by March 26, the sanctions were imposed pursuant to an order to show cause issued by the Court. The defendant is under no obligation to respond to this motion for reconsideration. The action against the defendant was dismissed with prejudice on February 22.

[2] The provision of *Rule 11* at issue appears in *subsection (c)(5)*, not in the subsection on which the motion relies, that is, *subsection (c)(2)*.

Exhibit B

Steeger v. JMS Cleaning Servs., LLC

Second, plaintiff argues that the Court may only impose compensatory and not punitive sanctions under its inherent powers. These issues will be addressed in turn.

*Rule 11(c)(5)(B)* provides:

> The court must not impose a monetary sanction . . . on its own, unless it issued a show-cause order under *Rule 11(c)(3)* before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.

*Fed. R. Civ. P. 11(c)(5)(B)*. As the Advisory Committee Notes explain, "[p]arties settling a case should not be subsequently faced with an unexpected order from the court leading to monetary sanctions that might have affected their willingness to settle or voluntarily dismiss a case." *Fed. R. Civ. P. 11*, advisory committee notes (1993).

The January 26 order to show cause was triggered by the information contained in a January 24 letter from an attorney representing the defendant. On January 24, at 11:38 am, the defendant's counsel filed an application for an order to show cause why the plaintiff should not be required to post security as a condition for proceeding further.[3] The letter recited the history of communications between Mr. Liebowitz [*3] and the defendant's attorney and disclosed, inter alia, that Mr. Liebowitz had never served the Notice of Pretrial Conference on the defendant, and had never responded to the defendant's settlement offer. This letter apparently prompted Mr. Liebowitz to contact the defendant's attorney. After 6 p.m. that afternoon,[4] the parties reached their agreement to settle the lawsuit. In his brief letter to the Court of January 24, filed at 6:28 pm,[5] Mr. Liebowitz advised that the parties "have reached a settlement in principle and respectfully request that this Court administratively dismiss the action with leave to reopen the case by April 1, 2018 to allow Defendant to make the settlement installments." Before January 24,

the Court had been informed that the plaintiff wished to seek entry of a default judgment against the defendant: through an Order of January 16, the motion for entry of the default was due to be filed on January 26. In light of the parties' settlement, no such motion was filed. The Court, however, did not administratively close the case. Instead, on January 26, the Court issued its Order directing Mr. Liebowitz to show cause why he should not be sanctioned.

It is unclear whether [*4] *Rule 11(c)(5)(B)* limits a court's authority to impose monetary sanctions sua sponte for conduct that violates *Rule 11* in circumstances like those at issue here. There was no dismissal or settlement before the order to show cause was issued. The same day that the misconduct was brought to the Court's attention, the defendant notified the Court only that it had reached a settlement in principle. The order to show cause giving Mr. Liebowitz notice of the sanctions was issued promptly -- just two days later. The case was not dismissed pursuant to the settlement until nearly four weeks later. But it is unnecessary to resolve this issue. Any limitation imposed by *(c)(5)(B)* does not restrict a court's authority to impose non-monetary sanctions. The February 28 Opinion is therefore vacated to the extent it based the $10,000 sanction on *Rule 11*. Instead, pursuant to *Rule 11* and the Court's inherent powers, Mr. Liebowitz will be required to attend a CLE ethics program.

Mr. Liebowitz also argues that *Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178, 197 L. Ed. 2d 585 (2017)*, requires that any monetary sanctions imposed pursuant to a court's inherent power be compensatory rather than punitive. Therefore, he argues, the sanctions had to paid to the defendant based on the costs incurred by the defendant as [*5] a result of the misconduct by plaintiff's counsel, and could not be paid to the Clerk of Court. He is wrong.

In *Goodyear*, the Supreme Court held that sanctions in the form of attorneys' fees granted under a court's inherent power must be limited to the fees incurred as a result of the offending behavior. *Id. at 1186*. The defendant in *Goodyear* had withheld test results requested by the plaintiff in discovery, and was sanctioned by the court for litigation misconduct. *Id. at 1184*. Because the chosen sanction was the reimbursement of legal fees and costs incurred by the plaintiff, the plaintiff was allowed to recover "the portion of his fees that he would not have paid but for the misconduct." *Id. at 1187* (citation omitted).

---

[3] The defendant's counsel made a limited appearance in order to file the January 24 letter.

[4] Mr. Liebowitz has attached two emails sent after 6:00 pm to his motion for reconsideration. One reflects that defense counsel had reached his client, who agreed to pay an amount in settlement in two installments. As reflected in his own email, Mr. Liebowitz accepted the offer within ten minutes.

[5] Mr. Liebowitz filed the letter to the Court five minutes after he accepted the defendant's settlement offer.

Exhibit B

Steeger v. JMS Cleaning Servs., LLC

But, as the Court acknowledges, attorneys' fees are but "one permissible sanction" available when a court exercises its inherent powers "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id. at 1186* (citation omitted). The nature of the $10,000 sanction imposed here is not an award of attorneys' fees to compensate the defendant. Instead, as the February 28 Opinion makes clear, the sanction is to be paid to the Clerk of Court. The sanction was imposed under the Court's **[*6]** "inherent power to manage its own affairs," and specifically to "sanction misconduct by an attorney that involves that attorney's violation of a court order or other misconduct that is not undertaken for the client's benefit." *United States v. Seltzer, 227 F.3d 36, 41-42 (2d Cir. 2000)* (citation omitted). Such sanctions may be appropriate when a lawyer, through negligence or recklessness, fails "to perform his or her responsibility as an officer of the court." *Id. at 41.*

It is troubling that the motion for reconsideration continues the pattern of omissions and misrepresentations that has plagued Mr. Liebowitz's earlier submissions in this action. In setting forth the background to his motion for reconsideration, he repeats misleading or inaccurate statements that he made in earlier submissions. For example, he indicates that defendant's first counsel never responded to Mr. Liebowitz's request on November 7 to waive service, but fails to mention that he was contacted the very next day, on November 8, by new counsel for the defendant (who had the defendant with her during the telephone call) and that he never asked that new counsel whether the defendant would waive service. As another example, Mr. Liebowitz indicates that he did not hear anything from **[*7]** that new defense counsel in the two months that followed, without revealing that it was Mr. Liebowitz himself who owed defense counsel a return call to indicate whether the plaintiff would accept the settlement offer made by the defendant in the November 8 call. Each of these errors was previously pointed out by the defendant's attorney and Mr. Liebowitz has never disputed the accuracy of those representations by defense counsel.

It is also noteworthy that the motion for reconsideration does not engage with the facts that undergird the February 28 imposition of sanctions. For instance, Mr. Liebowitz does not dispute that in at least three separate cases in this district he failed to serve the notices of initial conference, thereby failing to comply with three separate court orders. Nor does he express any regret or acknowledgement that he has failed to

adhere to the standards expected of officers of this court.

Taking this motion for reconsideration as an opportunity to craft sanctions that will more directly address the deficiencies in performance described above and deter their repetition, the sanctions are modified as follows. The monetary sanctions imposed on February 28 are reduced **[*8]** to $2,000 and are imposed solely under the Court's inherent powers. The Court also imposes an educational sanction under both its inherent powers and *Rule 11, Fed. R. Civ. P.* Mr. Liebowitz must complete by July 31, 2018 four CLE credit hours in ethics and professionalism in addition to the amount required biennially by the New York State bar authorities.

Dated: New York, New York

March 14, 2018

/s/ Denise Cote

DENISE COTE

United States District Judge

_____

End of Document

Exhibit B

Ⓐ Neutral
As of: January 8, 2020 2:05 PM Z

## *Reynolds v. Hearst Communs., Inc.*

United States District Court for the Southern District of New York

March 5, 2018, Decided; March 5, 2018, Filed

17cv6720(DLC)

Reporter
2018 U.S. Dist. LEXIS 35453 *; 126 U.S.P.Q.2D (BNA) 1051 **; 46 Media L. Rep. 1409; 2018 WL 1229840

RAY REYNOLDS, Plaintiff, -v- HEARST
COMMUNICATIONS, INC., Defendant.

**Subsequent History:** Reconsideration denied by,
Request denied by *Reynolds v. Hearst Communs., Inc.,
2018 U.S. Dist. LEXIS 53324 (S.D.N.Y., Mar. 29, 2018)*

## Core Terms

Campaign, photograph, license, costs, licensee,
attorney's fees, court order, infringement, lawsuit

**Counsel:** **[*1]** For the plaintiff: Richard Liebowitz,
Liebowitz Law Firm, PLLC, Valleystream, NY.

For the defendant: Jonathan R. Donnellan, Ravi V.
Sitwala, Jennifer D. Bishop, Hearst Corporation, New
York, NY.

**Judges:** DENISE COTE, United States District Judge.

**Opinion by:** DENISE COTE

## Opinion

**[**1051]** OPINION AND ORDER

DENISE COTE, District Judge:

On November 24, 2015, Melania Trump spoke at a rally
in support of her husband, then-candidate, Donald J.
Trump. Plaintiff Ray Reynolds, a photojournalist,
captured a photograph of Mrs. Trump as she was on
stage. Mr. Reynolds then provided the photograph to
the Trump Campaign (the "Campaign"). The Campaign,
in turn, provided **[**1052]** the photograph to the
defendant, requesting that it be included in a July 2016
article published on Elle magazine's online site about
Mrs. Trump's personal fashion style. Over a year later,
on September 4, 2017, plaintiff commenced this lawsuit
against Hearst Communications, Inc. ("Hearst"), which
owns and operates Elle. Hearst has moved for
imposition of a bond before the plaintiff may proceed
further with this lawsuit. For the following reasons, that
application is granted.

BACKGROUND

The complaint in this action alleged that the defendant
published plaintiff's photograph without **[*2]** a license or
plaintiff's permission. It did not reveal that the plaintiff
had in fact provided the photograph to the Campaign.

At the initial conference held on December 8, when
asked how the defendant could have gotten the
photograph, Mr. Liebowitz did not explain that the
plaintiff had actually given the photograph to the
Campaign.[1] Instead, he speculated that Hearst may

---

[1] Mr. Liebowitz failed to appear at the pretrial conference
scheduled for December 1, despite being required as principal
trial counsel to appear at the conference. Instead, without

Exhibit B

Reynolds v. Hearst Communs., Inc.

have taken the photograph from an article that the plaintiff had licensed to publish the photograph.[2]

Defense counsel then explained that the Campaign had given the photograph to Elle.com. Only at that point did Mr. Liebowitz acknowledge that the plaintiff had in fact given the photograph to the Campaign. He asserted, however, that the plaintiff had not given the Campaign permission to share the photograph with others or media outlets. Mr. Liebowitz also admitted that he had not reached out to the defendant before commencing this lawsuit, and had not discussed the substance of the case with defense counsel prior to the conference.

After the initial pretrial conference, defendant filed a motion on December 15, 2017 to require the plaintiff to post security for costs, including attorney's fees, as a condition of proceeding [*3] with this action. The motion became fully submitted on January 26, 2018.

From the submissions made in connection with the motion, it appears that there will be a dispute between the plaintiff and the Campaign over the terms under which the plaintiff provided the photograph to the Campaign. The plaintiff explains that he was photographing Donald Trump's campaign for office in late 2015, and on November 24, photographed Melania Trump on stage at the Myrtle Beach Convention Center in South Carolina. He then provided the photograph, along with others he had taken, to the Campaign. He does not identify the person in the Campaign to whom he provided the photographs or recite their conversation. Instead, he asserts that it was his "intention" in sharing the images of the Trump Campaign events "for the Trump Campaign to use them in connection with their campaign-related social media sites, print brochures, or ads sponsored by the Trump Campaign." Then, on January 21, 2016, he deposited this photograph along with others described as "Donald Trump Campaign photos" from November 15 to January 16 with the copyright office for registration. On the plaintiff's website, he describes himself as the [*4] Photographer for the Donald J. Trump for President campaign.

On May 16, 2017, the plaintiff provided the photograph to the Liebowitz law firm, and explained that he had

seeking prior permission to do so, Mr. Liebowitz sent an associate.

[2] Mr. Liebowitz did not identify any article licensed by the plaintiff to use the photograph. Nor has he done so in opposition to this motion.

given it to "President Trump to use for campaign use only." He does not identify any occasion on which he has licensed the photograph for publication.

In support of this motion for a bond, the defendant explains the circumstances under which it received the photograph from the Campaign. The photograph was published on the Hearst website Elle.com as part of a story about Melania Trump. Through the Campaign's representatives at Hiltzik Strategies, Mrs. Trump provided exclusive quotes for the article to Elle.com and Hiltzik Strategies provided a digital file of the photograph. Hiltzik Srategies strongly [**1053] urged that the article use Mrs. Trump's chosen photographs, indicating that Elle.com would "get more information and exclusive content" if it agreed to use the pre-selected photographs. Hiltzik Strategies noted that Mrs. Trump felt that her selection of photographs represented "her and the clothing the best way."

DISCUSSION

*Local Civil Rule 54.2* provides:

> The Court, on motion or on its own initiative, may order any party to file an original bond [*5] for costs or additional security for costs in such an amount and so conditioned as it may designate. For failure to comply with the order the Court may make such orders in regard to noncompliance as are just, and among others the following: an order striking out pleadings or staying further proceedings until the bond is filed or dismissing the action or rendering a judgment by default against the non-complying party.

*S.D.N.Y. Local Civ. R. 54.2.* A bond for costs in a copyright action may include defendant's attorney's fees, as the Copyright Act permits a prevailing defendant to recover its reasonable attorney's fees. *17 U.S.C. § 505.*

A court considers the following factors in determining whether to require security for costs:

> the financial condition and ability to pay of the party at issue; whether that party is a non-resident or foreign corporation; the merits of the underlying claims; the extent and scope of discovery; the legal costs expected to be incurred; and compliance with past court orders.

*Cruz v. American Broadcasting Companies, Inc., Dkt.*

Exhibit B

Reynolds v. Hearst Communs., Inc.

No. 17cv8794, 2017 U.S. Dist. LEXIS 196317, 2017 WL 5665657, at *1 (S.D.N.Y. Nov. 17, 2017) (citing Selletti v. Carey, 173 F.R.D. 96, 100 (S.D.N.Y. 1997) (Chin, J.), aff'd, 173 F.3d 104 (2d Cir. 1999)) (emphasis added). "[S]ecurity of attorney's fees may be included in a bond of costs" under Rule 54.2. Klipsch Grp., Inc. v. ePRO E-Commerce Ltd., 880 F.3d 620, 635 (2d Cir. 2018) (citing [*6] Johnson v. Kassovitz, 97cv5789 (DLC), 1998 U.S. Dist. LEXIS 15059, 1998 WL 655534, at *1 (S.D.N.Y. Sept. 24, 1998)).

A district court may not dismiss a case for failure to comply with a bond requirement, however, without giving adequate consideration to an asserted inability to pay. Selletti v. Carey, 173 F.3d 104, 111 n.9 (2d Cir. 1991). "[T]he imposition of a security requirement may not be used as a means to dismiss suits of questionable merit filed by plaintiffs with few resources." Id. at 112. See also Atlanta Shipping Corp. v. Chemical Bank, 818 F.2d 240, 251-52 (2d Cir. 1987) (in affirming a dismissal for failure to post bond, emphasized the absence of a showing of inability to pay). Accordingly, the established inability to pay a bond weighs "heavily" against dismissal of a case for failure to pay. Selletti, 173 F.3d at 112. When the amount of a bond exceeds a party's ability to pay, a court may accept "partial or periodic payment" or rescind the bond requirement. Id. at 111 n.9.

It is a defense to copyright infringement that the alleged infringer possessed a license to use the copyrighted work. See Graham v. James, 144 F.3d 229, 236 (2d Cir. 1998). "A copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement." 16 Casa Duse, LLC v. Merkin, 791 F.3d 247, 259 n.5 (2d Cir. 2015) (citation omitted). "A valid license . . . immunizes the licensee from a charge of copyright infringement, provided that the licensee uses the copyright as agreed with the licensor." Davis v. Blige, 505 F.3d 90, 100 (2d Cir. 2007).

"There [*7] are two general categories of licenses: non-exclusive licenses, which permit licensees to use the copyrighted material and may be granted to multiple licensees; and exclusive licenses, which grant to the licensee the exclusive right -- superior even to the copyright owners' rights -- to use the copyright material in a manner as specified by the license agreement." Id. at 99-100. All grants of exclusive rights in a copyright must be made in writing. 17 U.S.C. § 204(a). "Under federal law, nonexclusive [**1054] licenses may be granted orally, or may even be implied from conduct."

Graham, 144 F.3d at 235 (citation omitted). See also 3 Nimmer on Copyright § 10.03. A non-exclusive licensee has no right to sell or to sublicense without express authorization, but an exclusive licensee may do so. See 3 Nimmer on Copyright § 10.02. Finally, "[t]he burden of proving that a license exists falls on the party invoking the defense." Graham, 144 F.3d at 236. On the other hand, the burden of proving the scope of a license falls on the copyright holder. Id.

Based on the representations by the parties, it would appear that the plaintiff gave digital files of photographs to the Campaign with no explicit agreement restricting their use, and that the Campaign provided the photographs which Mrs. Trump particularly liked, to Elle.com for a story [*8] on which the Campaign was cooperating. Whether the plaintiff retained any rights in this photograph will require discovery of the plaintiff and the Campaign. If the Campaign violated the plaintiff's rights when it asked Elle.com to publish the photograph in its story about Mrs. Trump, then it may be required to indemnify the defendant for any damages which the plaintiff succeeds in establishing that the defendant owes the plaintiff.

Although he was not forthcoming in either the complaint or when first addressing the Court at the initial pretrial conference, Mr. Liebowitz understood before filing this lawsuit that the plaintiff gave the photograph to the Campaign for its use and that the photograph had been used in a story with which the Campaign was obviously cooperating. Among other things, Mrs. Trump is quoted in the article. There is no indication in the record that Mr. Liebowitz has ever learned of any explicit or even implied agreement between the plaintiff and the Campaign that restricted the Campaign's use of the photograph in any way. His client only claims that he did not intend to allow the Campaign to share the photograph, but has provided no evidence of an agreement to that [*9] effect between him and the Campaign. If Mr. Liebowitz had spoken with defense counsel before filing this action, he would have had occasion to consider all of the facts recited above and to consider whether it was appropriate to sue Hearst at all, or whether he should sue not only Hearst but also the Campaign.

Mr. Liebowitz has filed over 500 cases in this district in the past twenty-four months. He has been labelled a copyright "troll." McDermott v. Monday Monday, LLC, 17cv9230 (DLC), 2018 U.S. Dist. LEXIS 28664, 2018 WL 1033240, at *3 n.4 (S.D.N.Y. Feb. 22, 2018). Mr. Liebowitz has been sanctioned by this Court for failure

Exhibit B

Reynolds v. Hearst Communs., Inc.

to comply with court orders and for filing misleading documents with the Court. See *Steeger v. JMS Cleaning Services, LLC, 17cv8013 (DLC), ECF No. 22, 2018 U.S. Dist. LEXIS 32730* (imposing sanctions on Mr. Liebowitz and listing cases where Mr. Liebowitz has failed to comply with court orders).[3] A number of Mr. Liebowoitz's cases have been dismissed from the bench as frivolous. See *Cruz v. Am. Broad. Cos., 17cv8794 (LAK), 2017 U.S. Dist. LEXIS 196317, 2017 WL 5665657, at *2 n.11 (S.D.N.Y. Nov. 17, 2017)* (Judge Kaplan noted that he "awarded over $121,000 in attorney's fees against a client of Mr. Liebowitz in three other, related copyright infringement cases that were dismissed from the bench." (citing *Kanongataa v. Am. Broad. Cos., 16cv7392 (LAK), 2017 U.S. Dist. LEXIS 169534, 2017 WL 4776981, at *3 (S.D.N.Y. Oct. 4, 2017)*). Multiple courts, on their [*10] own initiative, have ordered Mr. Liebowitz to show cause why he should not be required to post security for costs as a condition of proceeding further with an action. See, e.g., Pereira v. Kendall Jenner, Inc., 17cv6945 (RA) (Mr. Liebowitz voluntarily dismissed the case before responding to the Judge Abrams' Show Cause Order.); *Cruz v. Am. Broad. Cos., 17cv8794 (LAK), 2017 U.S. Dist. LEXIS 196317, 2017 WL 5665657, (S.D.N.Y. Nov. 17, 2017)* (Mr. Liebowitz informed the court that the parties [**1055] had settled the case before responding to Judge Kaplan's Show Cause Order.). See also *Tabak v. Idle Media, Inc., 17cv8285 (AT), ECF No. 5, 2017 U.S. Dist. LEXIS 219504* (Judge Torres ordered Mr. Liebowitz to show cause why the action should not be transferred. Mr. Liebowitz voluntarily dismissed the case before responding to the Order to Show Cause.); *Reynolds v. Intermarkets, Inc., 17cv8795 (AT), ECF No. 4, 2017 U.S. Dist. LEXIS 219505* (same).

Based on this record, the imposition of a bond is entirely appropriate. The defendant seeks a bond of at least $105,000. This is in large part based on the attorney' fees that Hearst would be entitled to if it prevailed in this action. The plaintiff asserts that he lives paycheck to paycheck and cannot pay a bond.

A Court has discretion in setting a bond amount under *Rule 54.2*. The text of the rule states [*11] that "[t]he court, on motion or on its own initiative, may order any party to file an original bond for costs or additional security for costs <u>in such an amount ... as it may</u>

designate." *S.D.N.Y. Local Civ. R. 54.2* (emphasis added). Given the plaintiff's impecuniosity, the immediate imposition of bond in an amount limited to $10,000 is appropriate. The defendant will be given an opportunity to take discovery of the plaintiff's financial condition and the parties will be heard as to whether any additional bond requirement should be imposed in this case.

The plaintiff argues that his claims are not frivolous and so a bond is inappropriate in this case. Frivolousness is one ground for imposition of a bond; a bond may be justified based on a variety of other factors, <u>see supra</u>. If the Campaign violated the plaintiff's rights in providing the photograph to the defendant, the plaintiff's case may have merit. But, to this point, it has been irresponsibly litigated. For example, in opposition to this motion, Mr. Liebowitz argues that his client's sworn testimony definitively precludes the possibility that he granted the Campaign the right to distribute his photograph. But Mr. Reynold's testimony does no such [*12] thing: he merely asserts that he did not have the "intention" of allowing the Campaign to distribute his work for publication. Plaintiff describes no communication between him and the Campaign that could justify the claim made in the opposition brief.

Mr. Liebowitz also argues that plaintiff has not willfully disobeyed court orders, obstructed discovery, or increased the cost of litigation. This is demonstrably false. Mr. Liebowitz failed to comply with orders in this litigation, as he has in other lawsuits. Further, the failure to include the Campaign as part of this suit, or to even mention the plaintiff's relationship with the Campaign in the complaint, will inevitably increase the cost of litigation.

<u>CONCLUSION</u>

The defendant's December 15, 2017 motion for a bond is granted. The plaintiff shall file a bond with the Clerk of Court in the amount of ten thousand dollars ($10,000) by Friday, March 16.

Dated: New York, New York

March 5, 2018

/s/ Denise Cote

DENISE COTE

United States District Judge

---

[3] In this case as with others, there is no record that Mr. Liebowitz complied with the court order that required him to serve a notice of the initial pretrial conference on the defendant and to file proof of such service.

Exhibit B

Reynolds v. Hearst Communs., Inc.

End of Document

Katie Birchenough

Exhibit B

 Positive

As of: May 17, 2019 5:01 PM Z

## *Leibowitz v. Galore Media, Inc.*

United States District Court for the Southern District of New York

September 20, 2018, Decided; September 20, 2018, Filed

18 Civ. 2626 (RA)(HBP)

**Reporter**

2018 U.S. Dist. LEXIS 161110 *; 2018 WL 4519208

KRISTY LEIBOWITZ, Plaintiff, -against- GALORE MEDIA, INC., Defendant

**Subsequent History:** Dismissed without prejudice by *Leibowitz v. Galore Media, Inc., 2019 U.S. Dist. LEXIS 70297 (S.D.N.Y., Apr. 24, 2019)*

## Core Terms

costs, attorney's fees, reconsideration motion, reconsideration, Photographs, prevailing, argues, bond amount, court order, settlement, recovers, cases, depositions, overlooked, deadline, annexed, defines, factors, matters, incur, non-compliance, Declaration, collecting, relitigate, decisions, directing, featuring, Partying, dialogue, requests

**Counsel:** [*1] For Kristy Leibowitz, Plaintiff: Yekaterina Tsyvkin, Liebowitz Law Firm PLLC, Valley Stream, NY; Richard Liebowitz, Liebowitz Law Firm, PLLC, Valleystream, NY.

For Galore Media, Inc., Defendant: Andrew Isaac Gerber, LEAD ATTORNEY, Kushnirsky Gerber PLLC, New York, NY.

**Judges:** HENRY PITMAN, United States Magistrate Judge.

**Opinion by:** HENRY PITMAN

## Opinion

### OPINION AND ORDER

PITMAN, United States Magistrate Judge

I. Introduction

By notice of motion dated July 25, 2018 (Docket Item

("D.I.") 21), plaintiff seeks reconsideration of my Order, filed July 11, 2018, requiring plaintiff to post a $10,000.00 bond as security for costs pursuant to *Rule 54.2 of the Local Civil Rules* of the United States District Courts for the Southern and Eastern Districts of New York ("*Local Civil Rule 54.2*") (Order, dated July 11, 2018 (D.I. 18) ("July 11, 2018 Order"); Notice of Motion for Reconsideration or Reargument, dated July 25, 2018 (D.I. 21) ("Pl.'s Motion")). In the alternative, plaintiff requests that the bond amount be reduced and/or that the bond be made due after the September 18, 2018 settlement conference (Pl.'s Motion). For the following reasons, plaintiff's request is denied in all respects.

II. Background

The facts underlying this action are summarized in the July 11, 2018 Order. The [*2] reader's familiarity with that decision is assumed; I recite only those facts relevant to the motion before me.

Plaintiff is a photojournalist and sole proprietor of a New York domestic limited liability company (Complaint, dated Mar. 26, 2018 (D.I. 1) ("Compl.") ¶ 11-18). On December 3, 2014, the New York Post published an article profiling performances at Art Basel, an annual music and arts festival held in Miami, featuring two photographs of the popular singer, songwriter and entertainer Miley Cyrus (the "Photographs") taken by plaintiff ("Stars Support the Art of Partying at Art Basel," The New York Post, dated Dec. 3, 2014, annexed as Ex. B to Compl.). On a subsequent, unspecified date, defendant published an article about Art Basel on its website also featuring the Photographs (Compl. ¶¶ 17-24; "Art Basel Pix to Give You Major Forno," Galore Media Inc., annexed as Ex. D to Compl.). Plaintiff discovered this unauthorized use of her Photographs in 2016 (Compl. ¶ 24).

Plaintiff commenced this action pursuant to the *Copyright Act, 17 U.S.C §§ 101 et seq.* (the "Copyright Act"), alleging that she owns the copyright to the Photographs and that defendant did not obtain a license

Exhibit B

or consent to publish the Photographs [*3] (Compl. ¶¶ 17-24). Plaintiff seeks actual damages and disgorgement of defendant's profits, gains or advantages of any kind attributable to defendant's use of the Photographs.

On approximately June 2, 2018, defendant tendered an Offer of Judgment pursuant to *Rule 68 of the Federal Rules of Civil Procedure* ("*Rule 68* Offer"), the amount of which the record does not disclose. On June 6, 2018, the Honorable Ronnie Abrams, United States District Judge, conducted an initial pretrial conference at which defendant requested that plaintiff be required to post a bond in the amount of $10,000.00 as security for costs pursuant to *Local Civil Rule 54.2*. Judge Abrams ordered plaintiff to show cause why a bond should not be required as a condition for proceeding with this action, directed briefing on the issue and referred this matter to me for, among other things, resolution of the Order to Show Cause.

In my July 11, 2018 Order, I explained that six factors (the "Cruz Factors") are relevant in assessing a motion to require a bond pursuant to *Local Civil Rule 54.2*:

1. "[T]he financial condition and ability to pay of the party at issue";
2. "[W]hether that party is a non-resident or foreign corporation";
3. "[T]he merits of the underlying claims";
4. "The extent and scope of discovery";
5. "[T]he legal [*4] costs expected to be incurred" and
6. "[C]ompliance with past court orders."

*Cruz v. American Broad. Cos., Inc., 17 Civ. 8794 (LAK), 2017 U.S. Dist. LEXIS 196317, 2017 WL 5665657 at *1 (S.D.N.Y. Nov. 17, 2017)* (Kaplan, D.J.), quoting *Selletti v. Carey, 173 F.R.D. 96, 100 (S.D.N.Y. 1997)* (Chin, then D.J., now Cir. J.), aff'd, *173 F.3d 104 (2d Cir. 1999)*. I then concluded that the fifth and sixth Cruz factors warranted the imposition of a bond for costs, and that a bond in the amount of $10,000.00 was reasonable in light of the bond amounts set in similar actions and the fact that plaintiff did not oppose the amount of the bond sought by defendant (July 11, 2018 Order at 4-9, citing *Reynolds v. Hearst Commc'ns, Inc., 17 Civ. 6720 (DLC), 2018 U.S. Dist. LEXIS 35453, 2018 WL 1229840 at *5 (S.D.N.Y. Mar. 5, 2018)* (Cote, D.J.). Specifically, I found that imposition of the bond was justified by (1) the prospect that defendant could be entitled to costs under the Copyright Act and (2) plaintiff's counsel's well-documented history of evading

court orders in similar litigation in this District (July 11, 2018 Order at 4-9).

Plaintiff has moved, pursuant to *Local Civil Rule 6.3* and *Fed.R.Civ.P. 60(b)*, for reconsideration of my July 11 Order. Plaintiff does not challenge my finding that the sixth Cruz factor listed above -- plaintiff's history of noncompliance with court orders -- warrants requiring a bond pursuant to *Local Rule 54.2*. Rather, plaintiff argues that I erred in [*5] relying on the fifth Cruz factor -- the expectation that plaintiff may be required to pay defendant's costs -- in directing that a bond be imposed (Plaintiff's Memorandum of Law, dated July 25, 2018 (D.I. 22) ("Pl.'s Mem.") at 5-8). Specifically, plaintiff argues that because the "facts here point to a sophisticated media company's feckless disregard of the copyright holder's rights," defendant cannot qualify as a "prevailing party" within the meaning of the fee-shifting provision of the Copyright Act ("*Section 505*"), and, thus, has no prospect of recovering costs under *Section 505*, even if the judgment obtained by plaintiff is less than the amount of the *Rule 68* Offer (Pl.'s Mem. 2; see Pl.'s Mem. at 5-8). Accordingly, plaintiff argues that the fifth Cruz factor weighs against requiring a bond.

In the alternative, plaintiff argues that the amount of the bond should be reduced to $2,000.00 rather than $10,000.00, and that the deadline by which plaintiff is required to post the bond be delayed until after a settlement conference that was held on September 18, 2018 (Pl.'s Motion).

III. Analysis

A. Legal Standard

Motions for reconsideration are appropriate only under limited circumstances. As explained by the late Honorable [*6] Peter K. Leisure, United States District Judge, in *Davidson v. Scully, 172 F. Supp. 2d 458, 461-62 (S.D.N.Y. 2001)*:

A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court. See *Shrader v. CSX Transp., 70 F.3d 255, 257 (2d Cir. 1995)*. A party seeking reconsideration "is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings." *Polsby v. St. Martin's Press, Inc., No. 97 Civ. 690, 2000 U.S. Dist. LEXIS 596,*

2018 U.S. Dist. LEXIS 161110, *6

*2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)* (Mukasey, J.). Thus, a motion for reconsideration "is not a substitute for appeal and 'may be granted only where the Court has overlooked matters or controlling decisions which might have materially influenced the earlier decision.'" *Morales v. Quintiles Transnational Corp.*, 25 F. Supp. 2d 369, 372 (S.D.N.Y. 1998) (citation omitted).

See also *Torres v. Carry, 672 F. Supp. 2d 346, 348 (S.D.N.Y. 2009)* (Marrero, D.J.); *Mahmud v. Kaufmann, 496 F. Supp. 2d 266, 269-70 (S.D.N.Y. 2007)* (Conner, D.J.).

"The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusions reached by the court." *Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)*; accord *In re 650 Fifth Ave. & Related Props., 08 Civ. 10934 (KBF), 2014 U.S. Dist. LEXIS 104532, 2014 WL 3744404 at *1 (S.D.N.Y. July 28, 2014)* (Forrest, D.J.), [*7] aff'd sub nom., *Havlish v. Hegna, 673 F. App'x 34 (2d Cir. 2016)* (summary order); see also *Quinn v. Altria Grp., Inc., 07 Civ. 8783 (LTS)(RLE), 2008 U.S. Dist. LEXIS 62927, 2008 WL 3518462 at *1 (S.D.N.Y. 2008)* (Swain, D.J.) ("A movant for reconsideration bears the heavy burden of demonstrating that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error to prevent manifest injustice."), citing *Virgin Airways v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)*. "These limitations serve to ensure finality and to prevent losing parties from using motions for reconsideration as a vehicle by which they may then plug the gaps of a lost motion with additional matters." *In re City of New York, as Owner & Operator of M/V Andrew J. Barberi, CV 03 6049 (ERK)(VVP), 2008 U.S. Dist. LEXIS 31489, 2008 WL 1734236 at *1 (E.D.N.Y. Apr. 10, 2008)*, citing *Zoll v. Jordache Enters. Inc., 01 Civ. 1339 (CSH), 2003 U.S. Dist. LEXIS 6991, 2003 WL 1964054 at *2 (S.D.N.Y. Apr. 24, 2003)* (Haight, D.J.); accord *Cohn v. Metro. Life Ins. Co., 07 Civ. 928 (HE), 2007 U.S. Dist. LEXIS 68409, 2007 WL 2710193 at *1 (S.D.N.Y. Sept. 7, 2007)* (Baer, D.J.).

B. Application of the Foregoing Principles

Plaintiff argues that I overlooked the "prevailing precedent in this Circuit and around the nation[,]" which instructs that where, as here, defendant in a copyright action has made an offer pursuant to *Fed.R.Civ.P. 68*, defendant cannot recover costs, including reasonable attorney's fees, unless defendant prevails on the merits; the *Rule 68* Offer, plaintiff argues, does not by [*8] itself entitle defendant to costs under *Section 505* (Pl.'s Mem. at 5-8). Plaintiff asserts that, because her claims are meritorious, there is no prospect that the Court would award defendant's costs pursuant to *Section 505*, even if the amount of the judgment plaintiff obtains is less than the *Rule 68* Offer.

In *Baker v. Urban Outfitters, Inc., 431 F. Supp. 2d 351, 361 (S.D.N.Y. 2006)*, the Honorable Loretta A. Preska, United States District Judge, explained that:

As used in *Rule 68*, the term "costs" refers to all costs awardable under the statute or other authority that is the basis for the underlying claim. *Marek v. Chesny, 473 U.S. 1, 9, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985)*; *Wilson v. Nomura Sec. Int'l, Inc., 361 F.3d 86, 89 (2d Cir. 2004)*. Thus, where the underlying statute defines "costs" to include attorney's fees, such fees are "costs" for purposes of *Rule 68*. *Wilson, 361 F.3d at 89*. The Copyright Act defines "costs" to include attorney's fees. Specifically, in *Section 505*, the statute states as follows: "In any civil action under this title, the court in its discretion may allow the recovery of full costs . . . . Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." *17 U.S.C. § 505*.

Accordingly, Judge Preska held that:

"when the plaintiff [in a copyright action] recovers less than the defendant's formal offer of judgment[,] . . . *Rule 68* [of the Federal Rules of Civil Procedure,] requires an [*9] award to defendant of its fees incurred after that offer." *Nimmer on Copyright § 14.10[B]*, at 14-139, 14-140 (Matthew Bender & Co., Inc. 2005 (citing *Jordan v. Time, Inc., 111 F.3d 102, 104-05 (11th Cir. 1997)*); see also *Lucas v. Wild Dunes Real Estate, Inc., 197 F.R.D. 172, 175-76 (D.S.C. 2000)* (awarding attorneys' fees to defendant, in view of Offer of Judgment that exceeded final judgment and in view of the fact that the Copyright Act, *17 U.S.C. § 505*, defines "costs" as including attorney's fees).

Judge Preska's decision was affirmed by the Court of Appeals for the Second Circuit. *Baker v. Urban Outfitters, Inc., 249 F. App'x 845 (2d Cir. 2007)*.

Exhibit B

2018 U.S. Dist. LEXIS 161110, *9

In her Memorandum of Law in Opposition to the Order to Show Cause, plaintiff asserted the same argument she now asserts on reconsideration:

> It is important to note that the cost-shifting mechanism of _Rule 68_ is unlikely to include attorneys' fees. "Cases involving other fee shifting statutes have similarly held that attorneys' fees may be recovered pursuant to _Rule 68_ only if such fees are 'properly awardable' under the relevant statute. If prevailing party status is a prerequisite to such an award, a defendant who has not 'prevailed' within the meaning of the statute, may not recover attorneys' fees as part of a _Rule 68_ award." _Boisson v. Banian Ltd., 221 F.R.D. 378, 381 (E.D.N.Y. 2004)_ (collecting cases).
>
> * * *
>
> Because the Copyright Act includes an award of attorney's fees as part of the costs, but only to a prevailing party, a non-prevailing defendant cannot recover [*10] attorney's fees as part of a _Rule 68_ award. _Boisson, 221 F.R.D. at 381_ (quoting _Harbor Motor Co. V. Arnell Chevrolet-Geo, Inc., 265 F.3d 638, 647 (7th Cir. 2001)_); accord _Bruce v. Weekly World News, Inc., 203 F.R.D. 51, 54-55 (D. Mass. 2001)_.

(Plaintiff's Memorandum of Law in Opposition of the Proposed Bond Requirement, dated June 13, 2018 (D.I. 16) at 4-5).

In my July 11, 2018 Order, I considered and rejected plaintiff's argument. I explained that _Baker_ teaches that a defendant in a Copyright Action may recover post-offer costs if the plaintiff recovers less than the amount of the _Rule 68_ Offer (July 11, 2018 Order at 5).

As noted above, "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." _Shrader v. CSX Transp., Inc., supra, 70 F.3d at 257._ Because plaintiff now raises the same argument "already briefed, considered and decided," she may not obtain relief pursuant to her motion for reconsideration. _Edwards v. Rochester Inst. of Tech., 10-CV-6553, 2018 U.S. Dist. LEXIS 101619, 2018 WL 3017094 at *3 (W.D.N.Y. June 18, 2018)_, citing _Shrader v. CSX Transp., Inc., supra, 70 F.3d at 257._

Additionally, plaintiff does not challenge my conclusion that plaintiff's counsel's history of non-compliance with court orders in similar actions justifies the imposition of a bond. Judges in this District have held, relying solely

on plaintiff's counsel's record "in some of the over 500 cases he has filed in this district in the past twenty-four months" that "imposition of a bond is entirely appropriate." [*11] See _Reynolds v. Hearst Commc'ns, Inc., supra, 2018 U.S. Dist. LEXIS 35453, 2018 WL 1229840 at *4_ (collecting cases). Thus, even if plaintiff were correct in arguing that the fifth Cruz factor does not warrant requiring a bond, plaintiff does not argue that I erred in concluding that the sixth _Cruz_ warrants requiring a bond.

In the alternative, plaintiff argues that the amount of the bond should be reduced from $10,000.00 to $2,000.00 (Pl.'s Motion). As noted above, a party may not "treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings." _Polsby v. St. Martin's Press, Inc., 97 Civ. 690 (MEM), 2000 U.S. Dist. LEXIS 596, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)_ (Mukasey, J.). Plaintiff had the opportunity to address the bond amount in her opposition to the Order to Show Cause, but chose not to do so. Plaintiff may not now use a motion for reconsideration to negotiate a lower bond amount.

In addition, plaintiff's argument in support of a lower bond amount is based on faulty assumptions. In support of her request to reduce the amount of the bond, plaintiff's attorney affirms, based on his experience in comparable suits, that the anticipated remaining costs in this litigation will be limited to two expected depositions, [*12] which will cost no more than $854.00 each (Declaration of Richard P. Leibowitz, Esq., dated July 25, 2018 (D.I. 24) ("Leibowitz Decl.")). Attached to plaintiff's attorney's declaration is an invoice, dated June 18, 2018, from a document services provider for a certified transcript 226 pages in length, apparently relating to a deposition taken in New York, New York (Invoice from TSG Reporting, Inc., dated June 18, 2018, annexed as Ex. 1 to Leibowitz Decl.). As a matter of logic, defendant's counsel will incur additional costs other than the two expected depositions. A settlement conference was held in on September 18, 2018 for which defendant's counsel incurred costs for preparation and attendance, and, because the conference was not successful, defendant's counsel will, no doubt, incur additional costs going forward.

Plaintiff also requests that the deadline for posting be adjourned until after September 18, 2018, the date of the settlement conference (Pl.'s Motion). In my July 11, 2018 Order, I directed that plaintiff file a bond with the Clerk of Court within 21 days of the date of that Order

Exhibit B

2018 U.S. Dist. LEXIS 161110, *12

(July 11, 2018 Order at 10). Plaintiff presents no justification for amending the deadline **[*13]** set in my July 11, 2018 Order.[1]

IV. Conclusion

Because plaintiff has offered no valid reasons to revisit my July 11, 2018 Order directing that plaintiff file a bond in the amount of $10,000, plaintiff's motion for reconsideration is denied. The Clerk of the Court is respectfully requested to mark Docket Item 21 closed.

Dated: New York, New York

September 20, 2018

SO ORDERED

/s/ Henry Pitman

HENRY PITMAN

United States Magistrate Judge

---

End of Document

---

[1] Notably, plaintiff has yet to file a bond as required by my July 11, 2018 Order. Plaintiff appears to be operating under the misguided assumption that a mere motion to delay an action required by court Order, without more, operates to delay the action. Plaintiff's assumption is clearly wrong. _Willemijn Houdstermaatschapij BV v. Apollo Computer, Inc., 707 F. Supp. 1429, 1441 (D. Del. 1989)_ (an application for relief does not operate, by itself, to grant relief). Plaintiff's failure to post the bond in a timely manner will, no doubt, cause defendant to incur even greater costs than are unaccounted for in plaintiff's counsel's estimate.

Exhibit B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JACKSON LEE,

                    Plaintiff,

           -against-                                  **ORDER**
                                              18 CV 05820 (PKC) (CLP)
W ARCHITECTURE AND LANDSCAPE
ARCHITECTURE, LLC,

                    Defendant.
------------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

On October 17, 2018, Jackson Lee ("plaintiff") commenced this action against W

Architecture and Landscape Architecture, LLC ("defendant"), alleging copyright infringement

under Section 501 of the Copyright Act and removal or alteration of copyright management

information under Section 1202(b) of the Digital Millennium Copyright Act. Plaintiff alleges

that defendant featured an enlarged version of plaintiff's photograph of actress Katie Holmes and

her daughter Suri Cruise on an advertisement on the front of a building.

Prior to the initial conference with this Court on March 22, 2019, defendant tendered an

Offer of Judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure. Defendant did

not disclose the amount offered, but it claims that the amount was fifty times more than the

highest fee that plaintiff charges for a standard print of the photograph. Plaintiff did not respond

to the offer within the time frame permitted by the Rule, and thus appears to have rejected the

offer.

On April 18, 2019, defendant filed a motion for bond, requesting that plaintiff and/or

plaintiff's counsel post security for costs in order to proceed with this case. Pursuant to this

Court's Individual Motion Practices and Rules, a response to defendant's motion was due April

Exhibit B

25, 2019.  Plaintiff filed a response on May 2, 2019, arguing that defendant provided no evidence

to support the imposition of a bond.

For the reasons set forth below, the Court grants defendant's motion for a bond.

### DISCUSSION

1. Legal Standards

Local Rule 54.2 governs security for costs and provides:

> The Court, on motion or on its own initiative, may order any party to file an
> original bond for costs or additional security for costs in such an amount
> and so conditioned as it may designate.  For failure to comply with the order
> the Court may make such orders in regard to noncompliance as are just, and
> among others the following:   an order striking out pleadings or staying
> further proceedings until the bond is filed or dismissing the action or
> rendering a judgment by default against the non-complying party.

Local Civ. R. 54.2.

Under this Rule, the bond "may include attorneys' fees to which a party is potentially

entitled by statute." Selletti v. Carey, 173 F.R.D. 96, 100 (S.D.N.Y. 1997), aff'd, 173 F.3d 104

(2d Cir. 1999).  The statute at issue in this matter, Section 505 of the Copyright Act, provides

that a court in its discretion may "award a reasonable attorneys' fee to the prevailing party as part

of the costs." 17 U.S.C. § 505.  Accordingly, a bond imposed in this matter may include

attorneys' fees. See Selletti v. Carey, 173 F.R.D. at 100; see also Cruz v. Am. Broad. Cos., Inc.,

No. 17 CV 8794, 2017 WL 5665657, at *1 (S.D.N.Y. Nov. 17, 2017).

A motion to post a bond in the Eastern District of New York is left to the discretion of the

court. Teri v. Oxford Mgmt. Servs., No. 05 CV 2777, 2013 WL 132660, at *2 (E.D.N.Y. Jan.

10, 2013) (stating that "'[c]ourts have broad discretion in deciding whether a party should be

required to post . . . a bond'") (quoting Beautiful Jewellers Private Ltd. v. Tiffany & Co., No. 06

CV 3085, 2008 WL 2876508, at *2 (S.D.N.Y. July 21, 2008)).  Courts consider the following

Exhibit B

factors in determining whether a bond should be posted: "(1) the financial condition and ability to pay of the party who would post the bond; (2) whether that party is a resident or foreign corporation; (3) the merits of the underlying claims; (4) the extent and scope of discovery; (5) the legal costs expected to be incurred; and (6) compliance with past court orders." Id. (citations and internal quotation marks omitted).

2.  Analysis

Defendant argues that plaintiff should be required to post a bond for $10,000.  Thus, the Court considers the six factors set forth in Teri.

a.  Financial Condition and Ability to Pay

"A [party's] apparent 'lack of assets is itself sufficient to warrant attachment of costs under Rule 54.2.'" Beautiful Jewellers Private Ltd. v. Tiffany & Co., 2008 WL 2876508, at *2 (quoting Sea Trade Co. Ltd v. FleetBoston Fin. Corp., No. 03 CV 10254, 2008 WL 161239, at *2 (S.D.N.Y. Jan. 15, 2008)).  "However, 'if it is ever appropriate to rely solely on this single factor, it must only be in the most compelling circumstances, lest the courthouse doors be routinely closed on impecunious litigants.'" Khaldei v. Kaspiev, No. 10 CV 8328, 2014 WL 7373383, at *2 (S.D.N.Y. Dec. 30, 2014) (quoting Gary Friedrich Enters., LLC v. Marvel Enters., Inc., No. 08 CV 1533, 2010 WL 3452375, at *3 (S.D.N.Y. Sept. 1, 2010)).

Plaintiff contends that defendant has failed to provide any evidence that plaintiff lacks the financial capacity to satisfy any judgment for attorneys' fees.  (Opp.[1] at 3).  While there would be no reason for defendant to possess such financial information, plaintiff has not provided any information regarding his financial status.

---

[1] Citations to "Opp." refer to plaintiff's Memorandum of Law in Opposition to Defendant's Motion for a Bond as Security for Costs and Fees Under Local Rule 54.2, filed May 2, 2019, ECF No. 24.

Exhibit B

Defendant has raised a concern that if attorneys' fees are assessed against plaintiff, then plaintiff's counsel will voluntarily dismiss the case to avoid paying defendant any fees it may be owed. There is precedent that suggests that this concern, as it relates to plaintiff's counsel, may be warranted. Indeed, defendant cites the decision in <u>Reynolds v. Hearst Communications, Inc.</u>, where the court outlined a number of instances in different cases where plaintiff's counsel either voluntarily dismissed the action or evaded court orders:

> Mr. Liebowitz has been sanctioned by this Court for failure to comply with court orders and for filing misleading documents with the Court. <u>See</u> <u>Paul Steeger v. JMS Cleaning Services, LLC</u>, 17cv8013 (DLC), ECF No. 22 (imposing sanctions on Mr. Liebowitz and listing cases where Mr. Liebowitz has failed to comply with court orders). A number [of] Mr. Liebwoitz's cases have been dismissed from the bench as frivolous. <u>See</u> <u>Cruz v. Am. Broad. Cos.</u>, 17cv8794 (LAK), 2017 WL 5665657, at *2 n.11 (S.D.N.Y. Nov. 17, 2017) (Judge Kaplan noted that he "awarded over $121,000 in attorney's fees against a client of Mr. Liebowitz in three other, related copyright infringement cases that were dismissed from the bench." (citing <u>Kanongataa v. Am. Broad. Cos.</u>, 16cv7392 (LAK), 2017 WL 4776981, at *3 (S.D.N.Y. Oct. 4, 2017)). Multiple courts, on their own initiative, have ordered Mr. Liebowitz to show cause why he should not be required to post security for costs as a condition of proceeding further with an action. <u>See, e.g.</u>, <u>Pereira v. Kendall Jenner, Inc.</u>, 17cv6945 (RA) (Mr. Liebowitz voluntarily dismissed the case before responding to the Judge Abrams' Show Cause Order); <u>Cruz v. Am. Broad. Cos.</u>, 17cv8794 (LAK), 2017 WL 5665657, (S.D.N.Y. Nov. 17, 2017) (Mr. Liebowitz informed the court that the parties had settled the case before responding to Judge Kaplan's Show Cause Order). <u>See also</u> <u>Tabak v. Idle Media, Inc.</u>, 17cv8285 (AT), ECF No. 5 (Judge Torres ordered Mr. Liebowitz to show cause why the action should not be transferred. Mr. Liebowitz voluntarily dismissed the case before responding to the Order to Show Cause); <u>Reynolds v. Intermarkets, Inc.</u>, 17cv8795 (AT), ECF No. 4 (same).

No. 17 CV 6720, 2018 WL 1229840, at *4 (S.D.N.Y. Mar. 5, 2018), <u>reconsideration denied</u>, No. 17 CV 6720, 2018 WL 1602867 (S.D.N.Y. Mar. 29, 2018). At least three cases in this Circuit have referenced the <u>Reynolds</u> decision when discussing counsel's conduct. <u>See</u> <u>Pereira v. 3072541 Canada Inc.</u>, No. 17 CV 6945, 2018 WL 5999636, at *3 (S.D.N.Y. Nov. 15, 2018); <u>McDermott v. Monday Monday, LLC</u>, No. 17 CV 9230, 2018 WL 5312903, at *3 (S.D.N.Y.

4

Exhibit B

Oct. 26, 2018); Leibowitz v. Galore Media, Inc., No. 18 CV 2626, 2018 WL 4519208, at *2 (S.D.N.Y. Sept. 20, 2018).  Although counsel has filed over a thousand copyright infringement cases in this Circuit (Opp. at 14), this record of non-compliance is troubling.  Thus, the Court finds that this factor weighs in favor of requiring the posting of a bond.

      b.  Residency

Plaintiff contends that there is no need for a bond because:  (1) he is a citizen of the United States; (2) he resides in New York; and (3) he frequently files copyright infringement cases in New York.  (Opp. at 4).  Thus, apart from the concerns raised by other courts regarding the merits of these multiple infringement cases, this factor would normally suggest that a bond would be unnecessary.

      c.  The Merits of Plaintiff's Claim

With respect to the merits of the claim, the Court notes that "[w]hile each party asserts that they believe they will win on the merits, the case has not sufficiently developed to suggest that either is likely to prevail." K.M. v. Maclaren USA, Inc., No. 10 CV 7942, 2011 WL 1900137, at *5 (S.D.N.Y. Apr. 7, 2011), adopted by 2011 WL 1900141 (S.D.N.Y. May 18, 2011); see Khaldei v. Kaspiev, 2014 WL 7373383, at *1 (concluding that the merits of the claim factor weighed against granting the bond because "'[t]here are substantive issues in the underlying action that have not yet been resolved'") (quoting RLS Assocs., LLC v. United Bank of Kuwait PLC, No. 01 CV 1290, 2005 WL 578917, at *3 (S.D.N.Y. Mar. 11, 2005), adhered to on reconsideration, 464 F. Supp. 2d 206 (S.D.N.Y. 2006)).

Plaintiff claims that defendant committed copyright infringement through the unauthorized use of his photograph, in violation of 17 U.S.C. § 505, and further claims that defendant removed or altered copyright management information under Section 1202(b).  In its

Exhibit B

motion for bond, defendant raises a fair use or de minimis defense, claiming that "[o]nly a very small, cropped portion of the Photo was used towards the end of a multi-paged presentation, and the Photo was blurred to be out of focus so that the viewer is unable to make out either subject of the Photo." (Mot.[2] at 2). Defendant also argues that it found the photograph on a website that claimed the images contained therein were free, and thus defendant "never removed any copyright management information" from the photograph. (Id.)

At this stage, it is not the Court's role to evaluate the merits of plaintiff's claims. However, defendant sets forth a colorable argument that it will prevail on a de minimis or fair use defense. (Mot. at 2 (citing Rudkowski v. MIC Network, Inc., No. 17 CV 3647, 2018 WL 1801307, at *4 (S.D.N.Y. Mar. 23, 2018))). Moreover, although plaintiff claims that he is entitled to increased damages because the photograph was enlarged and affixed to the front of a building, he has presented no evidence that this particular defendant had any role in providing the photograph to the building. In addition, plaintiff has taken no steps to amend the Complaint to add the building's management or owner as a defendant.

If defendant were to succeed in getting the case dismissed, it may be entitled to attorneys' fees as the prevailing party, should the circumstances justify an exercise of the court's discretion. See Cruz v. Am. Broad. Cos., Inc., 2017 WL 5665657, at *2; Sadhu Singh Hamdard Tr. v. Ajit Newspaper Advert., Mktg. & Commc'ns, Inc., No. 04 CV 3503, 2008 WL 11415934, at *4 (E.D.N.Y. July 23, 2008) (noting an award of attorneys' fees in copyright cases is discretionary, and courts should consider: "frivolousness, motivation, objective unreasonableness (both in the

---

[2] Citations to "Mot." refer to defendant's motion for bond, dated April 18, 2019, ECF No. 20.

Exhibit B

factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence") (internal quotations omitted).

In light of the foregoing, the Court finds that this factor weighs slightly in favor of requiring a bond to be posted.

d.  Discovery and Legal Costs

Defendant argues that there is a "substantial risk" that plaintiff will have to pay defendant's attorneys' fees, either through defendant's dismissal of the action – as discussed above – or through the cost-shifting mechanism of Rule 68.  (Mot. at 1).  Whether defendant will be entitled to fees as the prevailing party under the Copyright Act or due to its Rule 68 Offer are two distinct questions that require separate consideration.  With respect to the latter argument, defendant contends that its Rule 68 Offer is more than what plaintiff will be able to recover at trial.  (Id. at 2).  Specifically, defendant claims that its offer was fifty times more than what plaintiff charges for a standard print of the photograph.  (Id. at 3).  Given that it appears that the highest fee that plaintiff has charged is $200, the Court assumes that the Rule 68 Offer was approximately $10,000.  Defendant thus argues that it would be entitled to recover the costs and fees incurred after it made the offer to plaintiff should plaintiff ultimately recover less than $10,000.  (Id.)

In response, plaintiff argues that defendant's fees will not be subject to the fee-shifting provision of Rule 68 if plaintiff prevails, given that defendant would not be the "prevailing party" within the meaning of 17 U.S.C. § 505.  (Opp. at 9-10).

Under Rule 68 of the Federal Rules of Civil Procedure, a party "may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued."  Fed. R. Civ. P. 68.  If the judgment ultimately obtained by the plaintiff "is not more favorable than the

Exhibit B

unaccepted offer, the offeree must pay the costs incurred after the offer was made." Id.  In a copyright action, "costs" includes attorneys' fees.  Baker v. Urban Outfitters, Inc., 431 F. Supp. 2d 351, 361 (S.D.N.Y. 2006), aff'd, 249 F. App'x 845 (2d Cir. 2007).  Therefore, "when the plaintiff [in a copyright action] recovers less than the defendant's formal offer of judgment[,] . . . Rule 68 [of the Federal Rules of Civil Procedure,] requires an award to defendant of its fees incurred after that offer." Id. (quoting Nimmer on Copyright § 14.10 [B], at 14-139, 14-140 (Matthew Bender & Co., Inc. 2005)).  In other words, even if plaintiff prevails at trial, he will still owe defendant for its costs and attorneys' fees from the date the Rule 68 Offer was made, if the amount that plaintiff recovers at trial is less than the amount of the Rule 68 Offer. Id.

Plaintiff argues that Baker is inapposite to the instant matter, claiming that in Baker, the defendant obtained a dismissal, whereas here, plaintiff is confident he will be the prevailing party.  (Opp. at 9).  However, as defendant indicates, the court in Baker examined the question of fees under two separate analyses – the defendant's right to a fee award as a prevailing party when the case was dismissed, and the defendant's right to a fee award based on its Rule 68 Offer. See Baker v. Urban Outfitters, Inc., 431 F. Supp. 2d at 361-62.  Unlike an award of fees under the Copyright Act, where the issue of "prevailing party" is a prerequisite to a fee award, the notion of "prevailing party" is not a factor in a Rule 68 analysis.  Indeed, the cost-shifting provision of Rule 68 only comes into play if the plaintiff prevails but receives less than the Rule 68 offer.  Fed. R. Civ. P. 68.  If the defendant were to prevail completely after trial and there was no recovery by plaintiff, the cost-shifting analysis of Rule 68 would not apply.  Delta Air Lines, Inc. v. August, 450 U.S. 346, 352, 101 S. Ct. 1146, 1150, 67 L. Ed. 2d 287 (1981) (holding that the cost-shifting provision of Rule 68 is "simply inapplicable" when the defendant has "obtained the judgment").

Exhibit B

Plaintiff's argument has already been rejected by courts in this Circuit.  See Sadowski v. JSN Glob. Media, Inc., No. 18 CV 1392, 2018 U.S. Dist. LEXIS 205365, at *4 (S.D.N.Y. Dec. 3, 2018) (finding plaintiff's attempt to distinguish Baker was "not successful" because neither party was a "prevailing party" at the time of the motion for bond); Leibowitz v. Galore Media, Inc., 2018 WL 4519208, at *4 (denying plaintiff's motion for reconsideration and explaining that "Baker teaches that a defendant in a Copyright Action may recover post-offer costs if the plaintiff recovers less than the amount of the Rule 68 Offer").

The Court is not in a position to speculate as to what amount plaintiff might receive as a judgment in this case, if any.  However, given plaintiff's rejection of defendant's Rule 68 Offer of Judgment, there is a possibility that defendant may be entitled to the costs and fees that it incurred after plaintiff's rejection.  Therefore, the Court finds that this factor weighs in favor of granting the motion.

   e.   Compliance

Although plaintiff's counsel argues that plaintiff Lee has never violated any court orders (Opp. at 12), defendant relies on counsel's history of violating court orders.  (Reply[3] at 5-6). Defendant refers to cases in which courts in this Circuit have required plaintiff's counsel, the Liebowitz Law Firm, to post a bond, based in part on this conduct.  (Id. at 6).

The Court finds that this factor weighs against plaintiff, based on counsel's conduct in these other cases and in this case as well.  In this case, a response to defendant's motion for bond was due April 25, 2019, according to this Court's Individual Motion Practices and Rules. Plaintiff filed his response late on May 2, 2019, and did not ask for additional time from the

---

[3] Citations to "Reply" refer to defendant's reply in support of its motion for bond, dated May 8, 2019, ECF No. 26.

Exhibit B

Court.  Similarly, when defendant filed a motion for disclosure on April 5, 2019, plaintiff failed to respond.  As a result, the Court sua sponte extended the deadline and directed plaintiff to reply to the motion by April 18, 2019.  Plaintiff filed a response on April 22, 2019, thereby missing the second deadline as well.  Although defendant explains that plaintiff sought an extension of the deadline from defendant (Reply at 5 n.5), plaintiff again never sought an extension from this Court.

In addition, defendant argues that plaintiff's counsel has delayed this case by failing to add the owner of the building as a party and by filing a motion to compel defendant to identify the building owner "when plaintiff knew all along [to] which building his work was affixed." (Id.)

The Court finds that plaintiff has failed to timely file motion papers and failed to move this case forward.  Moreover, as set forth above, plaintiff's counsel has failed to follow court orders in other cases in this Circuit.  See Reynolds v. Hearst Commc'ns, Inc., 2018 WL 1229840, at *4 (citing cases).  Thus, the Court finds this factor weighs in favor of granting the motion.

In sum, the Court, after considering all of the Teri factors, grants defendant's motion for bond, and Orders plaintiff's counsel to post a bond.  See Pereira v. 3072541 Canada Inc., No. 17 CV 6945 (S.D.N.Y Dec. 18, 2018) (ordering plaintiff's counsel to show cause why he should not be required to post a bond); Baker v. Urban Outfitters, Inc., No. 01 CV 5440, 2006 WL 3635392, at *2 (S.D.N.Y. Dec. 12, 2006) (ordering plaintiff and his counsel – not counsel in the instant matter – to each post a bond as security for costs associated with their appeal).

f.  Bond Amount

Under Local Rule 54.2, the Court has discretion in setting a bond amount.  If a bond is imposed, plaintiff argues that the amount should be $1,500, which he claims is the cost of two

Exhibit B

deposition transcripts.  (Opp. at 16).  Defendant suggests a $10,000 bond is "an appropriate

floor" based on other cases in this Circuit.  (Reply at 6).  In addition, defendant contends that its

fees exceed the cost of two depositions.  (Id. (quoting Leibowitz v. Galore Media, Inc., 2018 WL

4519208, at *5)).

Considering all of the factors, the Court grants defendant's motion to require plaintiff's

counsel to post a bond.  Based on the case law in this Circuit, the Court finds that $10,000 is an

appropriate amount for bond.  Plaintiff's counsel is thus Ordered to post a bond in the amount of

$10,000 by June 7, 2019.

The Clerk is directed to send copies of this Order to the parties either electronically

through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
May 28, 2019

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

Exhibit B

Ⓐ Neutral

As of: January 15, 2020 11:05 PM Z

## *Usherson v. Bandshell Artist Mgmt.*

United States District Court for the Southern District of New York

December 9, 2019, Decided; December 9, 2019, Filed

19-CV-6368 (JMF)

**Reporter**

2019 U.S. Dist. LEXIS 212150 *; 2019 WL 6702069

ARTHUR USHERSON, Plaintiff, -v- BANDSHELL ARTIST MANAGEMENT, Defendant.

**Prior History:** *Usherson v. Bandshell Artist Mgmt., 2019 U.S. Dist. LEXIS 206827 (S.D.N.Y., Nov. 20, 2019)*

## Core Terms

mediation, confidentiality, communications, sanctions motion, permission, declaration, proceedings, representations, disclosure, telephone, filings, parties, redacted, public access, assertions, seal

**Counsel:** [*1] For Arthur Usherson, Plaintiff: Richard Liebowitz, Liebowitz Law Firm, PLLC, Valleystream, NY.

For Bandshell Artist Management, Defendant: Brad Richard Newberg, LEAD ATTORNEY, McGuireWoods LLP, Tysons Corner, VA.

**Judges:** JESSE M. FURMAN, United States District Judge.

**Opinion by:** JESSE M. FURMAN

## Opinion

MEMORANDUM OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

Pending before the Court in this copyright case is Defendant Bandshell Artist Management's motion for sanctions against Plaintiff and Plaintiff's counsel, Richard Liebowitz — a frequent target of sanctions motions and orders imposing sanctions in this District. ECF No. 14; *see, e.g., Rice v. NBCUniversal Media, LLC, No. 19-CV-447 (JMF), 2019 U.S. Dist. LEXIS 114690, 2019 WL 3000808, at *1 (S.D.N.Y. July 10, 2019)* ("In his relatively short career litigating in this District, Richard Liebowitz has earned the dubious distinction of being a regular target of sanctions-related motions and orders. Indeed, it is no exaggeration to say that there is a growing body of law in this District devoted to the question of whether and when to impose sanctions on Mr. Liebowitz alone."). Defendant's motion turns in large part on the veracity of factual representations that Liebowitz has made to the Court, some under oath.[1] In particular, Liebowitz asserts that a mediator in the Court-annexed [*2] Mediation Program gave advance permission by telephone for (1) an

---

[1] Notably, Liebowitz's veracity has already been found wanting by other Judges on this Court. *See, e.g.,* Nov. 13, 2019 Minute Entry, *Berger v. Imagina Consulting, Inc.*, 18-CV-8956 (CS) (noting a finding on the record at a conference held on November 13, 2019, that Liebowitz had "willfully lied to the Court"); *Sands v. Bauer Media Group USA, LLC, No. 17-CV-9215 (LAK), 2019 U.S. Dist. LEXIS 205558, 2019 WL 6324866, at *2 & n.1 (S.D.N.Y. Nov. 26, 2019)* (describing several statements made by Liebowitz as "false").

Exhibit B

associate to appear instead of Liebowitz at an October 31, 2019 in-person mediation, and (2) Plaintiff Arthur Usherson to appear telephonically at the mediation, rather than in person. Defense counsel asserts that those representations are false — and that the mediator (the "Mediator") has indicated that, if called upon to do so, would testify to that effect. Determining the truth or falsity of Liebowitz's assertions is critical to the integrity of both the proceedings before the Court and the Court-annexed Mediation Program itself.

Determining the truth or falsity of Liebowitz's assertions, however, requires delving into an area that is usually beyond the scrutiny of the Court and the public. That is, to repurpose a familiar phrase, what happens in mediation is generally supposed to stay in mediation. *See, e.g.*, Rule 2(a), Procedures of the S.D.N.Y. Mediation Program (Dec. 26, 2018) ("Mediation Rules") (providing that communications made "exclusively during or for the mediation process shall be confidential"), *available at* https://nysd.uscourts.gov/programs/mediation-adr; *see also, e.g.* [*3] , *In re Teligent, Inc.*, 640 F.3d 53, 57 (2d Cir. 2011)* ("Confidentiality is an important feature of the mediation and other alternative dispute resolution processes."). The general rule of confidentiality is eminently sound. As the Second Circuit has explained, "confidentiality is 'essential' to [the] . . . vitality and effectiveness" of mediation. *Id. at 58*. "Promising participants confidentiality in [mediation] proceedings promotes the free flow of information that may result in the settlement of a dispute, and protect[s] the integrity of alternative dispute resolution generally." *Id. at 57-58* (internal quotation marks and citations omitted).

That said, there are important exceptions to the rule of confidentiality in the mediation context. For example, disclosure of confidential mediation communications is authorized upon a showing of "(1) a special need for the confidential material, (2) resulting unfairness from a lack of discovery, and (3) that the need for the evidence outweighs the interest in maintain confidentiality." *Id. at 58*; *see also id. at 58-59* (discussing the rules governing confidentiality of mediation communications and disclosure thereof set forth in the Administrative Dispute Resolution Act of 1996, *5 U.S.C. §§ 571 et seq.*, and the *Administrative Dispute Resolution Act of 1998, 28 U.S.C. §§ 651 et seq.* [*4] ). The Mediation Rules of this Court also allow for disclosure of "communications with the mediator" if "all parties agree, because [disclosure] is required by law, or because otherwise confidential communications are relevant to a complaint against a mediator or the Mediation Program arising out of the

mediation." Mediation Rule 2(b). In other words, there are cases in which the strong interest in preserving confidentiality in mediation must — and does — give way to other, even weightier interests.

This is such a case. On October 7, 2019, the Court ordered the parties to comply with the Court's prior Mediation Referral Order, ECF No. 6, by participating in an "in-person mediation no later than October 31, 2019." *See* ECF No. 13. The parties agreed to hold the mediation on the very last possible day — October 31, 2019 — but neither Liebowitz nor his client appeared. *See* ECF No. 16 ("Newberg 1st Decl."), at ¶¶ 47-48. Instead, two associates from Liebowitz's firm — neither of whom had (or has since) entered an appearance on behalf of Plaintiff and neither of whom had much, if any, knowledge of the case — arrived and confirmed that Liebowitz and Plaintiff would not be attending in person. *Id.* After [*5] Liebowitz's associates, Defendant, and defense counsel spoke briefly with Plaintiff on the phone — the details of their conversation are not relevant to Defendant's motion and, thus, need not be made public — the mediation ended without a resolution. *See id.* ¶ 55; ECF No. 23 ("Freeman Decl."), at ¶ 15.

Liebowitz does not dispute that he and his client failed to appear in person at the mediation, but he contends that the Mediator gave him advance permission to send an associate in his place and for Plaintiff to appear by telephone. Specifically, at a conference before the Court on November 14, 2019, Liebowitz stated on the record that he had "personally advised" the Mediator "before the mediation" that Plaintiff would not appear in person and that the Mediator had "said that was okay." ECF No. 27 ("Tr."), at 7.[2] Several days later, Liebowitz repeated this claim in a sworn declaration, and further averred that he had obtained the Mediator's permission for Freeman to appear as counsel instead of himself. *See* ECF No. 22 ("Liebowitz Decl."), at ¶ 13. Liebowitz made the same claims in Plaintiff's opposition to the sanctions motion. *See* ECF No. 21 ("Pl. Opp."), at 4; ECF No. 19, at 2. As noted, [*6] defense counsel disputes these assertions, stating in a declaration currently filed under seal that the Mediator told counsel that the Mediator never gave Liebowitz such permission and that the Mediator would testify to that effect if called as a witness. *See* Newberg 2d Decl. ¶¶ 23-25.

---

[2] It is worth noting that the November 14, 2019 conference was only one day after Liebowitz had appeared before Judge Seibel in connection with the contempt proceedings in *Berger*, a proceeding in which he was taken to task for lying to the Court. *See supra* note 1.

Exhibit B

The need to resolve this dispute — and to rule on Defendant's motion — justifies a limited inquiry into Liebowitz's communications with the Mediator. Only the Mediator can clarify whether he did, in fact, give Liebowitz advance permission to depart from the Mediation Program's rules, which applied to the mediation by virtue of *Local Civil Rule 83.9*. These Rules mandate attendance by "[e]ach party," Mediation Rule 9(a); mandate attendance "by the lawyer who will be primarily responsible for handling the trial of the matter," Mediation Rule 9(c); and allow a party who "resides more than 100 miles from the Courthouse" for whom in-person appearance "would be a great hardship" to participate by telephone, but only with the permission of the assigned mediator, Mediation Rule 9(f). Shedding light on these issues is critical for determining whether Liebowitz complied with the Court's Orders (which incorporated the Local Rules and the Mediation [*7] Rules by reference) and whether Liebowitz was truthful in his representations to the Court — some made under penalty of perjury.

The Court does not call upon the Mediator to involve himself further in this litigation lightly. A mediator should generally not be dragged into litigation beyond the mediation itself — both to protect the confidentiality of mediation communications and (mindful that the lawyers who serve as mediators in this Court's Mediation Program do so on a volunteer basis) to avoid disincentivizing lawyers from serving as mediators. In the unique circumstances of this case, however, it is necessary to call upon the Mediator to provide evidence. To minimize the burdens on him (and the Mediation Program generally), the Court will carefully limit the evidence required from the Mediator regarding his communications with Liebowitz. Moreover, rather than holding an evidentiary hearing in the first instance, the Court will proceed in steps, beginning with a declaration from the Mediator. In particular, the Mediator shall submit a declaration detailing any and all communications with Liebowitz regarding Liebowitz's personal attendance at the mediation and Plaintiff's participation [*8] by telephone in the mediation. The Mediator should specify whether (and if so, when and how) he gave Liebowitz permission (1) not to appear personally at the mediation (and to send an associate instead); and (2) for Plaintiff not to appear at the mediation in person and to appear by telephone instead.

Significantly, limiting the Mediator's disclosures to these issues protects the confidentiality of the information discussed at the mediation itself, which is the primary focus of the rule of confidentiality. *See* *Bernard v. Galen*

*Grp., Inc., 901 F. Supp. 778, 784 (S.D.N.Y. 1995)* ("The guarantee of confidentiality permits and encourages counsel to discuss matters [at mediation conferences] in an uninhibited fashion." (quoting *Lake Utopia Paper Ltd. v. Connelly Containers, Inc., 608 F.2d 928, 930 (2d Cir. 1979))*. That is, the Court's inquiry concerns only a narrow set of communications about procedural matters that occurred *before* the mediation proper — not communications about the substance of the case or the parties' settlement negotiations. Indeed, although Liebowitz casts aspersions on the conduct and good faith of Defendant and defense counsel during the mediation itself in his opposition papers, ECF Nos. 21-24, the Court will not permit inquiry into such matters. These allegations have no bearing on the veracity of Liebowitz's representations [*9] to the Court or the Court's resolution of Defendant's sanctions motion — and impinge more directly on the core of the rule of confidentiality.

To the extent that the Court's limited inquiry may still reach communications protected by the general rule of confidentiality, the parties have implicitly consented to disclosure through their submissions to the Court. *See* Mediation Rule 2(b) (allowing for disclosure of "communications with the mediator" if "all parties agree"). Moreover, this case falls squarely within the exceptions to the rule of confidentiality recognized by the Second Circuit in *Teligent*. Liebowitz's representations to the Court in response to Defendant's sanctions motion, including some under penalty of perjury, have created a special need for the confidential material. Failing to discover the limited information necessary to resolve this factual dispute would not only result in unfairness to Defendant, but would also threaten the integrity of the proceedings before the Court and the integrity of the Court-annexed Mediation Program itself. Given the nature of the communications sought and the careful restrictions the Court has drawn, any remaining interest in confidentiality is [*10] outweighed by the need for the Mediator's evidence.

There is one more matter impinging on the general rule of confidentiality that the Court must address: whether and to what extent the Mediator's declaration, the transcript of the November 14, 2019 conference, the motion papers filed thus far, and any future filings and proceedings should be made public. "Given the interest in maintaining the confidentiality of negotiations and discussions conducted as part of the Court-annexed Mediation Program," the Court issued an Order on November 20, 2019 that temporarily sealed any filings made in connection with the sanctions motion pending a

Exhibit B

Usherson v. Bandshell Artist Mgmt.

final determination by the Court and directed the parties to file letters stating "their views on whether and to what extent the motion filings should remain under seal given the strong presumption in favor of public access to judicial documents." ECF No. 26. Amazingly, Liebowitz did not comply with the Court's Order by filing a letter. Defendant did comply, stating that sealing is not necessary. ECF No. 33.

For the most part, the Court agrees with Defendant and concludes that the presumption in favor of public access to judicial documents and judicial proceedings **[\*11]** requires that the filings and proceedings relating to the sanctions motion should be public. *See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-20 (2d Cir. 2006)*. The presumption in favor of public access is especially weighty here, as Defendant has filed a formal motion asking the Court to exercise its coercive authority in the form of sanctions. *See id. at 123-24*. In addition, the public has a strong interest in knowing about the additional aspersions cast on Liebowitz's truthfulness. Following the Court's warning to "be very, very, very careful" about any representations made to the Court, *see* Tr. at 7, Liebowitz repeatedly asserted — both in person and in filings — that his and his client's absences from the mediation were justified because he had received permission in advance. The public — including other litigants — and other judges who may come into contact with Liebowitz, a frequent litigant in this District, have an interest in the Court's determination of the veracity of these representations.

By contrast, the considerations cutting against public access here are generally weak. As discussed, the interest in confidentiality with respect to the communications that are relevant to the Court's inquiry is limited. The parties have also expressed no objections **[\*12]** to unsealing. Nevertheless, the Court concludes that some redactions are warranted to preserve the confidentiality of substantive mediation discussions and the integrity of the Mediation Program. Specifically, the allegations made in the parties' submissions about the parties' conduct at the mediation proper — and, in particular, the content of their negotiations — shall be redacted, as they have no bearing on the sanctions motion and directly implicate the core purpose of the rule of confidentiality. The same is true of the identities of the Mediator and court employees working in the Court-annexed Mediation Program, which shall also be redacted to protect their privacy. The Court finds that the presumption in favor of public access is much weaker as to those portions of the motion papers, and the countervailing interests are

stronger.

The Court has reviewed the parties' motion papers and will file on the public docket versions of their submissions redacted in accordance with the discussion above. The unredacted versions shall be filed and maintained under seal. All future filings in connection with the sanctions motion shall be filed publicly, but, absent further order of the Court, **[\*13]** shall (1) be limited to the issues of whether Liebowitz obtained advance permission from the Mediator for an associate to appear at the mediation instead of himself and for Plaintiff to participate in the mediation by telephone; and (2) not include the names of the Mediator or any court employees working in the Mediation Program (or, if need be, shall redact their names). No other filings in connection with the sanctions motion are permitted absent leave of the Court.

The Director of the Court-annexed Mediation Program is directed to provide a copy of this Memorandum Opinion and Order to the Mediator, who shall submit a declaration, consistent with the directions above, by **December 18, 2019**. The Mediator should do so, in the first instance, by e-mail to Furman_NYSDChambers@nysd.uscourts.gov so that the Court can review the declaration and redact it as appropriate. Upon review of the Mediator's declaration, the Court will decide what, if any, further proceedings are necessary to resolve Defendant's motion.

SO ORDERED.

Dated: December 9, 2019

New York, New York

/s/ Jesse M. Furman

JESSE M. FURMAN

United States District Judge

End of Document

Exhibit B

No *Shepard's* Signal™
As of: January 8, 2020 7:25 PM Z

## *Berger v. Imagina Consulting, Inc.*

United States District Court for the Southern District of New York

November 1, 2019, Decided; November 1, 2019, Filed

No. 18-CV-8956 (CS)

**Reporter**
2019 U.S. Dist. LEXIS 213321 *; 2019 WL 6695047

JASON BERGER, Plaintiff, - against - IMAGINA
CONSULTING, INC., Defendant.

## Core Terms

death certificate, documentation, grandfather's,
Declaration, requesting, sanctions, contempt, show
cause, discovery

**Counsel:** **[*1]** For Jason Berger, Plaintiff: Richard
Liebowitz, Liebowitz Law Firm, PLLC, Valleystream, NY
USA.

For Imagina Consulting, Inc., Defendant: Craig Justin
Albert, LEAD ATTORNEY, Albert PLLC, New York, NY
USA.

**Judges:** CATHY SEIBEL, UNITED STATES DISTRICT
JUDGE.

**Opinion by:** CATHY SEIBEL

## Opinion

**ORDER and ORDER TO SHOW CAUSE**

Seibel, J.

On April 5, 2019, Defendant filed a letter with the Court
requesting a discovery conference. (Doc. 27.) That
same day, I granted Defendant's request and scheduled
a discovery conference for April 12, 2019 at 11 a.m.
(Doc. 28.) I also ordered Plaintiff to respond to
Defendant's letter by April 9, (*id.*), which Plaintiff did,
(Doc. 30). On April 12, the Court held the discovery
conference, but Plaintiff's counsel, Richard Liebowitz,
did not appear and did not call or email the Court or
Defendant's counsel to explain his absence. (Minute
Entry dated Apr. 12, 2019.) That same day, I ordered
Plaintiff to show cause in writing, on or before April 17,
2019, why he failed to appear for the conference and
why he should not be required to pay Defendant's
attorney's fees for the time expended to appear at the
conference. (Doc. 31.) The Court also rescheduled the
conference for April 18, 2019. (*Id.*)

By letter **[*2]** dated April 15, 2019, Mr. Liebowitz
advised that he had missed the conference because of
a death in the family which was an "unexpected urgent
matter" to which he had to attend. (Doc. 32.) He also
said he would be out of the office on April 18 and asked
to appear by phone at the rescheduled discovery
conference. (*Id.*)

The conference was held by phone on April 18. (*See*
Minute Entry dated Apr. 18, 2019.) Mr. Liebowitz
represented that the death in the family occurred on the
morning of April 12 and apologized for not letting
Defendant's counsel and the Court know. During the
conference, issues were discussed that reflected
negatively on Plaintiff's counsel's credibility. For
example, Plaintiff had answered interrogatories saying
his damages calculation had relied on "contracts,
invoices, [and] licensing agreements," (Doc. 27 at 1),
but when Defendant requested those documents,
Plaintiff said he could not produce them without a

Exhibit B

Berger v. Imagina Consulting, Inc.

protective order. After Defendant agreed to a protective order and the Court signed it, (Doc. 23), Plaintiff still produced nothing, despite twice promising to do so. (*See* Doc. 27.) Further, Defendant's counsel represented that Mr. Liebowitz had told Defendant's [*3] counsel that he could not comply because he was out of the country due to an emergency, when in reality he was at a trade show in Europe trying to drum up business. At that point, concerned about Mr. Liebowitz's credibility and the possibility that he was trying to increase costs for Defendant's counsel, I determined that I could not merely accept Mr. Liebowitz's representation that he missed the April 12 conference because of a death in the family, and directed that, among other things, by May 1, Mr. Liebowitz provide evidence or documentation regarding who died, when, and how he was notified. I also permitted Defendant's counsel to submit his billing records relating to the discovery dispute by May 1, with Mr. Liebowitz having until May 15 to submit opposition to Defendant's application that Plaintiff cover those fees.[1]

By letter dated May 1, 2019, Mr. Liebowitz represented that his grandfather had unexpectedly died on April 12, 2019 and that Mr. Liebowitz was needed to assist with certain customs for which arrangements had to be made in advance of the Sabbath. (Doc. 36.) That same day, I endorsed the letter as follows:

> This letter is not responsive to my instruction. Mr. Liebowitz [*4] was to *document* who passed away, when the person passed away and when Mr. Liebowitz was notified. The reason I requested documentation is that there is reason to believe Mr. Liebowitz is not being candid. So a letter from him does not advance the ball. When someone dies, there is documentation including a death certificate and (almost always) an obituary, and nowadays one's phone usually contains evidence of what one was told and when. Mr. Liebowitz may have until 5/3/19 to supplement this letter.

(Doc. 38 (emphasis in original)). On May 3, 2019, Plaintiff filed a notice of settlement. (Doc. 41.) On May 7, 2019, I advised as follows:

> I'm glad the parties have resolved the case (and, I presume, the issue of Plaintiff's counsel's expenses for the April 12 conference), but there remains one open issue: Mr. Liebowitz's failure to document the death in the family that he says caused him to miss

the conference. (See Doc. 38.) He was supposed to address that issue by May 3, but I will give him until May 9. Even if Defendant has been made whole, I still need to satisfy myself that there is no need for disciplinary or other inquiry.

(Doc. 45.) On May 9, Mr. Liebowitz filed a Declaration in which [*5] he "re-certif[ied]" that the statements in his April 15 and May 1 letters were true, and he stated that he believed that his Declaration discharged his obligation to the Court. (Doc. 46 ¶¶ 6-7.)

On May 13, I responded that Mr. Liebowitz's May 9 Declaration did not resolve the matter because, given the issues surrounding Mr. Liebowitz's credibility and his failure to provide any information or documentation regarding his grandfather's death, Mr. Liebowitz's reiteration could not sufficiently discharge his obligations to the Court. (Doc. 47.) I therefore issued an order to show cause, requiring Mr. Liebowitz to provide documentation or other evidence (apart from his own word) that demonstrated that a death in the family had occurred that prevented him from attending the April 12 conference and timely notifying the Court and Defendant's counsel of his inability to attend. (*Id.* at 3-4.)

Rather than comply with the Court's order to provide the above documentation, on May 16, Mr. Liebowitz again submitted a Declaration reiterating his belief that his statements contained in the April 15, May 1, and May 9 letters were sufficient to discharge his obligations in response to the Court's order to show cause. [*6] (Doc. 48 ¶ 3.)

On July 26, I ordered Mr. Liebowitz, under pain of contempt, to provide a copy of his grandfather's death certificate so as to support his claim that he could not attend the April 12 conference, nor provide timely notice to the Court or opposing counsel, as a result of his grandfather's death. (Doc. 49.) In response, Mr. Liebowitz submitted another Declaration on August 12, stating that he believed that his previous letters sufficed to fulfill his obligations to the Court (in spite of the fact that I explicitly requested documentation other than "his say-so," (*see* Doc. 47 at 4)), and that he should not be required to submit his grandfather's death certificate because it is "a personal matter." (Doc. 50 ¶¶ 3-4.) As I noted in my August 19 response to Mr. Liebowitz's letter, however, although the death of a family member is certainly a personal matter, questions regarding Mr. Liebowitz's candor before the Court are professional in nature. (Doc. 51.) I reassured Mr. Liebowitz that, if he was concerned about the death certificate being available on the public docket, he was welcome to

---

[1] I also expressed concern over how Plaintiff's claim of $5000 in damages could possibly have been made in good faith.

Exhibit B

Berger v. Imagina Consulting, Inc.

provide the document directly to my chambers to ensure his privacy. (*Id.*) I also made clear [*7] that, should he fail to provide the requested documentation by August 26, he would be held in contempt of court and subject to sanctions, including monetary sanctions and/or referral to this Court's Grievance Committee. (*Id.*)

On August 26, the day Mr. Liebowitz was required to provide his grandfather's death certificate pursuant to my August 19 order, Mr. Liebowitz instead submitted another Declaration. (Doc. 52.) In this Declaration, Mr. Liebowitz argued that he was not in contempt because this Court's request for his grandfather's death certificate was unlawful, as it "likely constitutes a usurpation of judicial authority or a breach of judicial decorum," (*id* ¶ 14); his previous Declarations complied with my previous orders, (*id.* ¶ 15); "there [was] no basis to impose monetary sanctions," (*id.* ¶ 16); and the Court's assurance that his grandfather's death certificate would not be made public was insufficient to protect his right to privacy, (*id.* ¶ 17).

On September 27, I endorsed Mr. Liebowitz's latest Declaration, stating that:

> There is nothing unlawful about my August 19, 2019 order. There was also nothing unclear about it. Likewise, Mr. Liebowitz's failure to comply is apparent beyond [*8] any reasonable doubt. Finally, he has not diligently attempted to comply. To the contrary, while maintaining that the death occurred (and thus implicitly conceding the existence of a death certificate), he has repeatedly refused to provide it, even after the Court made clear that his "good faith declarations" were insufficient and after the Court agreed that the document need not be publicly filed. He has not shown or even alleged an inability to comply.

(Doc. 53.) I therefore declared Mr. Liebowitz to be in contempt of court, and ordered that, should he fail to comply with my order and provide the requested documentation by October 2, he would be subject to monetary sanctions of $100 each business day until he complied. (*Id.*) I also informed Mr. Liebowitz that, "[s]hould this sanction prove insufficient" to ensure his compliance, "additional or different sanctions [would] be considered." (*Id.*)

On October 2, Mr. Liebowitz wrote a letter to my chambers requesting an in-person conference to discuss my September 27 order, and also requesting a stay of that order "[f]or just cause" until the conference could be held. (Doc. 54.) I denied his request, noting

that Mr. Liebowitz's letter had [*9] not stated what purpose would be served by an in-person conference, nor had it supplied any justification for a stay of my September 27 order. (Doc. 55.) Mr. Liebowitz submitted another letter the next day, October 3, reiterating his request for an in-person conference to discuss his grandfather's death certificate and for a stay "[f]or just cause." (Doc. 56.) I again denied the application, because Mr. Liebowitz had not articulated any purpose that the conference would serve, nor did he supply any cause to stay my September 27 order. (Doc. 57.) I further ordered Mr. Liebowitz to refrain from filing any further requests for a conference unless he could explain specifically what purpose would be served by the conference and to refrain from filing any further requests for a stay of my September 27 order unless he could specifically state a justification for a stay. (*Id.*) I notified Mr. Liebowitz that his first payment under the contempt sanction was due to the Clerk of the Court on Monday, October 7. (*Id.*)

On October 7, Mr. Liebowitz sent a letter requesting a two-week extension to deliver his grandfather's death certificate and requesting that the monetary sanctions be stayed until after [*10] the extension had elapsed. (Doc. 58.) This request had come at 8:34 p.m. on October 7, well after the Clerk's Office had closed. (Doc. 59.) That same night, I denied Mr. Liebowitz's request for an extension. (*Id.*) As of November 1, 2019, Mr. Liebowitz has not made any of his required payments. By the Court's count, Mr. Liebowitz was obligated to pay $300 on October 7, 2019; $400[2] on October 15, 2019;[3] $400 on October 21, 2019;[4] and $500 on October 28.

Richard Liebowitz, Plaintiff's counsel in this case, is now in contempt of my August 19, 2019 and September 27, 2019 orders. (*See* Docs. 51, 53.) The $100 fine he accrues each business day has plainly been ineffective to coerce compliance with the August 19, 2019 Order. Accordingly, the daily contempt sanction is hereby increased to $500 a day, effective November 6, 2019. Starting on that date, Mr. Liebowitz will be sanctioned $500 per business day (payable on Monday of each week, or Tuesday if the office of the Clerk of Court is not open on Monday) until he has complied in full with my August 19, 2019 and September 27, 2019 Orders. Further, Mr. Liebowitz is hereby ORDERED to appear

---

[2] I will not count Yom Kippur, which fell October 9, 2019, as a business day.

[3] Monday, October 14, was a national holiday.

[4] See note 3 above.

Katie Birchenough    Exhibit B

Berger v. Imagina Consulting, Inc.

before this Court in person on November 13, 2019 at 10 a.m., **[\*11]** and there and then SHOW CAUSE why he should not be incarcerated until such time as he complies with the above-described orders (and, if applicable, the instant order). Failure to appear as directed will subject Mr. Liebowitz to arrest by the United States Marshals Service without further notice.[5]

**SO ORDERED.**

Dated: November 1, 2019

White Plains, New York

/s/ Cathy Seibel

CATHY SEIBEL, U.S.D.J.

End of Document

[5] Should Mr. Liebowitz already be committed to appear before another court on November 13, 2019 at 10 a.m., he shall — no later than November 6, 2019 - so advise the Court by letter and enclose proof of the commitment from a source other than Mr. Liebowitz (such as a court order or docket entry). No adjournment will be considered unless it is requested on or before November 6, 2019, and unless the request is accompanied by proof of the commitment from a source other than Mr Liebowitz. The letter shall also provide three dates and times within a week of November 13, 2019 when Mr. Liebowtiz is available to appear before this Court. If the Court finds the showing sufficient, the Court will advise Mr. Liebowitz of a new date and time. Unless he hears from the Court about a new date and time, he shall appear on November 13, 2019 at 10 a.m.

Katie Birchenough

Exhibit B

**A** Neutral
As of: April 27, 2020 2:13 PM Z

# *Wisser v. Vox Media, Inc.*

United States District Court for the Southern District of New York

April 1, 2020, Decided; April 1, 2020, Filed

19 Civ. 1445 (LGS)

**Reporter**
2020 U.S. Dist. LEXIS 57705 *

BILL WISSER, Plaintiff, v. VOX MEDIA, INC., Defendant.

**Subsequent History:** Dismissed by, Without prejudice, Motion dismissed by, As moot *Wisser v. Vox Media, 2020 U.S. Dist. LEXIS 65388 (S.D.N.Y., Apr. 14, 2020)*

## Core Terms

sanctions, Interrogatory, Responses, documents, discovery, Verification, signature, deposition, cases, inherent power, bad faith, Photograph, electronic, Answers, scheduling order, noncompliance, affix, Superseding, imposition of sanctions, request for production, improper purpose, attorney's fees, court order, circumstances, courts, failure to comply, compliance, incomplete, requests, argues

**Counsel:** **[*1]** For Bill Wisser, Plaintiff: Richard Liebowitz, Liebowitz Law Firm, PLLC, Valleystream, NY.

For Vox Media, Inc., Defendant: Caesar D. Kalinowski, Davis Wright Tremaine LLP, Seattle, WA; Rachel Fan Stern Strom, Davis Wright Tremaine LLP (NYC), New York, NY.

**Judges:** LORNA G. SCHOFIELD, UNITED STATES DISTRICT JUDGE.

**Opinion by:** LORNA G. SCHOFIELD

# Opinion

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

Plaintiff Bill Wisser brings an action against Defendant Vox Media, Inc. alleging violations of *Section 501* of the Copyright Act, *17 U.S.C. § 101 et seq.* Defendant moves for an order compelling Plaintiff or his law firm to post a bond, and for sanctions under *Federal Rules of Civil Procedure 16(f)*, *26(g)*, *37(b)*, *37(d)*, *28 U.S.C. § 1927* and the court's inherent power. For the reasons below, the motion is granted in part.

**I. BACKGROUND**

Plaintiff, a professional photographer, filed the Complaint in this action on February 14, 2019, alleging that that Defendant ran an article on its website featuring one of Plaintiff's photographs (the "Photograph") without license, permission or consent. The Photograph depicts a roasted oysters dish at the Miami restaurant Ariete.

Plaintiff is represented by the Liebowitz Law Firm, PLLC ("LLF"), including Richard Liebowitz, the attorney of record on the docket, and James Freeman, a senior counsel. **[*2]** Mr. Liebowitz has been representing Plaintiff since 2017. The representation includes registering Plaintiff's photographs with the United States Copyright Office, searching for copyright infringements and prosecuting his claims in federal court. Mr. Liebowitz has filed eighteen cases on Plaintiff's behalf.

Exhibit B

2020 U.S. Dist. LEXIS 57705, *2

**a. Plaintiff's Responses to Defendant's Interrogatories**

On June 7, 2019, LLF served responses to Defendant's interrogatories ("Interrogatory Responses"). Mr. Liebowitz certified the Interrogatory Responses. The parties do not dispute that the responses were incomplete. The Interrogatory Responses included a document titled "Plaintiff's Verification of his Answers and Objections to Defendant's First Set of Interrogatories" (the "Verification"), which includes the following statement:

> Pursuant to _Rule 33 of the Federal Rules of Civil Procedure_ ("Federal Rules"), Plaintiff Bill Wisser ("Wisser") being duly sworn, deposes and says that I am the plaintiff in this action, that I have read Plaintiff's Answers and Objections to Defendant's First Set of Interrogatories, dated June 7, 2019, and know the contents thereof, and the same are true and accurate to the best of my knowledge, information and belief.

Affixed to the Verification was **[*3]** the following electronic signature:

**Bill Wisser**

Plaintiff represents that he "did not personally review [his] written responses to Defendant's first set of interrogatories nor Defendant's requests for production of documents." The Interrogatory Responses were prepared by Mr. Freeman who cannot "verify that any telephone conversation with [Plaintiff] took place prior to June 7, 2019," and "did not and could not certify" the Interrogatory Responses under _Rule 26_.[1] Mr. Liebowitz asserts that LLF followed its ordinary practice and "procure[d] as much information and documents as [they] could" at the outset of [the] infringement suit, as [LLF is] able to anticipate the documents needed, such as licensing fee history and copyright registration materials." Mr. Liebowitz also asserts that it is not LLF's ordinary practice to serve _Rule 33(b)(5)_ verifications unless they are requested.

Plaintiff states that he did not give explicit permission to

LLF to affix his electronic signature to the Interrogatory Responses. Following LLF's ordinary practice, Plaintiff has used the program "Hellosign" to sign documents for LLF electronically when necessary. In this circumstance, however, LLF affixed Plaintiff's electronic signature **[*4]** directly. Mr. Liebowitz represents that, because Plaintiff's engagement letter with LLF authorizes it "to take any steps, which, in their sole discretion, are necessary or appropriate to protect [Plaintiff's] interest in [his] claims," and "[b]ecause [Mr. Liebowitz] ha[s] a longstanding attorney-client relationship with [Plaintiff] . . . [he] did not believe at the time that [he] was doing anything wrong." Plaintiff also states, "[a]t the very least, Mr. Liebowitz had [Plaintiff's] implied authority to sign documents on [his] behalf."

Plaintiff testified at the deposition on August 15, 2019 that he had not seen the Interrogatory Responses previously and that the electronic signature on the Verification was not his signature. Plaintiff also testified at his deposition that the responses to several Interrogatories were incomplete.

**b. Plaintiff's Responses to Defendant's Requests for Production**

On April 9, 2019, the Court issued a Case Management Plan and Scheduling Order (the "Scheduling Order") pursuant to which any documents responsive to Requests for Production were to be produced by June 23, 2019.[2] On June 14, 2019, Plaintiff represented in a letter to the Court that he intended to produce **[*5]** documents by June 19, 2019. Plaintiff produced documents on June 26, 2019 and July 17, 18 and 19, 2019. The June 26, 2019 production consisted almost entirely of publicly-available documents.[3] During his deposition, Plaintiff testified that he was not asked to search for documents by his attorneys until mid-July 2019. Plaintiff also testified that, until two days prior to

---

[1] Plaintiff asserts that he "communicated with LLF about the case in the April-May 2019 time period." As Plaintiff's opposition and his counsel's declarations do not assert that this communication was related to the Interrogatory Responses, the Court assumes it was not.

---

[2] Per the scheduling order, the deadlines for service of requests for production, and the production of the requested documents, could be extended by the written consent of all parties without application to the Court, provided fact discovery was completed by August 9, 2019. There is no indication that the parties agreed to extend this deadline here.

[3] The production included a copy of the Photograph, a printout of the copyright registrations for various of Plaintiff's copyrighted photographs, certain non-Vox articles featuring the Photograph, Vox Media's Wikipedia page, two articles about Vox Media's advertising revenue, and an invoice from Plaintiff regarding photographs unrelated to the lawsuit.

Exhibit B

his deposition when he was asked to provide additional documents by his counsel, he had not understood that certain electronic files were considered documents for the purposes of production in the lawsuit.

**c. The Instant Motion**

On August 14, 2019, Defendant filed a letter motion for a conference to move for an order compelling Plaintiff and/or his law firm to post a bond in order to proceed with the current action. On August 15, 2019, the day of Plaintiff's deposition, LLF served on Defendant superseding answers and objections to Defendant's interrogatories (the "Superseding Interrogatory Responses") with corrected responses. The Superseding Interrogatory Responses included a verification page with Plaintiff's wet signature. On August 21, 2019, Defendant filed a letter motion seeking to move for sanctions. Following **[*6]** a hearing on September 19, 2019, Defendant filed the instant motion.

**II. DISCUSSION**

Richard Liebowitz, Plaintiff's counsel, has been described as a "copyright troll" who is

> more focused on the business of litigation than on selling a product or service or licensing their copyrights to third parties to sell a product or service. A copyright troll plays a numbers game in which it targets hundreds or thousands of defendants seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim.

*Sands v. Bauer Media Grp. USA, LLC, No. 17 Civ. 9215, 2019 WL 4464672, at *1 (S.D.N.Y. Sept. 18, 2019)*; accord *McDermott v. Monday Monday, LLC, No. 17 Civ. 9230, 2018 U.S. Dist. LEXIS 28664, 2018 WL 1033240, at *3 (S.D.N.Y. Feb. 22, 2018)* ("Plaintiff's counsel, Richard Liebowitz, is a known copyright 'troll,' filing over 500 cases in this district alone in the past twenty-four months."). According to representations made by Plaintiff's counsel in connection to this motion, Mr. Liebowitz has, or has had, over 1000 clients, and has filed over 650 cases this year. "[A]ccording to the Court's records, Mr. Liebowitz, who was admitted to practice in this Court in October 2015, filed 1,110 lawsuits in this Court from the beginning of 2016 through September 16, 2019. That is an average of more than one new case on every day the Court has

been open for business." *Sands, 2019 WL 4464672, at *1* **[*7]** . Courts in this District have noted that "[t]here may well be justification for the implication [that a significant portion of the 1,110 cases . . . have been strike suits, designed to extort settlements from defendants on the basis that the defense costs would exceed what plaintiff would accept in settlement." *Id.* (alteration in original). "In his relatively short career litigating in this District, Richard Liebowitz has earned the dubious distinction of being a regular target of sanctions-related motions and orders. Indeed, it is no exaggeration to say that there is a growing body of law in this District devoted to the question of whether and when to impose sanctions on Mr. Liebowitz alone." *Rice v. NBCUniversal Media, LLC, No. 19 Civ. 447, 2019 WL 3000808, at *1 (S.D.N.Y. July 10, 2019)* (citing cases), *report and recommendation adopted*, *No. 19 Civ. 447, 2019 WL 3752401 (S.D.N.Y. Aug. 8, 2019)*.

The most important facts relevant to this motion are undisputed: LLF served on Defendant incomplete Interrogatory Responses. LLF did not consult with Plaintiff before certifying and serving the Interrogatory Responses, and Plaintiff had never seen them before his deposition on August 15, 2019. The Interrogatory Responses omit information that Plaintiff and LLF possessed at the time they were served. Attached to the Interrogatory Responses was a Verification to which Plaintiff's signature was affixed without his knowledge. Mr. Liebowitz certified the Interrogatory Responses. LLF served Superseding Interrogatory Responses after Plaintiff's deposition. Finally, LLF did not ask Plaintiff to search for documents responsive to Defendant's request for production until after the deadline for production in this Court's Scheduling Order had passed. **[*8]**

**a.** *Federal Rule of Civil Procedure Rule 26(g)*

Defendant moves for sanctions under *Rule 26(g)*. Although Mr. Liebowitz's certification violated *Rule 26(g)*, sanctions are not available under that rule because Defendant was not prejudiced.

Under *Federal Rule of Civil Procedure 26(g)*, an attorney who signs a discovery response certifies that, "to the best of the person's knowledge, information, and belief formed after a reasonable inquiry . . . it is complete and correct as of the time it is made." *Fed. R. Civ. P. 26(g)(1)(A)*. Mr. Liebowitz's certification violates this rule because the responses were drafted and finalized without input from the client, and without

Exhibit B

2020 U.S. Dist. LEXIS 57705, *8

including information known to LLF at the time. However, "courts have interpreted *Rule 26(g)(3)* as incorporating a requirement that there be harm resulting from the alleged violation of the Rule." *Markey v. Lapolla Indus., Inc., No. 12 Civ. 4622, 2015 U.S. Dist. LEXIS 112915, 2015 WL 5027522, at *18 (E.D.N.Y. Aug. 25, 2015), report and recommendation adopted, No. 12 Civ. 4622, 2016 WL 324968 (E.D.N.Y. Jan. 26, 2016)* (citing cases); *accord Borsanyi v. Huggins, No. 17 Civ. 7266, 2019 WL 4911188, at *6 (E.D.N.Y. Sept. 30, 2019).* "Harmlessness means an absence of prejudice to the defendant." *Markey, 2015 U.S. Dist. LEXIS 112915, 2015 WL 5027522, at *18.* Here, with the exception of irrelevant information about the identity of a handful of third parties who Plaintiff alleges have also infringed his copyright of the Photograph, the information missing from the Interrogatory Responses was available to Defendant through documents produced prior to Plaintiff's deposition. *See* Dkt. No. 37-6 at 4/7: information **[*9]** included in response to interrogatory no. 2 was produced on July 17 per Dkt. No. 36 at 8/21; information included in response to interrogatory no. 3 was produced on July 18-19 per Dkt. No. 36 at 8-9/21 and Dkt. 56 No. at 9/9, information included in response to interrogatory no. 5 was in the Complaint and was produced on July 17 per Dkt. No. 36 at 8 n.1/21. Accordingly, Defendant was not prejudiced, and sanctions are inappropriate under *Rule 26(g).* *See* Steven S. Gensler et al., General Provisions Governing Discovery, 1 Federal Rules of Civil Procedure, Rules and Commentary *Rule 26* (February 2020) ("A party who omitted information available to it at the time of the initial disclosures cannot 'cure' that omission merely by including it in a supplemental disclosure. . . That being said, the fact that the information was made available later via the supplemental disclosure might help show that the earlier omission was harmless.").

**b. *Federal Rules of Civil Procedure Rule 37* and *Rule 16(f)***

Defendant moves for sanctions under *Rules 37(b)* and *(d)*, and *Rule 16(f).* Sanctions are not available under *Rule 37(d)* because Plaintiff's service of incomplete responses does not constitute a failure to respond under the Rule. Plaintiff's violation of this Court's Scheduling Order, under the totality of the circumstances, warrants sanctions **[*10]** under *Rules 16* and *37(b).*

i. **Legal Standard**

*Federal Rule of Civil Procedure 16* provides that, "[o]n

motion or on its own, the court may issue any just orders, including those authorized by *Rule 37(b)(2)(A)(ii)-(vii),* if a party or its attorney "fails to obey a scheduling or other pretrial order." *Fed. R. Civ. P. 16(f)(1)(C).* "Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." *Fed. R. Civ. P. 16(f)(2).*

*Rule 37(b) of the Federal Rules of Civil Procedure* provides that sanctions may be imposed against a party who fails to comply with discovery orders. *Fed. R. Civ. P. 37(b)(2)(A).* *Rule 37(d)* provides that sanctions may be imposed against a party who "fails, after being properly served with interrogatories under *Rule 33* . . . to serve its answers, objections, or written response." *Fed. R. Civ. P. 37(d)(1)(A)(ii).* Prejudice to the opposing party is not required. *See S. New England Tel. Co. v. Glob. NAPs Inc., 624 F.3d 123, 148-49 (2d Cir. 2010)* ("'[W]e, along with the Supreme Court, have consistently rejected the 'no harm, no foul' standard for evaluating discovery sanctions . . . Although *one* purpose of *Rule 37* sanctions may in some cases be to protect other parties to the litigation from prejudice resulting from a party's noncompliance with discovery **[*11]** obligations, *Rule 37* sanctions serve other functions unrelated to the prejudice suffered by individual litigants. . . ." (citations omitted)).

ii. **Analysis**

LLF did not begin producing documents until after the deadline for production under the Scheduling Order, nor did LLF ask Plaintiff to begin searching for documents responsive to Defendant's requests for production until weeks after that deadline had passed. This is clear evidence that LLF disregarded a clear and unambiguous scheduling order, conduct that warrants sanctions under the totality of the circumstances present in this case. *See Rice, LLC, 2019 WL 3000808, at *3-4* (imposing sanctions against Mr. Liebowitz for failure to comply with court orders and noting his pattern of non-compliance "for failing to comply with court orders and for failing to produce materials during discovery").

Plaintiff argues that Defendant's motion should be denied under the doctrine of unclean hands, *see PenneCom B.V. v. Merrill Lynch & Co., 372 F.3d 488, 493 (2d Cir. 2004)* ("The Supreme Court . . . has stated that '[t]he equitable powers of this court can never be

Exhibit B

2020 U.S. Dist. LEXIS 57705, *11

exerted in behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage."), but Plaintiff does not present evidence that this doctrine should apply against [*12] Defendant here. First, Plaintiff argues that Defendant improperly withheld and concealed a screenshot of the Ariete restaurant's Facebook account[4] from its production until Plaintiff's deposition. This is unpersuasive; there is no evidence that Defendant attempted to conceal this publicly-available document, nor that Defendant possessed the screenshot before creating it for Plaintiff's deposition. Plaintiff's own Complaint attaches a screenshot of the disputed use of the Photograph that includes the words "Ariete/Facebook" beneath the Photograph, and Defendant produced an email referencing the availability of the Photograph on the Ariete Facebook page, and including the link. Similarly, Plaintiff's second argument -- that Defendant's interrogatories are false or evasive because they should have disclosed that Defendant retrieved the Photograph from Ariete's Facebook page -- fails as evidentiarily unsupported. The evidence before the Court does not support a finding of unclean hands that would preclude sanctions.

Finally, sanctions are not warranted under _Rule 37(d)_, because the service of incomplete responses to interrogatories is not a failure to respond altogether, and courts in this Circuit [*13] have held that only a complete failure to respond is sufficient for sanctions under _Rule 37(d)_. _See, e.g., Doe v. Mastoloni, 307 F.R.D. 305, 308 (D. Conn. 2015)_ (declining to impose sanctions under _Rule 37(d)_ where the party had served responses to discovery requests because "[t]he misconduct at which _subdivision (d)_ is directed consists of a party's *complete failure to respond*, by way of appearance, objection, answer, or motion for protective order, to a discovery request."); _see also_ Steven S. Gensler et al., General Provisions Governing Discovery, 1 Federal Rules of Civil Procedure, Rules and Commentary _Rule 37_ (February 2020) ("The prevailing view is that _Rule 37(d)_ is limited to instances of total non-compliance in discovery.").

c. **Sanctions under _§ 1927_ and the Court's Inherent Power**

---

[4] The Photograph depicts oysters from the Ariete restaurant, and was posted on the Ariete restaurant Facebook page. Plaintiff argues that Defendant intentionally omitted the document from its productions because Defendant improperly acquired the Photograph through the Ariete restaurant Facebook page.

Defendant moves for sanctions under _§ 1927_ and the Court's inherent powers. Defendant's arguments are persuasive; sanctions are appropriate.

i. **Legal Standard**

Under _§ 1927_, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." _28 U.S.C. § 1927_. To impose sanctions under _§ 1927_, "the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the [*14] party acted for improper purposes." _Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 79 (2d Cir. 2000)_; _accord Zurich Am. Ins. Co. v. Team Tankers A.S., 811 F.3d 584, 591 (2d Cir. 2016)_ (Sanctions under _§ 1927_ are proper only when the attorney's actions are "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."). "Bad faith is the touchstone of an award under this statute." _Revson, 221 F.3d at 79_; _accord Virginia Props., LLC v. T-Mobile Ne. LLC, 865 F.3d 110, 113 (2d Cir. 2017)_. "Unlike [other] sanctions which focus on particular papers, the inquiry under _§ 1927_ is on a course of conduct." _Estate of Shaw v. Marcus, No. 14 Civ. 3849, 2017 U.S. Dist. LEXIS 29760, 2017 WL 825317, at *5 (S.D.N.Y. Mar. 1, 2017)_.

A district court also possesses inherent authority "to fashion an appropriate sanction for conduct which abuses the judicial process." _Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178, 1186, 197 L. Ed. 2d 585 (2017)_ (internal quotation marks omitted). Before doing so, a court must make a finding of bad faith similar to that required under _§ 1927_. _See Enmon v. Prospect Capital Corp., 675 F.3d 138, 143 (2d Cir. 2012)_ ("The showing of bad faith required to support sanctions under _28 U.S.C. § 1927_ is similar to that necessary to invoke the court's inherent power."). "Because of their very potency, inherent powers must be exercised with restraint and discretion." _Chambers v. NASCO, Inc., 501 U.S. 32, 44, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)_. "[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the [Federal Rules of Civil Procedure or a specific statute], the court ordinarily should rely on the Rules rather than the inherent power." _Id. at 50_. But, "[e]ven if the [*15] Federal Rules or a statute provides an adequate basis for imposing sanctions, a court still may resort to its inherent power as the source of the sanctions . . . ." _Mathias v. Jacobs, 167 F.Supp.2d 606, 623 (S.D.N.Y._

2001); *accord Otto v. Hearst Commc'ns, Inc., No. 17 Civ. 4712, 2019 U.S. Dist. LEXIS 35051, 2019 WL 1034116, at *7 n.3 (S.D.N.Y. Feb. 21, 2019)*.

ii. **Analysis**

Mr. Liebowitz's decision to affix Plaintiff's electronic signature to the Verification of the Interrogatory Responses, without consulting Plaintiff regarding either the contents of the Interrogatory Responses or the use of Plaintiff's signature on the Verification, was undisputedly a violation of *Federal Rule of Civil Procedure 33(b)*. That rule requires an interrogatory to "be answered . . . by the party to whom they are directed," *Fed. R. Civ. P. 33(b)(1)(A)*, and "must, to the extent it is not objected to, be answered separately and fully in writing under oath." *Fed. R. Civ. P. 33(b)(3)*. Clear evidence shows that Mr. Liebowitz's and his firm's actions to the contrary were "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Zurich Am. Ins. Co., 811 F.3d at 591*; *Wilson v. Citigroup, N.A., 702 F.3d 720, 724 (2d Cir. 2012)*.

Plaintiff's Verification was entirely misleading; although the Verification indicated otherwise, Plaintiff had not in fact "read Plaintiff's Answers and Objections to Defendant's First Set of Interrogatories, dated June 7, 2019" and did not, through the signature, verify that he "kn[e]w the contents **[*16]** thereof, and [that] the same are true and accurate to the best of [his] knowledge, information and belief." Mr. Liebowitz knew the Verification was misleading when it was created, and did not attempt to rectify the error by having Plaintiff review the Interrogatory Responses retroactively. Instead, the fact that Plaintiff had not answered, reviewed or verified the Interrogatory Responses was revealed to both Defendant and Plaintiff himself through Defendant's inquiries at Plaintiff's deposition. Because the creation of the Verification is completely without merit, bad faith "may be inferred." *In re 60 E. 80th St. Equities, Inc., 218 F.3d 109, 116 (2d Cir. 2000)*; *accord Craig v. UMG Recordings, Inc., 380 F. Supp. 3d 324, 339 (S.D.N.Y. 2019)* (observing, in awarding sanctions pursuant to *§ 1927* and the court's inherent power against Mr. Liebowitz and his law firm, that "bad faith can be inferred if the action is completely without merit. . . . Such is the case here."). That, in combination with (1) the admission that it is LLF's practice to not serve required *Rule 33(b)(5)* verifications at all unless they are requested, (2) LLF's failure even to ask its client for documents responsive to Defendant's requests for production until after the deadline for production had

passed, and (3) Mr. Liebowitz's history of similar discovery misconduct in **[*17]** this District, provide clear evidence of a course of conduct taken in bad faith pursuant to which sanctions under *§ 1927* and the Court's inherent powers are appropriate.

Plaintiff cites several cases in support of his argument that sanctions cannot be sustained when an attorney's action was nothing more than the result of poor legal judgment. But here, Mr. Liebowitz's actions cannot be explained as poor legal judgment because there was no basis to believe that this conduct had a colorable basis. *Cf. In re Bradley, 495 B.R. 747, 793 (Bankr. S.D. Tex. 2013)* ("If instructing one's legal assistant . . . to forge clients' signatures on the Schedules and the Statements of Financial Affairs that the attorney knows to be inaccurate—and then to file them—does not constitute bad faith, then nothing does." (emphasis removed)).

Plaintiff's opposition does not assert that his signature was affixed to the Verification in error. Rather, Mr. Liebowitz states in his declaration that he directed that the Verification be prepared with Plaintiff's electronic signature, obtained from the engagement letter, based on his "good faith understanding at the time that [he] had authority and power of attorney to do so, as [he] is charged to act in [Plaintiff's] best interests." **[*18]** [5] Plaintiff argues that LLF's conduct amounted to excusable neglect based on a number of factors, including (1) Plaintiff's relationship with his counsel, i.e. that his engagement letter with LLF grants LLF the power of attorney to act in Plaintiff's best interests and that LLF had Plaintiff's implied authority to affix his electronic signature to routine discovery-related documents; (2) LLF's practice of anticipating discovery requests based on past practice; (3) service of the Superseding Interrogatory Responses; (4) *New York's General Obligations Law § 5-1507(1)*, which permits attorneys to sign documents on behalf of their clients; (5) the absence of prejudice to Plaintiff or Defendant; and (6) LLF's "unprecedented volume of cases on the docket which has produced administrative burdens."[6]

---

[5] The parties dispute whether the use of Plaintiff's electronic signature on the Verification amounts to "forgery." The Court need not address this argument, since it is irrelevant to the final holding.

[6] The full list of factors is: "(a) LLF's longstanding and successful attorney-client relationship with Mr. Wisser based on mutual trust; (b) LLF's engagement letter with Mr. Wisser which grants LLF the power of attorney to act in Mr. Wisser's best interests; (c) LLF's contingency-fee arrangement with

Exhibit B

These factors are not credible explanations or justifications for Mr. Liebowitz's conduct. Plaintiff cites no legal authority for the proposition that an attorney may affix a client's signature to the client's sworn statement without express authorization where the attorney knew the statement was false -- regardless of whether the representation agreement granted power of attorney or the client retroactively asserts the attorney had implied authority. **[*19]** Even the New York regulation to which Plaintiff cites provides that an agent acting pursuant to a power of attorney must disclose that relationship when signing on behalf of the principal. *See N.Y. Gen. Oblig. Law § 5-1507(1)(a)(1)-(3)* ("[W]here the agent is acting pursuant to a power of attorney and where the hand-written signature of the agent or principal is required, the agent shall disclose the principal and agent relationship . . .") The behavior is also not excused by LLF's practice to procure information and documents at the outset of a lawsuit based on their "well-founded anticipation of discovery requests", LLF's practice not to serve *Rule 33(b)(5)* verifications at all unless they are requested, or LLF's repeated references to the sheer volume of cases that LLF is handling. As another court in this District recently observed,

> [T]his not the first time that Mr. Liebowitz has gotten into difficulty in this Court for what at best often is a slap dash approach to pursuing the enormous volume of cases of this nature that he has filed. A "mere oversight" that happens once or twice is one thing[.] A pattern of discovery and related abuse is quite another, and rings of deliberate indifference to an attorney's obligation to behave in a **[*20]** professional, responsible, and competent manner in

---

Wisser (which guarantees that LLF will act at all times in Wisser's best interest); (d) LLF's pre-filing due diligence concerning Mr. Wisser's claim; (e) LLF's well-founded anticipation of discovery requests based on past practice and seasoned 'templates,' (f) Mr. Wisser's ratification of his initial responses to Vox's written requests by service of superseding responses pursuant to *Rule 26(e)*; (g) Mr. Wisser's acknowledgment that Liebowitz had his implied authority to affix his electronic signature to routine discovery-related documents; (h) *New York's General Obligations Law § 5-1507(1)* (McKinney), which permits attorneys to sign documents on behalf of their clients; (i) the significant absence of any prejudice whatsoever to Mr. Wisser or Vox; and (j) LLF's unprecedented volume of cases on the docket which has produced administrative burdens (none of which should be regarded as bad faith in light of LLF's commitment to vindicating the public interest through prosecution of meritorious claims)."

each and every case he handles. And if the attorney has filed a deluge of cases, such that his workload is too great to discharge that obligation, the volume of cases must be reduced to a number that may be managed responsibly or the number of responsible and competent attorneys tasked with handling it must be increased.

*Sands, 2019 WL 4464672, at *6* (imposing sanctions on Mr. Liebowitz for failure to disclose in discovery information relating to the licensing of plaintiff's allegedly infringed photos where plaintiff had knowledge of such information); s*ee also Polaris Images Corp. v. CBS Interactive, Inc., No. 19 Civ. 3670, 2019 WL 5067167, at *3 (S.D.N.Y. Oct. 9, 2019)* ("[G]iven the frequency with which Mr. Liebowitz commits 'administrative errors,' the undersigned is unconvinced that they are indeed good faith oversights."); *Rice, LLC, 2019 WL 3000808, at *3-4* (imposing sanctions against Mr. Liebowitz pursuant to the court's inherent authority for failure to comply with court orders and because Mr. Liebowitz's "failure to comply is not isolated but rather part of a pattern of non-compliance in this case and others . . . in which Liebowitz has been sanctioned for failing to comply with court orders and for failing to produce materials during discovery" (citing cases)); *see generally Gollomp v. Spitzer, 568 F.3d 355, 369 (2d Cir. 2009)* (stating that a court **[*21]** may take judicial notice of other courts' rulings in making a finding of bad faith). Finally, Plaintiff's assertion that Defendant was not prejudiced is unavailing where prejudice is not required for sanctions under *§ 1927* or the Court's inherent power. *Revson, 221 F.3d at 79*. Plaintiff cites to no legal authority showing otherwise.

Plaintiff also argues that Defendant has failed to make a clear showing that LLF's actions were motivated by any specific improper purpose. But, as another court in this District noted recently on another motion for sanctions against Mr. Liebowitz, there is no requirement "to specifically identify an improper purpose" in order to infer the bad faith required for the imposition of sanctions under *28 U.S.C. § 1927*. *Craig v. UMG Recordings, Inc., No. 16 Civ. 5439, 2019 WL 2992043, at *2 (S.D.N.Y. July 9, 2019)*. "To infer bad faith, in other words, a court is required only to conclude that an attorney's actions are completely colorless, and not to identify a particular improper purpose behind those actions." *Id.* (citing *New York v. Operation Rescue Nat'l, 80 F.3d 64, 72-73 (2d Cir. 1996))*.

Finally, Plaintiff argues that a violation of *Rule 33* does not warrant sanctions because (1) some courts do not

Exhibit B

require strict compliance with *Rule 33(b)(5)*, and (2) where a party violates *Rule 33*, courts instead typically order the offending party to cure the defect without the imposition of sanctions. The **[*22]** cases cited in support of these arguments, however, are inapposite and not binding on this Court. In any event, that some courts in the particular circumstances of another case may not require strict compliance with *Rule 33*, or may order a different form of relief, does not compel the same conclusion in the particular, egregious circumstances of this case.

d. **Appropriate Sanctions**

Defendant requests that the Court order monetary sanctions in the form of costs and fees it has previously incurred in discovery thus far, an order compelling Plaintiff to appear for a second deposition to address the Superseding Interrogatory Responses, and -- in its reply --dismissal of the case. Plaintiff counters that no sanctions are appropriate but, to the extent the Court imposes sanctions, they should not exceed the sum of either $750.00 or $100.00. Plaintiff also requests that the Court order Defendant to pay Plaintiff's attorneys' fees in connection with this motion.

"Disciplinary sanctions under *Rule 37* are intended to serve three purposes. First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order **[*23]** issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault." *Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 71 (2d Cir. 1988)*; *accord Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC, No. 16 Civ. 1318, 2019 WL 4727537, at *28 (S.D.N.Y. Sept. 26, 2019)*. "[W]hether and to what extent to impose sanctions 'is committed to the sound discretion of the district court and may not be reversed absent an abuse of that discretion.'" *Borsanyi, 2019 WL 4911188, at *6* (quoting *Luft v. Crown Publishers, Inc., 906 F.2d 862, 865 (2d Cir. 1990))*. "[A] District Court has broad discretion in fashioning an appropriate sanction" for discovery violations. *Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 101 (2d Cir. 2002)*. Under *Rule 16*, "[i]nstead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses

unjust." *FED. R. CIV. P. 16(f)(2)*. A court may also impose monetary or other sanctions under its inherent power. *See, e.g., Steeger v. JMS Cleaning Servs., LLC, No. 17 Civ. 8013, 2018 U.S. Dist. LEXIS 42797, 2018 WL 1363497, at *3 (S.D.N.Y. Mar. 15, 2018)* (imposing a $2,000 monetary sanction on Mr. Liebowitz and ordering the completion of continuing legal education coursework in ethics and professionalism under the court's inherent power).

Here, the following sanctions are appropriate: Mr. Liebowitz and his firm[7] shall pay the **[*24]** reasonable attorneys' fees incurred by Defendant because of LLF's failure to comply with this Court's Scheduling Order under *Rule 37(b)* and *16(f)*. Mr. Liebowitz and his firm are also sanctioned $5,000 under the Court's inherent power, which shall be paid to the Clerk of Court by April 10, 2020. Mr. Liebowitz shall further provide proof to this Court by April 17, 2020 that LLF's policy and practice has been changed to require compliance with *Rule 33(b)(5)*. Finally, Defendant may reopen Plaintiff's deposition for a period not to exceed 90 minutes solely to address the Superseding Interrogatory Answers due to LLF's violation of *Rule 33(b)(5)* and, if Defendant elects to do so, LLF shall also pay Defendant's reasonable attorneys' fees and expenses for the time spent at the deposition pursuant to *§ 1927* and this court's inherent power. Dismissal is not warranted as there is no evidence that the Plaintiff (as distinguished from his counsel) has acted in bad faith. *See Valentine v. Museum of Modern Art, 29 F.3d 47, 49 (2d Cir. 1994)* (holding that dismissal should only be used in situations where the *litigant* has acted in bad faith).

Defendant's letter motion to compel Plaintiff to post a bond is denied with leave to renew if additional evidence comes to light regarding the merits of the underlying **[*25]** claim or Plaintiff's financial condition. Plaintiff's request for the Court to order Defendant to pay Plaintiff's attorneys' fees in connection with this motion is denied.

---

[7] "Because Liebowitz's 'actions were indistinguishable from those of [the Liebowitz Law Firm PLLC] as a firm,' the Court [imposes sanctions] against both Liebowitz and the Liebowitz Firm PLLC, jointly and severally." *Craig v. UMG Recordings, Inc., 380 F. Supp. 3d 324, 339 (S.D.N.Y. 2019)* (citation omitted) (quoting *Enmon v. Prospect Capital Corp., 675 F.3d 138, 148 (2d Cir. 2012))*; *accord Rock v. Enfants Riches Deprimes, LLC, No. 17 Civ 2618, 2020 WL 468904, at *4 (S.D.N.Y. Jan. 29, 2020)*.

Exhibit B

2020 U.S. Dist. LEXIS 57705, *25

**III. CONCLUSION**

For the reasons herein, Defendant's motion for sanctions is GRANTED in part. Defendant shall inform the Court whether it intends to re-open Plaintiff's deposition by April 10, 2020 and Defendant shall file a motion for attorneys' fees by April 17, 2020. Mr. Liebowitz and LLF shall file proof of payment of $5,000 to the Clerk of Court by April 14, 2020 and file proof that LLF's policy and practice has been changed to require compliance with *Rule 33(b)(5)* by April 17, 2020. Plaintiff's application to strike Docket No. 60 is denied as moot. An amended Case Management Plan and Scheduling Order shall issue separately.

The Clerk of Court is respectfully directed to close the motions at Docket Nos. 22 & 35.

Dated: April 1, 2020

New York, New York

/s/ Lorna G. Schofield

**LORNA G. SCHOFIELD**

**UNITED STATES DISTRICT JUDGE**

---

End of Document

Rani Jailall

Exhibit B