Case 3:20-cv-05262-TKW-EMT   Document 9-3   Filed 04/27/20   Page 1 of 33
Case 7:18-cv-08956-CS   Document 62   Filed 01/02/20   Page 1 of 33

1

Exhibit C

```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2
    -------------------------------------x
 3  JASON BERGER,

 4                          Plaintiff,

 5                          Case No. 18-cv-08956-CS
         -vs-
 6
    IMAGINA CONSULTING, INC.,
 7
                          Defendant.
 8
    -------------------------------------x
 9
                            United States Courthouse
10                          White Plains, New York

11                          November 13, 2019
                            10:00 a.m.
12

13  B e f o r e :
                            HONORABLE CATHY SEIBEL
14
                            District Judge
15

16  A P P E A R A N C E S :

17  LIEBOWITZ LAW FIRM, PLLC
         Attorneys for Plaintiff
18  BY:  RICHARD LIEBOWITZ

19
    No Appearance for Defendant
20
    NEWMAN & GREENBERG, LLP
21       Attorneys for Mr. Liebowitz
    BY:  RICHARD A. GREENBERG
22       WILLIAM DOBIE

23

24

25
```

Case 3:20-cv-05262-TKW-EMT   Document 9-3   Filed 04/27/20   Page 2 of 33
Case 7:18-cv-08936-CS   Document 62   Filed 01/02/20   Page 2 of 33

PROCEEDINGS                                                    2

1              THE DEPUTY CLERK:  The Honorable Cathy Seibel

2     presiding.  Berger versus Imagina Consulting.

3              THE COURT:  Good morning, Mr. Greenberg.

4              MR. GREENBERG:  Good morning, Judge.

5              THE COURT:  And Mr. Dobie.

6              MR. DOBIE:  Good morning.

7              THE COURT:  And Mr. Liebowitz.  Everyone can have a

8     seat.

9              I just want to, before we get started, put on the

10    record a couple of things.  I got a letter from Mr. Greenberg

11    yesterday.  It's dated the 11th.  It arrived in my chambers on

12    the 12th, and Mr. Greenberg requested that it be filed under

13    seal to protect the confidentiality of intimate personal

14    details, and my chambers advised Mr. Greenberg that I wasn't

15    going to file it yesterday.  I would allow him to tell me what

16    he thinks should be redacted, but in my view, there is very

17    little in here that should be redacted.  It's a judicial

18    document.  There is a presumption that it's public.  There are a

19    few things in the attachments that I think are properly redacted

20    such as home addresses, social security numbers, things like

21    that; but most of this is going to be public, and it's going to

22    be public today, but I will at the end tell counsel what I think

23    should be redacted and hear any further requests for redaction.

24             The other thing I wanted to put on the record is that

25    I got an email directly to me from somebody who didn't give his

Exhibit C

Case 3:20-cv-05262-TKW-EMT    Document 9-3    Filed 04/27/20    Page 3 of 33
Case 7:18-cv-08336-CS    Document 62    Filed 01/02/20    Page 3 of 33

PROCEEDINGS                                                    3

```
 1  or her real name, and who I don't know, with I guess what I will
 2  call some suggestions about how I might want to handle this
 3  matter and with a spreadsheet attached, which I did not open,
 4  and a bunch of links attached to other cases involving
 5  Mr. Liebowitz, which I did not click on; but I am going to ask
 6  my courtroom deputy to hand Mr. Greenberg a copy of it because I
 7  think it's only fair since it came to my attention.  If you see
 8  what's in it, but I am not going to give it any weight
 9  whatsoever.  I will give you a moment to take a look at it.  But
10  I am disregarding it.
11          I redacted out the email address from which it came
12  because the person asked to remain anonymous, actually asked me
13  not even to share this document, but, you know, when you try to
14  influence a judge, you run the risk that it might not stay
15  private.  And I reiterate, I have disregarded this completely.
16          All right.  So I have Mr. Greenberg's letter.  I am
17  glad that my most recent order to show cause got Mr. Liebowitz's
18  attention.  I remain baffled as to why it took so long, and I
19  had some questions, since one of the things that I am being
20  asked to do is vacate the contempt orders, and nobody has to
21  answer them if they don't want to if they feel it will make
22  things worse or incriminate or whatever; but although it was a
23  very well-crafted letter, it was peculiar in certain ways.  One
24  of which is in the letter, Mr. Greenberg, you sort of speculate
25  about the reasons why it may have happened that Mr. Liebowitz
```

Exhibit C

Case 3:20-cv-05262-TKW-EMT   Document 9-3   Filed 04/27/20   Page 4 of 33
Case 7:19-cv-08336-CS   Document 62-9   Filed 01/02/20   Page 4 of 33

PROCEEDINGS                                               4

 1  represented that his grandfather had passed away on April 12th

 2  when it was clearly on April 9th, and that sort of speculation

 3  is the sort of thing I would expect from someone who didn't have

 4  access to the real answer.  You've got a client.  I take it --

 5  and he has absolutely no obligation to tell me why he -- I am

 6  going to say lied because that's what he did, and I will make

 7  clear in a moment why I am convinced of that fact.  Am I correct

 8  that your client doesn't want to say why he lied?  I get he

 9  doesn't have to, but it's always nice to have the thoughts of a

10  well-regarded member of the Bar, but it's even better to have

11  the facts.

12              MR. GREENBERG:  May I address the Court?

13              THE COURT:  Absolutely.

14              MR. GREENBERG:  You know, the word "lie," those are

15  harsh words.

16              THE COURT:  Yes.

17              MR. GREENBERG:  And because it connotes an intentional

18  falsehood --

19              THE COURT:  Yes.

20              MR. GREENBERG:  -- which would be a serious matter.

21              THE COURT:  Yes.

22              MR. GREENBERG:  I don't know the answer, and I thought

23  long and hard about how to phrase it to Your Honor and what

24  reaction Your Honor would have.  I speculated that you might

25  even take it amiss; you might be annoyed, trying to straddle the

Exhibit C

Case 3:20-cv-05262-TKW-EMT   Document 9-3   Filed 04/27/20   Page 5 of 33
Case 7:18-cv-08896-CS   Document 62   Filed 01/02/20   Page 5 of 33
PROCEEDINGS                                                    5

1   situation.  I certainly would not want to concede -- I don't

2   think my client would concede that he lied, meaning an

3   intentional false statement, but Your Honor of course will draw

4   her own inferences.  I did think from my reading of Your Honor's

5   orders, the last one in particular, that you had a suspicion

6   that there was no death in the family, and you couldn't

7   understand -- it was bolstered by the fact that you could not

8   understand why he wouldn't produce a document.  I share your

9   mysticism -- your mystification, if that's a word.  I think it

10  is.

11         THE COURT:  Well, it seems pretty obvious because if

12  he produced the document, it would reveal the lie because the

13  lie was:  I didn't show up on April 12th because that morning I

14  learned of a death in the family, and showing the death

15  certificate from April 9th would reveal that lie.

16         MR. GREENBERG:  Of course it would reveal the fact of

17  when the death occurred.  And as I say, a lie is such a harsh

18  word.

19         THE COURT:  I don't use that term lightly.

20         MR. GREENBERG:  I am sure that's true, Your Honor,

21  from all that I have read, and the little I know of you, and

22  about you, and I have heard about you, you wouldn't use it

23  lightly, but I do think that Mr. Liebowitz was, you know, in a

24  daze.

25         Precisely because it was seemingly -- seemingly to

Exhibit C

Case 3:20-cv-05262-TKW-EMT Document 9-3 Filed 04/27/20 Page 6 of 33
Case 7:18-cv-08596-CS Document 62-9 Filed 01/02/20 Page 6 of 33

PROCEEDINGS                                          6

1   me -- so insignificant whether his grandfather died on the 9th

2   or the 12th.  Either way, Your Honor, I am sure, would have

3   understood the impact and the necessity for various traditions

4   to be observed.  It was mystifying to me to have it -- I could

5   not really view it as an intentional false statement, a lie,

6   because it just seemed totally bizarre and insignificant, and

7   why would he when -- when the truth was really no different

8   virtually.

9           And now it's possible that somebody, Mr. Liebowitz in

10  particular, could have believed that the death of a loved one on

11  the very date of the conference might have been more impressive,

12  have a bigger impact on Your Honor than a death three days ago,

13  but Your Honor knows from being a federal judge and an assistant

14  in this district for years and years.  Now there are traditions

15  and customs that are observed for at least six or seven days

16  after a death, and I am sure Your Honor would have understood

17  that a court appearance just was not on his mind, as it should

18  have been, after the death of his grandfather three days before

19  the Court appearance.  Why he didn't call?  Well, you are really

20  not supposed to be doing business on the phone.  I still am

21  mystified why nobody called.  It's inexcusable.

22          THE COURT:  Well, that was one of my questions.  In

23  your letter you represented Mr. Liebowitz employs a staff of 12,

24  two of whom are lawyers, including an associate with large

25  commercial firm experience.  If indeed, Mr. Liebowitz were out

Exhibit C

Case 3:20-cv-05262-TKW-EMT Document 9-3 Filed 04/27/20 Page 7 of 33
Case 7:18-cv-08596-CS Document 62-9 Filed 01/02/20 Page 7 of 33

PROCEEDINGS                                                    7

```
 1   of the office for a death in the family, it seems like a very

 2   simple matter for somebody, lawyer or not, to alert the parties

 3   involved in Mr. Liebowitz's commitments of the events; but you

 4   are also right that if Mr. Liebowitz had said after the fact, my

 5   grandfather died on April 9th, and I was observing a period of

 6   mourning for seven days, that would have -- we wouldn't be here.

 7            MR. GREENBERG:  Yes.

 8            THE COURT:  That would have been completely

 9   acceptable, but you said a couple of things I want to delve into

10   a little more.  You said he was in a daze.  Let's suppose after

11   a death in the family, as one might be, you were in a daze for a

12   while.  Mr. Liebowitz doubled down and quadrupled down and

13   octupled down on the misrepresentation for a period of six

14   months.  He wasn't in a daze that whole time.  So even if the

15   initial misrepresentation, which was first made on April 15th,

16   was the result of a daze, it is completely implausible that the

17   daze continued up until the last time Mr. Liebowitz tried to

18   weevil his way out of the problem, which was October.

19            So a daze after a death of course is understandable,

20   and, you know, sometimes a death is so devastating that people

21   do fall into a dysfunctional state; and maybe that lasts for a

22   long time, but that's plainly not the case here.  Indeed, it

23   doesn't even appear from the docket in this very case that

24   Mr. Liebowitz was observing a seven-day period of mourning and

25   not using the phone or electronics, and the reason I say that is
```

Exhibit C

Case 3:20-cv-05262-TKW-EMT Document 9-3 Filed 04/27/20 Page 8 of 33
Case 7:18-cv-08596-CS Document 62-9 Filed 01/02/20 Page 8 of 33

PROCEEDINGS                                                    8

1 because the death certificate says his grandfather died on

2 April 9th at 10:20 in the morning.  On April 9th at 6:34 in the

3 evening I got a letter from Mr. Liebowitz, filed on the ECF

4 system.  Sorry, 6:43 p.m., docket entry 30.

5          And then when Mr. Liebowitz didn't appear at the

6 April 12th conference, and I issued the order to show cause on

7 that day, which was a Friday, on Monday, the 15th, I got a

8 letter from Mr. Liebowitz saying, I am sorry I didn't show up.

9 "I had a death in the family.  It was an unexpected urgent

10 matter I needed to attend to."

11          So I got at least two letters from Mr. Liebowitz

12 during the period of mourning during which he is supposed to be

13 off the phone and electronics.  So I don't think you are

14 representing to me that Mr. Liebowitz was not working during

15 that seven-day period, and I mean no disrespect.  Everybody has

16 their own way of honoring their religious beliefs in their own

17 way, and I am not suggesting there is anything wrong with

18 working during the seven-day period.  Lots of us disregard the

19 rules that the most observant people would follow.

20          That's not my point.  My point is:  If you are going

21 to say, oh, these things happened because I was off the grid for

22 seven days, then you need to explain why during the seven days

23 you were on the grid in my case at least twice, and I don't know

24 if Mr. Liebowitz was on the grid in other cases during that

25 period, either, but he wasn't in too much of a daze to either

Exhibit C

Case 3:20-cv-05262-TKW-EMT   Document 9-3   Filed 04/27/20   Page 9 of 33
Case 7:19-cv-08356-CS   Document 62   Filed 01/02/20   Page 9 of 33

PROCEEDINGS                                                    9

 1  get a letter out to me the night of his grandfather's passing or

 2  to send me a letter the Monday after he didn't show up for the

 3  conference with the false explanation.

 4          So I am not really buying that he was observing the

 5  traditions or was in a daze, even during the seven days, but

 6  certainly not through the next six months or so.  So I think to

 7  the extent that grief is the excuse, it only gets you so far.

 8          MR. GREENBERG:  Yes, Your Honor.  If I may just inject

 9  something in response quickly?

10          THE COURT:  Yes, of course.

11          MR. GREENBERG:  I am led to believe that

12  communications with chambers initially, the ones you referred to

13  even late in the same day were by his associate, his more

14  experienced associate.

15          THE COURT:  Well, the letter of April 9th and of

16  April 15th purported to be from Mr. Liebowitz.

17          MR. GREENBERG:  Yes.

18          THE COURT:  They had his signature on them.  They were

19  filed under his ECF password.  That's a representation under

20  Rule 11 that he has reviewed it and everything in it is Kosher.

21  If --

22          MR. GREENBERG:  Quite right.

23          THE COURT:  If he is letting people use his ECF

24  password and sign things, and he doesn't undertake the review

25  required by Rule 11, that's a whole separate problem.

Exhibit C

Case 3:20-cv-05262-TKW-EMT   Document 9-3   Filed 04/27/20   Page 10 of 33
Case 7:15-cv-08556-CS   Document 62   Filed 01/02/20   Page 10 of 33
PROCEEDINGS                                                    10

 1         MR. GREENBERG:  Yes.  I am afraid anything I raise

 2  will open other doors, so I think --

 3         THE COURT:  One, as I said at the beginning, you don't

 4  have to answer any of my questions, but I am being asked to do

 5  something, which is vacate a contempt finding, and I have

 6  questions.  You don't have to answer them.

 7             Another thing that wasn't addressed in the letter is,

 8  you know, one of the worst facts I think for Mr. Liebowitz,

 9  which is why, when I asked for the death certificate, he didn't

10  produce it or when I asked for documentation, which occurred on

11  April 18th at the discovery conference where defense counsel

12  made a plausible case that Mr. Liebowitz had been lying to him

13  with some regularity, and you know, my memory -- I don't have a

14  transcript of it -- but my memory is that at the beginning of

15  the conference, I expressed my sympathies to Mr. Liebowitz --

16  and this was a phone conference -- and said something to the

17  effect of, I understand, but you could have picked up the phone.

18  Anyway, let's get on with the conference, and in the course of

19  the conference, as I said, defense counsel made the case that

20  Mr. Liebowitz had been dishonest for him -- with him, and I

21  think it was at the point where defense counsel mentioned that

22  Mr. Liebowitz had said to defense counsel that he had an

23  emergency out of the country; but defense counsel had learned

24  that it was actually a trade show where Mr. Liebowitz was

25  drumming up business -- this is defense counsel's words, and

Exhibit C

Case 3:20-cv-05262-TKW-EMT Document 9-3 Filed 04/27/20 Page 11 of 33
Case 7:15-cv-08536-CS Document 62 Filed 01/02/20 Page 11 of 33
PROCEEDINGS                                                    11

1    maybe not exact words -- that I began to be suspicious, and I

2    said, you know what?  I am going to require Mr. Liebowitz to

3    provide some documentation of the emergency that caused him to

4    be absent on April 12th.

5         Somebody who didn't believe he was lying would

6    immediately go out and get that documentation, and then one of

7    two things would happen:  Either that person would say, oh, my

8    God, I misrepresented the date and would have immediately

9    corrected it, or would have said, hum, I am busted in my lie.  I

10   am going to try to put this off for as long as possible so I

11   don't get in trouble.  And it seems like it was number two.

12        Just let me pause for a moment.  I have a jury out in

13   another case.  All right.  You know the drill.

14        MR. GREENBERG:  Do you need to take a recess?

15        THE COURT:  I don't need to immediately.  The defense

16   lawyers who are here will get the note in a minute.  They want

17   to see Mr. Evangelista's testimony about the escape.  That's

18   what they are asking for.  Okay.

19        MR. GREENBERG:  And, Your Honor, at the moment, I

20   would like to just add a word.

21        THE COURT:  Please.

22        MR. GREENBERG:  You know, the very -- what's the right

23   word?  The very lunacy of it shows that Mr. Liebowitz was really

24   not playing with a full deck at the time.  I mean, the notion

25   that he wouldn't produce to you what I think might have

Exhibit C

Case 3:20-cv-05262-TKW-EMT   Document 9-3   Filed 04/27/20   Page 12 of 33
Case 7:15-cv-08536-CS   Document 62   Filed 01/02/20   Page 12 of 33
PROCEEDINGS                                         12

1  satisfied you that he was telling the truth, maybe off by three

2  days about when the death occurred, but I can't really answer

3  that.  I don't think Mr. Liebowitz -- but he never really did

4  see, as I understand it -- I would have to caution -- I mean,

5  some things I have corroborated for myself, but he never really

6  saw the death certificate until, you know, he got a hold of me,

7  retained me.

8             THE COURT:  Right.  But when the judge asks you for

9  documentation, you either have to -- you have to do one of two

10 things:  You either have to comply with the order or you have to

11 go -- you have to disregard the order.  And the only thing I can

12 think of as to why Mr. Liebowitz disregarded it again and again

13 and again and again is because he knew what it would reveal, and

14 what he tried to do is make it go away by dropping the case.

15            MR. GREENBERG:  I do --

16            THE COURT:  And then when it didn't go away by

17 dropping the case, instead of taking one of the dozen

18 opportunities to say, okay, I exaggerated.  It wasn't --

19            MR. GREENBERG:  The 12th.

20            THE COURT:  -- the 12th, it was the 9th, he doubled

21 down, tripled down, quadrupled down, octupled down.  I don't

22 even know what would come after that.

23            The other thing that is not addressed in the letter is

24 that Mr. Liebowitz failed to comply with my order of contempt,

25 and that was at the end of September, and he kept putting in

Exhibit C

Case 3:20-cv-05262-TKW-EMT   Document 9-3   Filed 04/27/20   Page 13 of 33
Case 7:15-cv-08556-CS   Document 62   Filed 01/02/18   Page 13 of 33
PROCEEDINGS                                                    13

 1  requests that I stay it without saying anything about why I

 2  should; and I kept saying, I am not staying it.  Every Monday

 3  you got to pay, and let's count how many Mondays went by before

 4  he paid.  One -- somewhere I have the math.  Oh, here it is.

 5  One, two, three, four, five, yesterday would have been the

 6  sixth, and I am told by the clerk that Mr. Liebowitz paid $3,700

 7  yesterday, although by my math, the number is 3,800; but when

 8  you start getting fined, and you know you are going to incur a

 9  fine every day until you comply, and you still don't comply, you

10  know, it's sure looks contemptuous.  Why should I vacate the

11  contempt finding?

12          MR. GREENBERG:  Judge, I am not disagreeing with

13  anything you say and the inferences you might draw, but you

14  might also draw the inference that you are dealing -- I am

15  dealing, we all are dealing -- with a young, inexperienced, in

16  some ways immature lawyer who's created a practice that

17  apparently has been very successful, and I have received a lot

18  of letters from photographers who say he was incredibly helpful,

19  and I have never seen a complaint.  Your --

20          THE COURT:  Well, I think some of my colleagues might

21  differ.

22          MR. GREENBERG:  Absolutely right.  There is a whole

23  string of them that have carefully written what their problem

24  was with Mr. Liebowitz, and I don't feel this is the place or

25  the reason why I should have to defend his entire practice.  I

Exhibit C

Case 3:20-cv-05262-TKW-EMT Document 9-3 Filed 04/27/20 Page 14 of 33
Case 7:15-cv-08556-CS Document 82 Filed 01/02/20 Page 14 of 33

PROCEEDINGS                                              14

1  hope that it won't color your view of Mr. Liebowitz.

2        THE COURT:  I mean, I don't really know much about the

3  other instances where Mr. Liebowitz has gotten in hot water.  I

4  don't think they involve what this case involves, which is

5  dishonesty, or at least I don't know enough about them to think

6  that they do.  But, to me, the whole issue why I question

7  Mr. Liebowitz's fitness to practice is the dishonesty and the

8  failure to own up to the dishonesty and the doubling and

9  quintupling and octupling down on the dishonesty; and as far as

10  I know, this case is unique in that regard.  I haven't heard of

11  other such situations.  If they are out there, I don't know

12  about them; and I am not really super sympathetic to the notion

13  that, you know, somebody is young and inexperienced and

14  therefore unaware that it's wrong to lie.  We all learn that as

15  children; and even if we don't, when we become lawyers, we learn

16  about our ethical responsibilities.

17        And, you know, Mr. Liebowitz has woven himself a very

18  tangled web of lies.  Would it have been better to come back to

19  me and say, I overstated it.  It wasn't the Friday I missed the

20  conference.  It was the Tuesday before.  I am sorry?

21  Absolutely.  We wouldn't be here.  And Mr. Liebowitz would be

22  going about his business, but over and over and over to say

23  something to a judge that you know isn't true, it strikes me as

24  a very serious matter.

25        MR. GREENBERG:  I'll just finish by saying, Your

Exhibit C

Case 3:20-cv-05262-TKW-EMT Document 9-3 Filed 04/27/20 Page 15 of 33
Case 7:19-cv-08556-CS Document 62 Filed 01/02/20 Page 15 of 33
PROCEEDINGS                                                    15

1    Honor, I believe Mr. Liebowitz has problems.  That's why I have

2    referred him to a competent analyst on Long Island who I have

3    spoken with, and he is going to undertake a course of treatment

4    that I hope will let him understand where this -- where this

5    irresponsibility comes from.

6              And second, I can only say any sort of dishonesty with

7    the Court is unpardonable, but I really do believe that this

8    particular dishonesty, if that's what we are calling it, is --

9    was not on a material fact.  I do not believe that Your Honor

10   would have treated anything differently had you known the

11   grandfather died on the 9th as opposed to the 12th, but I am

12   speculating, and I really don't want to beat a dead horse

13   anymore.

14             Everything you say has the ring of credibility and

15   wisdom about it.  I can't really quarrel with anything you are

16   saying except to say, you are dealing with somebody at the very

17   beginning of his career who happened upon an idea that has

18   apparently been lucrative under a statute that permits it and

19   has helped a lot of photographers whose works were being used by

20   commercial enterprises without their consent and without

21   compensation, violations of statute, and I included a letter

22   from the president of the New York Photo Journalist Association,

23   which is a reputable organization, who attests to it, and I have

24   other letters.

25             Yes, the judges of this district have been very

Exhibit C

Case 3:20-cv-05262-TKW-EMT   Document 9-3   Filed 04/27/20   Page 16 of 33
Case 7:15-cv-08556-CS   Document 62   Filed 01/02/20   Page 16 of 33

PROCEEDINGS                                                    16

1  displeased with Mr. Liebowitz and have said so in very striking

2  terms in a series of decisions.

3       As I say, Mr. Liebowitz has a lot to learn, and I have

4  ideas on how he should go about learning it.  God knows, I don't

5  know about copyright law, and I don't want to.  It sounds like

6  the practice that he has is very, very boring, and I have my

7  questions whether it was even practicing law, whether that is

8  law.  I hate to think so because I know some very wonderful,

9  smart intellectual property lawyers, but that was his business,

10 his practice.  It was successful up to a point despite the

11 bitter criticisms of him by a number of judges of your court and

12 despite the kinds of things you were saying quite correctly.

13      All I can say is, I'm led to believe that because it

14 would have been so easy to produce this document, although he

15 did mention, according to your order, that he felt it was very

16 personal.  I don't know what's so personal about a death

17 certificate, but his very -- his grandfather with whom he was

18 very close had just died, and he felt that entering the death

19 certificate in the public record, even though it is a public

20 document, was somehow desecrating the memory of his grandfather.

21 I don't know if that's credible to you, but --

22      THE COURT:  Well, it's particularly not after I said,

23 just give it to me.  It won't become public.

24      MR. GREENBERG:  He didn't even know how to do that,

25 Your Honor.  He didn't even know how to do that.

Exhibit C

Case 3:20-cv-05262-TKW-EMT Document 9 Filed 04/27/20 Page 17 of 33
Case 7:15-cv-08856-CS Document 62 Filed 01/02/20 Page 17 of 33

PROCEEDINGS                                                                17

 1            THE COURT:  Yes, anybody knows how to do that.  Put it
 2   in an envelope.  Put a stamp on it.
 3            MR. GREENBERG:  You would be amazed at what some young
 4   lawyers don't know.
 5            THE COURT:  Or send it to the chambers email box.
 6            MR. GREENBERG:  As I say, I don't want to beat a dead
 7   horse anymore.  You seem to have a strongly-held view.  I hope
 8   you take into account all of the circumstances, including that
 9   it was just three days apart, and thereafter, he continued to
10   maintain a date that he -- I would like to believe he thought
11   was the real date, and then he finally realized that -- and I
12   will just give you one small example.  His father, after I
13   submitted the papers, just yesterday his father called me to
14   say, no, he wasn't buried -- the grandfather wasn't buried the
15   same day.  It's on the birth -- it's on the death certificate
16   that he was buried that day, and I was told this by the funeral
17   home, and I was told it by your son.  He wrote back a little bit
18   later saying, My brain is fried.  His phrase, not mine.  I am
19   sorry.  You are right.  I don't know why I said it was the next
20   day.  So people get -- make a mistake about a date.
21            THE COURT:  And when people realize it, they correct
22   it.
23            MR. GREENBERG:  And the question is:  Did he realize
24   it and purposely fail to correct it?
25            THE COURT:  Absolutely.

Exhibit C

Case 3:20-cv-05262-TKW-EMT   Document 9-3   Filed 04/27/20   Page 18 of 33
Case 7:15-cv-08536-CS   Document 62   Filed 01/02/18   Page 19 of 33

PROCEEDINGS                                                          18

```
 1            MR. GREENBERG:  I know that's --

 2            THE COURT:  And I will tell you why.  I will tell you

 3  why I think that because I do think it's important that the

 4  record reflect it.

 5            MR. GREENBERG:  May I sit down?  I don't have anything

 6  more I can say --

 7            THE COURT:  Sure.

 8            MR. GREENBERG:  -- that's not in our papers.

 9            THE COURT:  And before I go to the topic I just

10  mentioned, I want to say two things:  One is, I did read the

11  letter from the New York Press Photographers Association.  I

12  think there might be a page missing.

13            MR. GREENBERG:  He said -- I realized that after I

14  submitted it.  I have the actual letter.  We sent it.

15  Mr. Cutler re-sent it.  I have it here, and I will happy to hand

16  it up.

17            THE COURT:  I mean, there was either a line or a page

18  you think because --

19            MR. GREENBERG:  I couldn't tell, but --

20            THE COURT:  -- the second page started in mid

21  sentence, but I am happy to look at the complete version, but I

22  got the gist.

23            MR. GREENBERG:  I thought you would, and that's -- but

24  I do have it.  I will give it to your --

25            THE COURT:  Well, at some point, you know, we will
```

Exhibit C

Case 3:20-cv-05262-TKW-EMT Document 9-3 Filed 04/27/20 Page 19 of 33
Case 7:15-cv-08536-CS Document 62 Filed 01/02/18 Page 19 of 33

PROCEEDINGS                                                    19

1    file this, and if you want to give me the complete version, we

2    can do that.

3           And the other point I wanted to make is the

4    suggestions you made in your letter regarding remedial efforts

5    that Mr. Liebowitz might take, not only getting some

6    professional help himself, but seeking guidance on managing a

7    law firm and the like, I think are excellent ideas.

8           My understanding of the problems that my colleagues

9    have had go more to case management than to the problem I see

10   here; but, you know, I am convinced beyond a reasonable doubt,

11   frankly, that this was not inadvertent, and I use the word "lie"

12   for the following reasons, among others:  First of all, the

13   matter that led me to schedule the April 12th conference had to

14   do with discovery in the case.

15          Mr. Liebowitz had responded on behalf of his client to

16   an interrogatory asking what the basis was for his claim of

17   $5,000 in damages, which was, to my recollection, the central

18   interest -- issue in the case because the defendant thought the

19   license could have been obtained for ten bucks, and

20   Mr. Liebowitz was asking for 5,000.  So defense counsel said --

21   propounded interrogatories saying, Where are you getting 5,000

22   from?  And Mr. Liebowitz's answer was:  Contracts, invoices,

23   licensing fees or something like that.

24          Then defense counsel said, okay, produce the

25   contracts, invoices and licensing agreements you are referring

Exhibit C

Case 3:20-cv-05262-TKW-EMT Document 9 Filed 04/27/20 Page 20 of 33
Case 7:15-cv-08536-CS Document 62 Filed 01/02/20 Page 20 of 33
PROCEEDINGS 20

1  to.  And that's where the dishonesty began because first,

2  Mr. Liebowitz, through his associate, said, oh, we can't produce

3  them until -- until a protective order is issued, and as I

4  understand it, defense counsel dealt, not only with the

5  associate, but with Mr. Liebowitz himself about the protective

6  order, and that was clearly a false statement.  I can't produce

7  them without a protective order because the truth was, I don't

8  have any, as it turned out.

9          Then after the protective order was negotiated and

10 signed by me, a series of false promises were made about why

11 Mr. Liebowitz couldn't produce the documents.  He had an

12 emergency out of town, which, according to defense counsel, was

13 not an emergency out of town.  Then it was:  I will produce some

14 on X date and some on Y date, and nothing was produced

15 responsive to the demand on those dates.

16         And defense counsel finally wrote to me, and I

17 scheduled a conference because it did seem like Mr. Liebowitz

18 was saying things to the other side that were not true or, at

19 the very least, was not complying with his obligations under the

20 federal rules.

21         Then when Mr. Liebowitz didn't show up on April 12th,

22 I adjourned to April 18th and ordered him to explain by the 17th

23 why he didn't show up and why he shouldn't have to pay defense

24 counsel's fees.

25         On the 15th, that's when I first heard from

Exhibit C

Case 3:20-cv-05262-TKW-EMT Document 9 Filed 04/27/20 Page 21 of 33
Case 7:15-cv-08556-CS Document 62 Filed 01/02/20 Page 21 of 33

PROCEEDINGS                                                    21

1  Mr. Liebowitz about why he didn't show up, and what he said was

2  he was sorry.  He had a death in the family.  Here is the part

3  that was false.  Quote, "This was an unexpected urgent matter I

4  needed to attend to."

5          Clearly not the case that it was unexpected on the

6  12th that his grandfather had died on the 9th.  And, frankly, I

7  find it inconceivable that on Monday, the 15th you could be

8  under the mistaken impression that the death had occurred on the

9  previous Friday rather than the previous Tuesday.

10          We then had the conference by phone on the 18th

11  because Mr. Liebowitz said he was not available to come in

12  person, and things got worse at that conference.  It took a long

13  time and a lot of questions from me, but eventually it became

14  clear that there were no contracts, invoices or licensing

15  agreements and that the whole nonsense about the protective

16  order -- and I am going to get to it -- was false.

17          And then defense counsel made the accusation that

18  Mr. Liebowitz had lied and said he was out of town on an

19  emergency when, in reality, he was in Europe trying to drum up

20  business.

21          At that point I had concerns, not only about the

22  misrepresentations that Mr. Liebowitz had made to defense

23  counsel in connection with discovery, but also as to the good-

24  faith basis for his damages demand.  And I said, I am going to

25  need some documentation regarding who passed away, when, and how

Exhibit C

Case 3:20-cv-05262-TKW-EMT  Document 9-3  Filed 04/27/20  Page 22 of 33
Case 7:15-cv-08556-CS  Document 62-9  Filed 01/02/18  Page 22 of 33

PROCEEDINGS                                                    22

```
 1  Mr. Liebowitz was notified.

 2       At that point -- and I also said defense counsel

 3  should submit his records for the completely unnecessary motion

 4  to compel, and I would let Mr. Liebowitz oppose defendant's

 5  application that plaintiff recover those fees.

 6       Now, at that point, any rational person who was

 7  telling the truth would go out and gather the documentation, or

 8  who believed that he was telling the truth would gather the

 9  documentation, realize the mistake, and correct it.

10       I use the term "mistake" generously because, as I

11  said, I really don't think even in your grief that on Monday you

12  could think the death was on Friday when it was on Tuesday.  And

13  Mr. Liebowitz then began the doubling down because -- and that

14  was on May 1st.  He sent a letter saying his grandfather had

15  died on April 12th and that Mr. Liebowitz had to immediately

16  arrange to be with family and assist in customs that had to be

17  done before the Sabbath, and that's the embellishment that

18  proves the lie because if the death wasn't on Friday, then there

19  were no customs that had to be done immediately that day before

20  sundown.  That's when Mr. Liebowitz made the decision, I am not

21  going to own up to my previous embellishment.  I am going to

22  tell an outright lie in an effort to put this issue behind me,

23  and this was now a good three weeks plus after the death.  I

24  cannot imagine any reason short of psychosis for claiming that

25  you were running around taking care of things that had to be
```

Exhibit C

Case 3:20-cv-05262-TKW-EMT Document 9-3 Filed 04/27/20 Page 23 of 33
Case 7:15-cv-08356-CS Document 62 Filed 01/02/20 Page 23 of 33

PROCEEDINGS                                                    23

1    done before Friday on sundown -- before Friday sundown when the

2    gentleman had passed away three days earlier and was buried

3    three days earlier, except to intentionally mislead the Court.

4    And we have no reason to believe Mr. Liebowitz is psychotic.  He

5    clearly knows right from wrong.  He just doesn't seem to have a

6    lot of concern about staying on the correct side of that line.

7            So May 1, the defendant doubles down.  There is still

8    some dispute over discovery.  I, on May 1, the same day, sort of

9    throw up my hands about the discovery dispute and say, you know,

10   the failure to produce documents is going to hurt the plaintiff

11   more than the defendant.  So can't -- nothing more I can do.

12   And I also said to Mr. Liebowitz, I want documentation, not just

13   your say-so, and I suggested either a death certificate or an

14   obituary or something in the defendant's phone, and I gave him

15   until May 3rd.  Well, on May 3rd, Mr. Liebowitz sent a letter

16   saying, oh, the case is settled.

17           The following Monday, I believe it was, May 6th,

18   defense counsel said, well, not quite.  Mr. Liebowitz has to pay

19   my fee, and when he does that, then it will be settled, and it

20   was settled the next day, May 7th, and that's when I said,

21   great, but there is an open issue, which is Mr. Liebowitz still

22   hasn't documented the death, and this is the part where I think

23   maybe is part of the defendant's -- excuse me -- Mr. Liebowitz's

24   MO, which is to try to settle cases once he gets into hot water

25   or drops it.

Exhibit C

Case 3:20-cv-05262-TKW-EMT   Document 9-1   Filed 04/27/20   Page 24 of 33
Case 7:15-cv-08536-CS   Document 62   Filed 01/02/20   Page 24 of 33
PROCEEDINGS                                          24

```
 1              I made clear that even though the documentation was
 2   supposed to be provided by May 3rd, I was going to give
 3   Mr. Liebowitz until May 9th, and then he tripled down by putting
 4   in a declaration where he recertified his previous false
 5   statements, and I don't need to go through the whole sordid
 6   chronology except to say that there were one, two, three,
 7   four -- I don't know -- something like eight times where
 8   Mr. Liebowitz kept saying, What I have already said is enough.
 9   It's the truth.  I shouldn't have to provide this information.
10              And each time I said, No, it's not.  I eventually
11   imposed sanctions, and Mr. Liebowitz -- I don't know what he was
12   thinking about how this was going to go away.  I think he
13   thought -- and maybe this has worked in the past -- that I would
14   lose interest; but as I said, I think a lawyer who intentionally
15   lies to the Court is a significant matter, and I wouldn't call
16   the lie immaterial.
17              I think the reason Mr. Liebowitz lied is because he
18   thought it would make a difference, and, you know, depending on
19   what the facts are as to whether or not Mr. Liebowitz was, in
20   fact, off the grid between May 9th and May 16th, it may be even
21   more egregious than I think, but it may be that I would have
22   been equally forgiving had the death -- had the truth been told,
23   but I don't know that everybody would be, and that one could say
24   it's immaterial; but even if the original lie was immaterial,
25   those subsequent ones became material.
```

Exhibit C

PROCEEDINGS                                    25

 1          So, you know, not only does the defendant -- excuse
 2   me -- not only does Mr. Liebowitz have a track record in this
 3   case of lying to the other side, but in my mind, again, it's
 4   inconceivable that even on April 15th, when the wound was still
 5   fresh, that he could possibly have thought that the death had
 6   occurred the previous Friday when it was really the previous
 7   Tuesday.  Even if there is some world in which that is
 8   conceivable, anybody who believed himself to be telling the
 9   truth would have immediately gone out, gotten the documentation,
10   and corrected the error.  The defendant didn't go out and get
11   the documentation because he knew he was lying; and he then
12   chose to repeat that lie six, eight, ten times in circumstances
13   where, frankly, if for no other reason than to get the Court off
14   one's back, one would check one's facts.

15          I think Mr. Liebowitz, again, when he gets into hot
16   water, he just decides to kick the can down the road as long as
17   he can:  Try to drop the case, hope the judge will go away.  And
18   I am sure he is disappointed that I didn't go away.

19          And in addition to everything I have just said, the
20   failure to produce the death certificate upon many, many orders
21   to do so really has no other explanation except that
22   Mr. Liebowitz was aware it would reveal what had now become
23   multiple lies.  And I have heard -- so and no doubt at all that
24   my order of contempt for the failure to produce the death
25   certificate is justified.  The orders were very clear.  They

Exhibit C

Case 3:20-cv-05262-TKW-EMT   Document 9-3   Filed 04/27/20   Page 26 of 33
Case 7:15-cv-08556-CS   Document 62   Filed 01/02/20   Page 26 of 33

PROCEEDINGS                                                        26

1  were lawful, and for the reasons I have described, he had not

2  diligently attempted to comply, indeed, apparently not until

3  incarceration was the threat.

4          Nor has there been any explanation at all for the

5  contempt of my September 27th order of contempt which required

6  Mr. Liebowitz to pay money each business day until he complied.

7  So I see no reason to vacate either order.

8          The second order was equally clear.  It was equally

9  lawful, and it is equally clear that there was no diligent

10  attempt to comply.  I haven't heard that Mr. Liebowitz didn't

11  have the money or didn't have the ability to make the payments.

12  He just didn't want to.

13          Even when I increased the payments to 500 a day, that

14  did not move Mr. Liebowitz.  Apparently, only the prospect of

15  departing this courtroom in handcuffs seemed important enough to

16  Mr. Liebowitz to do what I had asked him to do back in April.

17          I wish Mr. Liebowitz had consulted Mr. Greenberg or

18  some other equally ethical and respected lawyer back then

19  because this order of contempt, unfortunately, is going to

20  follow Mr. Liebowitz wherever he goes in the future where he is

21  asked, Have you ever been held in contempt? because I am not

22  going to vacate it.  I see no basis to vacate it.

23          Even though the payment was 3,700, and by my count it

24  should be 3,800, I will declare the financial penalty satisfied

25  as requested.

Exhibit C

Case 3:20-cv-05262-TKW-EMT   Document 9-3   Filed 04/27/20   Page 27 of 33
Case 7:15-cv-08556-CS   Document 62   Filed 01/02/20   Page 27 of 33

PROCEEDINGS                                                    27

```
 1              Mr. Greenberg's letter requests three things:  That I

 2   vacate the two concept orders, which I am not going to do; that

 3   I declare the financial penalty satisfied, which I will do; and

 4   that I permit him to continue to practice before this court,

 5   which is not up to me.  That is up to the grievance committee of

 6   the court.  I find this series of events serious enough to

 7   warrant their consideration.  They may find that what's occurred

 8   so far is enough to bring Mr. Liebowitz to the point he needs to

 9   be brought to.  They may not.  Not my call.  But I am not going

10   to -- I have made a referral to the grievance committee, and I

11   am not going to withdraw it.

12              I can only say, Mr. Liebowitz, that your work may be

13   valued by your clients.  It may be perfectly appropriate, but it

14   is not a good business model to bring a lawsuit and make a

15   demand that you don't have a good faith basis for; lie about it

16   to the other side; lie to the Court; try to drop the case when

17   you get busted; and end up sitting where you are sitting now,

18   which is steps away from leaving the courtroom in handcuffs.

19   Not only is it a bad business model, but it's a bad way to be as

20   a person.  I cannot imagine that it is a very pleasant situation

21   to be constantly scrambling to mop up problems that you cause

22   yourself.  So if your business model is too much to handle

23   responsibly, you got to change it, but getting way out over your

24   skis and then trying to drop the case when you get in trouble

25   doesn't always work.
```

Exhibit C

Case 3:20-cv-05262-TKW-EMT  Document 9-3  Filed 04/27/20  Page 28 of 33
Case 7:15-cv-08536-CS  Document 62  Filed 01/02/20  Page 28 of 33

PROCEEDINGS                                                        28

1           So I sincerely hope that you take the advice of your

2    lawyer, and get some help personally and professionally to make

3    sure that you are not in this situation again.

4           Going forward, if you apply to be admitted pro hoc

5    vice in other courts, you are going to have to disclose this

6    problem.  Clients may find out about it.  I recognize that it

7    is, as your lawyer said in his letter, something that will cause

8    damage to your professional career, but I think it's justified

9    under the circumstances given that this was not a momentary

10   lapse or even a short-term lapse, but in my mind, a long-term

11   campaign of deception of the sort that we should not tolerate in

12   lawyers who practice before this court.

13          There are a few things in Mr. Greenberg's letter that

14   I think should be redacted, not very many.  One is on page 4

15   under Remedial Efforts, the third sentence beginning with, "As

16   counsel understands it," that can be redacted.

17          Exhibit C, which is the death certificate, it seems to

18   me that the deceased's home address, date of birth, and social

19   security number can be redacted, as can be the home address of

20   the deceased's son.

21          In Exhibit D, which is the bill from the funeral home,

22   again, the date of birth of the deceased may be redacted, and

23   the home address of the son may be redacted.

24          In Exhibit E, which is Mr. Liebowitz's birth

25   certificate, his date of birth can be redacted.

Exhibit C

Case 3:20-cv-05262-TKW-EMT Document 9-3 Filed 04/27/20 Page 29 of 33
Case 7:15-cv-08356-CS Document 52 Filed 01/02/16 Page 29 of 33
PROCEEDINGS

29

1          In Exhibit F, which is his mother's naturalization

2   certificate, her date of birth and address can be redacted,

3   although I doubt it's the current address.

4          And in Exhibit G, which is a portion of a trust

5   agreement, on the second page of Exhibit G, which is the third

6   page of the agreement, the percentages can all be redacted and

7   the names of the distributees other than Mr. Liebowitz can be

8   redacted.

9          Is there anything else, Mr. Greenberg, that you think

10  is so private that it shouldn't be publicly filed?

11         MR. GREENBERG:  I am sorry to say, I have not had a

12  chance to closely determine that, but if you could just give me

13  until the end of the afternoon, I would be happy to get back to

14  chambers today and tell -- and with the suggestion of anything

15  else that we might have or that we have no objection.

16         THE COURT:  All right.  Well, let me know.  Do one of

17  two things:  By 5:00 p.m., let me know if you think there is

18  anything else.  If you don't, then file this document with the

19  redactions I have described on the ECF system by 5:00 p.m.; and

20  if there are other things that you think should be redacted, let

21  me know by 5:00 p.m., and I will get back to you as soon as I

22  can.

23         MR. GREENBERG:  Apropos of the letter that appeared to

24  have something dropped from it from the New York Press

25  Photographers Association --

Exhibit C

Case 3:20-cv-05262-TKW-EMT Document 9-3 Filed 04/27/20 Page 30 of 33
Case 7:15-cv-08356-CS Document 62 Filed 01/02/16 Page 30 of 30

PROCEEDINGS                                            30

 1          THE COURT:  Yes, you can correct that when you file

 2   it.

 3          MR. GREENBERG:  I have the correct letter now.  I

 4   mean, he sent me, but when I realized there was something wrong,

 5   he sent me a replacement with the same letter; but, you know,

 6   now it reads like a continuous letter.

 7          THE COURT:  The missing words are inserted.  Well, so

 8   when you file the redacted version, you can substitute the

 9   corrected exhibit.

10          MR. GREENBERG:  Thank you.

11          THE COURT:  All right.  Is there anything else we

12   should do this morning?

13          MR. GREENBERG:  Well, I can think of lots of things we

14   should do, but probably not in this courtroom.

15          THE COURT:  All right.  Well, and if I didn't say it,

16   I find that the defendant is --

17          MR. GREENBERG:  Your Honor --

18          THE COURT:  Not the defendant.  I keep saying the

19   defendant.  I find Mr. Liebowitz is no longer in contempt, and

20   there is no need for any further sanctions, having coerced the

21   compliance that I sought.

22          MR. GREENBERG:  Your Honor, Mr. Liebowitz has

23   instructed me and informs me that he would like to say

24   something.  I defer to my client's wishes, although I don't know

25   that it's the best idea in the world, but I think Your Honor

Exhibit C

Case 3:20-cv-05262-TKW-EMT   Document 9   Filed 04/27/20   Page 31 of 33
Case 7:15-cv-08556-CS   Document 62   Filed 01/02/18   Page 31 of 33
PROCEEDINGS
31

1  might want to hear from him briefly.

2          THE COURT:  Happy to.

3          MR. LIEBOWITZ:  Your Honor, I am really, really sorry

4  of what happened.  You know, I was really, really close with my

5  grandfather, and it was -- my mind was going in so many

6  different directions that I wasn't thinking, and this is truly

7  from my bottom of my heart that just everything from, you know,

8  being with my parents and my mother and all of this, everything

9  happened all at once, and it was -- I've never seen -- I never

10 felt anything like this before, and I have an associate that I

11 rely upon in my law firm that handles things for me, and I told

12 him, you know, those items that were on the docket was all done

13 by him, and I was just with my family.  I couldn't think of

14 anything else, and I just -- I am truly sorry for what happened.

15 It was really an honest mistake.  Everything was just going, you

16 know, in so many different directions, and I have learned from

17 this mistake and will make sure that I get the appropriate, you

18 know, help to, you know, help me out, and it was truly, really

19 an honest mistake, and it shouldn't have happened, and I'm very

20 sorry for that.

21         THE COURT:  Well, I think the first thing you ought to

22 do when you get help is understand it's not going to work if you

23 are not honest with that doctor and with yourself, and you are

24 clearly not being honest with yourself because you can throw

25 your associate under the bus for what happened between April 9th

Exhibit C

Case 3:20-cv-05262-TKW-EMT   Document 9   Filed 04/27/20   Page 32 of 33
Case 7:15-cv-08536-CS   Document 62   Filed 01/02/20   Page 32 of 33

PROCEEDINGS                                                    32

 1  and April 15th.  You cannot blame your associate for what

 2  happened for everything else up until now, and you seem to be

 3  ignoring all of the subsequent lies, all the subsequent failures

 4  to comply by my orders, and all of the factors I have discussed

 5  today which demonstrate to me that, even if the associate you

 6  employ made a false statement in a letter of April 15th, you

 7  adopted it before me on April 18th, in your letter of May 1st,

 8  and repeatedly thereafter.  So stop kidding yourself.

 9          You need to work on yourself and your practice, and if

10  you keep kidding yourself, nothing is going to change.  So, you

11  know, if there were a good explanation for the things I

12  discussed today, I am sure I would have heard it from you and

13  your lawyer.  I didn't, because this clearly was not an honest

14  mistake; and even if it were at first, it very quickly became,

15  as I said, a concerted campaign of deception.

16          And what I would do, to be honest, is I would buy the

17  transcript of today's proceeding, and I would give it to the

18  doctor at the first appointment because, you know, I am

19  certainly no professional in that area, but the one thing I feel

20  safe in saying is that if you lie to yourself, and you lie to a

21  mental health professional, that person is not going to be able

22  to help you as effectively as he or she would if you told the

23  truth.  So you need to do some introspection.  I don't doubt

24  that you're sorry, but I have no doubt that this was not an

25  honest mistake.  You can't foist it on your associate.

Exhibit C

Case 3:20-cv-05262-TKW-EMT   Document 9-3   Filed 04/27/20   Page 33 of 33
Case 7:15-cv-08556-CS   Document 62   Filed 01/02/20   Page 33 of 33

PROCEEDINGS                                                          33

```
 1              Indeed, since all of those documents were filed under

 2    your ECF password, and that ECF password is a representation

 3    under Rule 11, you need to immediately review how you manage

 4    your practice because you can't have -- if what you are telling

 5    me is that people are filing things that you have nothing to do

 6    with and representing that they are from you, that's a whole

 7    additional problem.  So, time to start facing the facts.

 8              Unless there is anything further, we are adjourned.

 9              MR. GREENBERG:  Thank you, Your Honor.

10              MR. LIEBOWITZ:  Thank you.

11              (Time noted:  11:07 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Exhibit C